**UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

Case No.: 9:10-cv-80771-KLR

_____

| | |
|---|---|
| Roy Magnifico, Roma Lim, Rezza Real, | ) |
| Jeanette Halup, Bonifacio Ramos, | ) |
| Lucille Liwag, Ross Ripotola, Raul | ) |
| Rueda, Aries Caluya, Aris Ordonez, | ) |
| Ritche Relampagos, Percival De Quiros, | ) |
| and Jose Auingan, | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| | ) |
| Roberto Villanueva, Lina Fernandez, | ) |
| Star One Staffing, Inc., Star One Staffing | ) |
| International, Mary Jane Hague, John | ) |
| Carruthers, and Ruth Carruthers, | ) |
| | ) |
| Defendants. | ) |

_____

**PLAINTIFFS' RESPONSE TO DEFENDANTS STAR ONE STAFFING INC.,
STAR ONE STAFFING INTERNATIONAL, MARY JANE HAGUE,
JOHN CARRUTHERS AND RUTH CARRUTHERS'
MOTION TO DISMISS PLAINTIFFS' FIFTH, SEVENTH, EIGHTH AND NINTH CLAIMS**

**PROCEDURAL HISTORY**

On June 30, 2010, Plaintiffs filed their Complaint alleging causes of action arising from Plaintiffs' recruitment and subsequent employment, forced labor and human trafficking by Defendants during 2006 and 2007.  Plaintiffs' claims include violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d), and of wage and hour laws, including New York Labor Laws, N.Y. Lab. L. § § 190 *et*

*seq.* and 650 *et seq.* and 1 NY COMP. CODES R. & REGS. TIT. § 137-1.7[1]. On October 29, 2010, Defendants Star One Staffing, Inc. Star One Staffing International, Mary Jane Hague, Ruth Carruthers and John Carruthers filed a Motion to Dismiss Plaintiffs' RICO and New York Labor Law claims.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, the complaint need only plead sufficient facts to provide "plausible grounds" that discovery will reveal evidence to support plaintiff's allegations. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)). When applying this standard, the court must accept the factual allegations in the complaint as true and view them in the light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 953 (11th Cir. 1986); *United States v. Pemco Aeroplex, Inc.*, 195 F.3d 1234, 1236 (11th Cir. 1999) (*en banc*).

## ARGUMENT

I.     **PLAINTIFFS' FIFTH CLAIM FOR RELIEF: RICO**

A.     **DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' RICO CLAIMS SHOULD BE DENIED BECAUSE PLAINTIFFS COMPLIED WITH S.D.Fla. L.R. 12.1.**

Defendants' Motion to Dismiss Plaintiffs' RICO claims for Plaintiffs' alleged failure to comply with S.D. Fla. L.R. 12.1 ("L.R. 12.1") should be denied. Plaintiffs complied with L.R. 12.1 and, even if they had failed to do so, dismissal with prejudice is not an appropriate remedy.

1.     **S.D. Fla. L.R. 12.1 Requires Plaintiffs to File the RICO Case Statement in Court Within 30 Days.**

L.R. 12.1 requires all parties that plead a civil RICO cause of action to, within thirty days of the filing, "serve a RICO Case Statement."[2] As detailed below, for the purposes of L.R. 12.1, "serve" means to file with the court.

---

[1] Claims under New York law for the minimum wage, overtime and spread of hours.
[2] The Rule goes on to describe the required contents of the RICO Case Statement. However, this portion of the Rule is not relevant to Defendants' Motion to Dismiss.

Defendants' Motion states that, "To date, Plaintiffs have not *served* the RICO Case Statement in compliance with Local Rule 12.1. It is appropriate to dismiss Plaintiffs' RICO claims because they have failed to *file* a RICO Case Statement."  Defs. Mot. Dismiss 3 (emphasis added). No further explanation is provided by Defendants. Plaintiffs can only assume that Defendants, consistent with the practice of many judges, use the terms "file" and "serve" interchangeably with regards to the requirements of L.R. 12.1. Plaintiffs agree that, for the purposes of L.R. 12.1, the term "serve" means that parties must file the RICO Case Statement with the court.

When interpreting the meaning of the Local Rules, the constructions and definitions are governed by 1 U.S.C. §§ 1-5. S.D. Fla. L.R. 1.1(e). The United States Code is silent on the definition of "serve," however.

Interpreting the term "serve" in L.R. 12.1 to mean that a plaintiff must file the RICO Case Statement with the court (rather than serve it on defendants), is consistent with the Federal Rules of Civil Procedure.  The Federal Rules of Civil Procedure provide plaintiffs 120 days to serve the summons and complaint on defendants. Fed. R. Civ. P. 4(m).  If L.R. 12.1 were interpreted as requiring service of the RICO Case Statement on defendants within 30 days, it would conflict with the Federal Rules by substantially decreasing plaintiffs' time to serve defendants.  Fed. R. Civ. P. 83(a)(1) states in relevant part that "A local rule must be consistent with – but not duplicate – federal statutes and rules adopted under 28 U.S.C §§ 2072..."[3] A local rule, to the extent that it is inconsistent with a federal rule, is unenforceable.  *See Jackson v. Crosby*, 375 F.3d 1291, 1296 (11th Cir. 2004). Therefore L.R. 12.1 cannot be interpreted as requiring service of the RICO Case Statement on defendants.

Courts consistently interpret L.R. 12.1's requirement that parties "serve" a RICO Case Statement within 30 days as meaning that the statement must be filed with the court within the required time period. *Palm Beach County Envtl. Coal. v. Florida*, 651 F.Supp. 2d 1328 (S.D. Fla. 2009) (stating L.R. 12.1 requires plaintiffs to "file" a RICO Case Statement). *See also Borden v. Saxon Mortg. Services, Inc.*, 2010 U.S. Dist. Lexis 3834590, 10-11 (S.D. Fla. 2010) (dismissal of claim for failure to "file" a RICO Statement); *Andela v. University of Miami*, 692 F.Supp. 2d 1356, 1377 (S.D. Fla. 2010) ("Andela did not *serve* his RICO Case Statement... Andela claims

---

[3] The enabling statute that authorizes the Supreme Court to prescribe rules of procedure and evidence.

that his failure to timely *file* his RICO Statement was due to . . .") (emphasis added); *Florida Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 165 F.Supp. 2d 1345, 1348 (S.D. Fla. 2001) (plaintiffs' "filed" RICO Case Statement was part of the pleadings the court interpreted in a favorable light when considering Defendant's motion for summary judgment).  Further, failure to serve a RICO Case Statement on defendants within 30 days has never, taken alone, been grounds for dismissal of a RICO claim in any reported case.

The RICO Case Statement is "a detailed, organized, and specific document that is designed to assist the Court with the processing of a RICO claim." *Pierce v. Ritter, Chusid, Bivonia & Cohen*, 133 F.Supp. 2d 1344, 1346 (S.D. Fla. 2001).  As such, it should be "provided" to the court within thirty days of filing a complaint. *Id.* at 1345.  Thus, L.R. 12.1 should not be read to require service of the RICO Case Statement on defendants within 30 days.

As described *infra*, Plaintiffs timely filed a RICO Case Statement with this Court. Defendants' motion to dismiss Plaintiffs' RICO claims based on Plaintiffs' alleged noncompliance with L.R. 12.1 should be denied.

### 2.  Plaintiffs Timely Filed the RICO Case Statement.

Defendants' assertion that, "It is appropriate to dismiss Plaintiffs' RICO claims because they have failed to file a RICO Case Statement" lacks any factual basis. Defs. Mot. Dismiss 3. Plaintiffs filed their complaint, which includes civil RICO claims under 18 U.S.C. § 1962(c) and § 1962(d), on June 30, 2010. As reflected in this Court's records, Plaintiffs filed their RICO Case Statement on July 30, 2010.  Defendants were properly served the Summons and Complaint[4] in this matter within 120 days of the complaint being filed.[5]  As Plaintiffs filed their RICO Case Statement timely, Defendants' motion to dismiss Plaintiffs' RICO claims for failure to file a RICO Statement should be denied.

### 3.  Failure to Comply with S.D.Fla. L.R. 12.1 Should Not Result in Dismissal of Plaintiffs' RICO Claims.

---

[4] While not required by L.R. 12.1, along with the Summons and Complaint, Defendants were also served with Plaintiffs' RICO Case Statement.

[5] In their Motion to Dismiss, Defendants state that Star One Staffing, Inc., Star One Staffing International, Inc., Mary Jane Hague, John Carruthers, and Ruth Carruthers were served on September 17, 2010. Defs. Mot. Dismiss 1. This is incorrect.  Star One Staffing and Star One Staffing International were served on September 17, 2010.  John Carruthers and Ruth Carruthers were served on September 18, 2010.  Mary Jane Hague was served on September 27, 2010.

Should this Court find that Plaintiffs failed to comply with L.R. 12.1, Plaintiffs' RICO claims need not be dismissed. Even when plaintiffs fail to file a RICO Case Statement with the court in violation of L.R. 12.1, it is within the Court's discretion not to dismiss the RICO claims. *Platypus Wear, Inc. v. Clarke Modet & Co., Inc.*, 2008 WL 186637, 3 (S.D. Fla. 2008) (unpublished) (court declined to dismiss plaintiff's RICO claim when plaintiff filed the Case Statement 59 days after filing the Complaint).

Plaintiffs clearly met the requirements of L.R. 12.1. However, even if this Court should determine that Plaintiffs failed to comply with the Rule, Plaintiffs' RICO claims should not be dismissed.

### 4.   If Dismissal is Proper, Plaintiffs' RICO Claims Should Be Dismissed Without Prejudice.

When courts choose to dismiss RICO claims for a violation of L.R. 12.1, they appear to dismiss the claims without prejudice. *See e.g., Humphrey v. United Parcel Service Co*., 2005 WL 5643872, 3 (S.D. Fla. 2005); *Palm Beach County Envtl. Coal.*, 651 F.Supp. 2d at 1354; *Harrison Enterprises, Inc. v. Moran*, 1999 WL 1211753, 4, 12 Fla. L. Weekly Fed. D 580 (S.D. Fla. 1999).  When RICO claims involving a violation of the Local Rule have been dismissed with prejudice, the plaintiffs had also failed to satisfy a pleading requirement regarding their RICO claims.  *Andela*, 692 F.Supp. 2d at 1377; *Walker v. Hallmark Bank & Trust, Ltd*., 707 F.Supp. 2d 1317, 1321-22 (S.D. Fla. 2010).

Plaintiffs have timely filed their RICO Case Statement in court and served it on Defendants.  Thus, Plaintiffs respectfully request that Defendants' Motion to Dismiss Plaintiffs' Fifth Claim under the RICO 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) be denied. However, should the Court decide to dismiss Plaintiffs' RICO claims, the claims should be dismissed *without prejudice*.

### B.   THE PLEADINGS SUMBITTED BY PLAINITFFS SUFFICIENTLY STATE A CLAIM FOR RELIEF UNDER § 1962(C) OF RICO.

To establish a claim for relief under RICO, a plaintiff must prove "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Langford v. Rite Aid of Alabama, Inc*., 231 F.3d 1308, 1311 (11th Cir. 2000).  A plaintiff establishes a pattern of racketeering activity by showing "at least two racketeering predicates that are related" and that related predicates occurred "over a substantial period of time." *American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1290-91 (11th Cir. 2010).  Predicate acts are sufficiently alleged to survive a

motion to dismiss when the plaintiff has alleged sufficient facts supporting the statutory elements for those predicate acts. *Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997).

In their Motion to Dismiss, Defendants argue that Plaintiffs failed to state a claim under RICO by failing to allege sufficient facts to support the statutory elements of the predicate acts alleged in their §1962(c) claim. Defs. Mot. Dismiss 3. Defendants also argue that in failing to state a claim under §1962(c), Plaintiffs necessarily failed to state a claim for conspiracy under §1962(d). Defs. Mot. Dismiss 5. Defendants do not challenge any other elements of Plaintiffs' RICO claims.

Plaintiffs' Complaint alleged sufficient facts, with the requisite particularity, to support the statutory elements of the predicate acts. Even if Plaintiffs' Complaint alone failed to meet the pleading standard, Plaintiffs' RICO Case Statement clearly alleged, with particularity, sufficient facts to support the claim. However, if the Court determines that Plaintiffs failed to sufficiently plead at least two predicate acts under RICO, the Court should order Plaintiffs to replead the claim, rather than granting Defendants' Motion to Dismiss.

### 1. Legal Standard for Pleading Predicate Acts in Civil RICO Claims.

Defendants argue that Plaintiffs have failed to meet the standard for pleading fraud-related predicate acts. Defs. Mot. Dismiss 4-5. Defendants fail to articulate any challenges to the sufficiency of Plaintiffs' allegations regarding the non-fraud related predicate acts.

Generally, to survive a motion to dismiss fraud claims, or RICO claims involving fraud-related predicate acts, plaintiffs "must allege the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064 (11th Cir. 2007) (internal citations omitted). While plaintiffs must allege the occurrence of "some kind of deceptive conduct," *American Dental Ass'n*, 605 F.3d at 1292, plaintiffs claiming mail and/or wire fraud are not required to allege that the mail or wire communications themselves included fraudulent information. *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 647, 128 S.Ct. 2131, 2138 (2008). Further, the relevant communication need not be an essential element of the fraud scheme. *Schmuck v. U.S.*, 489 U.S. 705 (1989) (mailings or communications constituting alleged predicate acts need only be incidental to the overall fraud scheme). Plaintiffs must allege facts indicating intent or knowledge on the part of the defendants accused of engaging in the predicate acts. *Langford*,

6

231 F.3d at 1312.  As Defendants suggest, when a claim names multiple defendants, plaintiffs are often required to allege sufficient facts to describe each individual defendant's role.  *See, e.g., Ambrosia Coal & Const. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007).  As explained in the section below, however, this is not always required in cases alleging fraud against multiple defendants.  Finally, plaintiffs are not required to show that they relied on defendants' fraudulent misrepresentations or statements.  *Bridge*, 553 U.S. at 661, 128 S.Ct. at 2145; *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F.Supp. 2d 1270, 1280 (S.D. Fla. 2009).

These requirements enumerated by the courts are designed to meet Fed. R. Civ. P.  9(b)'s heightened standard for pleading claims involving fraud and misrepresentation.  *See Id.* at 1317.  But as the Supreme Court has stated, Rule 9(b) must operate in conjunction with the other Federal Rules of Civil Procedure, including 8(a)[6] and 11(b)(3),[7] which may justify relaxing Fed. R. Civ. P.  9(b)'s particularity requirements in certain cases.  *See Rotella v. Wood*, 528 U.S. 549, 560, 120 S. Ct. 1075, 1083-84 (2000).

To the extent that Plaintiffs' pleadings fail to meet the Rule 9(b) particularity requirement as it is generally applied, the Court should apply a relaxed Rule 9(b) standard since much of the evidence to support the fraud claims is in the hands of Defendants.  Additionally, the Court should take into account the factual allegations listed in the Complaint's Statement of Facts when considering the sufficiency of the RICO claim as pleaded.  *See e.g., McCarthy v. Barnett Bank of Polk County*, 750 F.Supp. 1119, 1123 (M.D. Fla. 1990).  Finally, even if Plaintiffs' Complaint alone did not allege sufficient facts to survive the Motion to Dismiss, the Court should consider Plaintiffs' RICO Case Statement as part of the pleadings for the purposes of adjudicating the Motion to Dismiss.  *See e.g., Super Vision Intern., Inc. v. Mega Intl. Commercial Bank Co., Ltd.*, 534 F.Supp. 2d 1326, 1331 n. 2 (S.D. Fla. 2008).

    *i.*    *The Rule 9(b) particularity requirement should be read flexibly in cases where Defendants possess much of the relevant evidence.*

---

[6] Fed. R. Civ. P.  8(a)(2) states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

[7] According to Fed. R. Civ. P.  11(b)(3), any pleading submitted to a court "certifies that to the best of the person's knowledge, information, and belief… the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

While Plaintiffs have access to evidence supporting their allegations of fraud-related predicate acts, as indicated in their Complaint, Defendants have the bulk of the relevant evidence in their possession, including documents pertaining to Plaintiffs' fraudulently obtained H-2B visas. In such instances, if a plaintiff "lacks access to all facts necessary to detail his claim," courts may apply a relaxed Rule 9(b) standard. *Corley v. Rosewood Care Center, Inc*., 142 F.3d 1041, 1051 (7th Cir. 1998). *See also Rotella*, 528 U.S. at 560, 120 S.Ct. at 1083-84; *U.S.* ex rel. *Clausen v. Laboratory Corp. of America, Inc*., 290 F.3d 1301, 1314 n. 25 (11th Cir. 2002). In conformity with Fed. R. Civ. P. 11(b)(3), courts have allowed such claims to survive motions to dismiss when the pleadings included enough factual information to indicate the claim is plausible and that discovery would lead to supporting evidence. *See Hill v. Morehouse Medical Associates, Inc*., 2003 WL 22019936, 3 (11th Cir. 2003) (unpublished); *Rotella*, 528 U.S. at 560, 120 S.Ct. at 1083-84.

Rule 9(b)'s heightened pleading standard is designed to ensure that defendants in fraud cases are given sufficient notice of their alleged fraudulent actions to properly answer the complaint. *See Seville Indus. Machinery Corp. v. Southmost Machinery Corp*., 742 F.2d 786, 791 (3d Cir. 1984); *General Cigar Co. v. CR Carriers, Inc.,* 948 F.Supp. 1030, 1037 (M.D. Ala. 1996). In cases involving multiple defendants, courts have held that pleadings need not specifically identify which individual defendant committed each alleged act as long as the pleadings set forth enough factual information to allow defendants to answer the allegations. *Id.; Peters v. Amoco Oil Co*., 57 F.Supp. 2d 1268, 1276-1277 (M.D. Ala. 1999); *Hinsdale Women's Clinic, S.C. v. Women's Health Care,* 690 F.Supp. 658, 663 (N.D. Ill.1988). Since plaintiffs may have difficulty separately identifying the individual roles of defendants who acted in concert, a court may allow pleadings alleging fraud against a group of defendants to survive a motion to dismiss and proceed to discovery, where more precise facts about defendants' actions may be uncovered. *Peters*, 57 F.Supp. 2d at 1277; *Jackson v. First Fed. Sav.,* 709 F.Supp. 863, 878 (E.D. Ark. 1988); *In re AnnTaylor Stores Securities Litig.,* 807 F.Supp. 990 (S.D.N.Y. 1992). Additionally, plaintiffs may properly group defendants together in the statement of the claim when the complaint includes a detailed factual narrative setting forth more specific statements about defendants' roles. *National Numismatic Certification, LLC. v. eBay, Inc*., 2008 WL 2704404, 16 (M.D. Fla. 2008) (unpublished).

8

Furthermore, plaintiffs are not required to allege facts that would conclusively prove intent or knowledge on the part of the named defendants. Plaintiffs' allegations need only "give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d 46, 49-50 (2d Cir. 1987) (overruled on other grounds by *U.S. v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989)). *See also Republic of Panama*, 119 F.3d at 949. Pleadings can establish an inference of intent if they contain facts indicating motive and opportunity for fraud, or facts indicating conscious behavior by defendants. *Beck*, 820 F.2d at 50. Additionally, intent can be established by evidence of material omissions as well as active misrepresentation. *Langford*, 231 F.3d at 1312. Particularly where, as here, Plaintiffs have indicated in the Complaint that they have supporting documents to evidence their factual allegations, and Defendants have not offered any alternative explanations for the circumstances surrounding the mail and wire communications and fraudulent immigration petitions alleged, the pleadings should not fail on the issue of Defendants' intent to commit fraud. *See Beck v. Manufacturers Hanover Trust Co.*, 820 F.2d at 50.

Finally, specific descriptions of date, time, and/or place of mailing, *et cetera* are not mandatory when alleging predicate acts of mail or wire fraud. Rule 9(b) requires plaintiffs to plead the circumstances of the fraud with particularity, and while information regarding date, place, or time would provide such particularity, courts have noted that plaintiffs may fulfill the particularity requirement without this information. *See Durham v. Business Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988); *Seville Indus. Machinery Corp.*, 742 F.2d at 791; *Shared Network Technologies, Inc. v. Taylor,* 669 F.Supp. 422, 429 (N.D. Ga. 1987).

As indicated in Sections 2 and 3 below, Plaintiffs have pled facts regarding date, time, and place, as well as content of and person(s) responsible for communications alleged in connection with fraud-related predicate acts, and thus have sufficiently pled the fraud-related predicate acts challenged by Defendants. To the extent that this information is imprecise as to certain communications, Plaintiffs argue that the pleadings provide sufficient factual information regarding the alleged communications for the Defendants to answer the Complaint, and thus survive the Motion to Dismiss, particularly when much of the evidence regarding the communications is within Defendants' possession.

       ii.    ***Plaintiffs are not required to allege particularized facts in the statement of their claim if the facts are sufficiently alleged elsewhere in the complaint.***

Defendants note that the statement of the RICO claim in the Complaint does not include precise facts such as date or content of mailings or the individual allegedly responsible for each act. However, this is not required by the Federal Rules of Civil Procedure.  When factual allegations stated elsewhere in a complaint meet the pleading requirements of Rule 9(b), and are incorporated by reference into a claim, then that claim also satisfies the rule.  *See McCarthy*, 750 F.Supp. at 1123.  A court should consider the Complaint in its entirety to determine if the claims are sufficiently pled to notify defendants of their alleged fraudulent activity.  *Moe Dreams, LLC v. Sprock*, 2008 WL 4787493, 4 (N.D. Ga. 2008) (unpublished); *National Numismatic Certification, LLC.*, 2008 WL 2704404 at 16 (unpublished).  Even if a court determines that incorporation of previously stated facts is insufficient to adequately state a claim, the proper remedy is not dismissal, but repleading.  W*agner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006).

Plaintiffs' Complaint includes a detailed Statement of Facts, and certain paragraphs are incorporated by reference into the statements of the claims.  Nowhere in their challenge to the sufficiency of the RICO claim do Defendants cite to any paragraph from the Complaint's Statement of Facts.   Defendants do not seem to challenge the sufficiency of any of the actual factual pleadings, but instead seem to be faulting Plaintiffs for not restating previously pled facts in the actual statement of the claim.  The type of factual information Defendants argue is missing can be found in the Complaint, as detailed in Section 2 below, and Plaintiffs have thus sufficiently pled the alleged fraud-related predicate acts of their RICO claim.  If the Court determines, however, that incorporation by reference is insufficient to infuse the RICO claim with the requisite particularity, rather than granting the Motion to Dismiss, the Court should order that Plaintiffs replead the claim.

### iii.    Plaintiffs' RICO Case Statement should be considered part of the pleadings for the purposes of the Motion to Dismiss.

The Court should also consider Plaintiffs' RICO Case Statement part of the pleadings for purposes of adjudicating Defendants' Motion to Dismiss.  *Super Vision Intern., Inc*., 534 F.Supp. 2d at 1331 n. 2 (citing *Pierce v. Union Planters Bank, N.A.,* 2002 WL 31750246, *1 n. 1 (S.D. Fla. 2002); *In re Managed Care Litig.,* 135 F.Supp. 2d 1253, 1261 (S.D. Fla. 2001)).  *See also Florida Evergreen Foliage*, 165 F.Supp. 2d at 1348-49; *Allstate Ins. Co. v. Palterovich*, 653 F.Supp. 2d 1306, 1318 (S.D. Fla. 2009).  Even if a complaint itself does not sufficiently state a

claim for relief under RICO, a court may deny a motion to dismiss if the RICO Case Statement includes sufficient factual information to meet the pleading requirements.  *See Platypus Wear* 2008 WL 2557503 at 7 (unpublished).

Defendants do not cite to any of the any factual allegations in Plaintiffs' RICO Case Statement or explain why they believe the allegations therein are insufficiently pled.  Instead, Defendants allege that Plaintiffs failed to file a RICO Case Statement altogether.  In fact, Plaintiffs' RICO Case Statement includes detailed factual information explaining each element of the RICO claim, including the alleged predicate acts, and the alleged roles of each named Defendant.  The type of information Defendants argue is missing from the claim can be found in the RICO Case Statement, as detailed in Section 3 below.  Between the Complaint and RICO Case Statement, Plaintiffs have sufficiently pled the alleged fraud-related predicate acts.

### 2.   The Complaint Contains Sufficient Factual Allegations to Meet the Particularity Requirement for Pleading Fraud-Related Predicate Acts.

Immigration Document Fraud: 18 U.S.C. § 1546

The Complaint alleges that, "Defendants Star One, Star One International, Hague, and Villanueva in the RICO Enterprise fraudulently obtained H-2B visas by knowingly making false claims and statements about the nature and location of the work and the wage to be paid in violation of 18 U.S.C. § 1546.  The false claims and statements were made willfully, knowingly, and intentionally." Compl. ¶ 374. The Complaint goes on to specify that "Star One's Application for Alien Employment Certification, a form that must be submitted to the U.S. Department of Labor in order to secure H-2B guestworkers, signed by Defendant Hague on February 28, 2006, stated that the 31 guestworkers sought would be employed as waiters and waitresses at Boca Woods Country Club." Compl. ¶ 40. It further details that, "On the same form, Defendant Hague also certified that each employee would work one shift per day, five days per week during the period of May 1, 2006 to January 30, 2007." Compl. ¶ 41. And that, "On Star One's September 7, 2006 Petition for Nonimmigrant Workers, submitted to U.S. Citizenship and Immigration Services, Defendant Star One similarly certified that Plaintiffs Auingan, De Quiros, Real, Magnifico, Ramos and Ordonez would work at Boca Woods Country Club as waiters and work full-time, earning $271.12 per week." Compl. ¶ 42. Despite these certifications by Defendant Hague on behalf of Star One, Plaintiffs did not work at Boca Woods Country Club or according to the work schedules, job duties or pay promised on the applications. Compl. ¶ ¶ 43-45.

<u>Mail Fraud: 18 U.S.C. § 1341</u>

As detailed above, the Complaint alleges that, "Defendants Star One, Star One International, Hague, and Villanueva fraudulently obtained H-2B visas…made, and/or conspired to make, false promises regarding immigration benefits in a scheme calculated to defraud Plaintiffs out of money and to coerce Plaintiffs into remaining in the employ of Star One Defendants." Compl. ¶ ¶ 376-77. "Defendants used the mails on numerous occasions during 2006 to further these fraudulent schemes." Compl. ¶ 378. The Complaint specifies the dates that these fraudulent documents were signed. Compl. ¶ 40.

<u>Wire Fraud: 18 U.S.C. § 1343</u>

In relation to the fraudulent acts described above, the Complaint alleges that, "Defendants used wire communications via telephone, fax, and/or email on numerous occasions to further these schemes." Compl. ¶ 381. The Complaint further alleges that, "In an email to Nonimmigrant Visa Chief Joseph Tighman of the U.S. Embassy in the Philippines, Defendant Hague wrote that she had "come to Manila with [her] partner, Ruth Carruthers and [her] husband, Judge Andrew Hague for the express purpose of personally meeting you and requesting your assistance in granting a group interview for thirty (30) applicants whose H-2B petitions were recently approved…"  and "In that same email Defendant Hague referred to Defendant Villanueva as "one of our other partners." Compl. ¶ ¶ 49-50.

**3.   The RICO Case Statement Contains Sufficient Factual Allegations to Meet the Particularity Requirement for Fraud-Related Predicate Acts.**

<u>Immigration Document Fraud: 18 U.S.C. § 1546</u>

The RICO Case Statement specifies that defendants Star One Staffing, Star One International and Mary Jane Hague engaged in immigration document fraud. RICO Case Stmt. ¶ (b)(1), (2) and (5). The RICO Case Statement then details the dates, contents of the misrepresentations, and to whom they were made:

> Defendant Star One submitted an Application for Alien Employment Certification, a form that must be submitted to the U.S. Department of Labor in order to secure H-2B guestworkers, signed by Defendant Hague on February 28, 2006, that contained material misrepresentations.  By signing the form, Defendant Hague certified that the 31 guestworkers sought would be employed as waiters and waitresses at Boca Woods Country Club.  Defendant Hague also certified that each employee would work one shift per day, five days per week.  On Star One Defendants' September 7, 2006 Petition for Nonimmigrant Workers, signed by Defendant Hague and submitted to U.S. Citizenship and Immigration Services, Defendant Star One similarly certified that Plaintiffs Auingan, De Quiros, Real,

Magnifico, Ramos and Ordonez would work at Boca Woods Country Club as waiters and work full-time, earning $271.12 per week.  In a letter accompanying this petition, Defendant Hague also stated that Star One had been unable to fill the available positions with U.S. workers despite actively seeking workers in the U.S.

However, once they arrived in Florida, Defendants failed to place any of the Plaintiffs at Boca Woods Country Club or to pay Plaintiffs their promised wages.  Defendants also compelled Plaintiffs to work in positions other than as waiters, to work multiple shifts, and to work more than five days per week, all in direct violation of the certifications, described *supra*, made by Star One to the U.S. government.

Upon information and belief, Star One Defendants submitted other Applications for Alien Employment Certification and Petitions for Nonimmigrant Workers on behalf of Plaintiffs and other guestworkers containing misrepresentations during approximately the same time period.

RICO Case Stmt. ¶ (e)(3)(i).

<u>Mail Fraud: 18 U.S.C. § 1341</u>

In addition to the approximate dates of the use of the mail, as described above, the

RICO Case Statement specifies how the mails were utilized:

Star One Defendants and Defendant Hague utilized mail to further their unlawful scheme.  Upon information and belief, the fraudulent applications for labor certification and H-2B visas described in Section (e)(3)(i) *supra* were submitted to the Department of Labor and U.S. Citizenship and Immigration Services by the U.S. Postal Service or commercial carrier.

RICO Case Stmt. ¶ (e)(3)(ii).

<u>Wire Fraud: 18 U.S.C. § 1343</u>

Regarding wire fraud, the RICO Case Statement specifies which Defendants used

wire fraud, when they engaged in wire fraud, and the content of those communications:

Defendants Villanueva and Hague utilized email to further their unlawful scheme.  For example, upon information and belief, Defendant Villanueva sent emails during 2006 to J.E.S. describing the job openings for guestworkers at Star One.  Upon information and belief, Defendant Villanueva also sent emails to potential recruits describing the available jobs at Star One during 2006.  In October 2006, Defendant Hague sent an email to the Nonimmigrant Visa Chief at the U.S. Embassy in the Philippines, explaining that she was in the Philippines with R. Carruthers and wanted to meet with the Nonimmigrant Visa Chief to request his assistance.

RICO Case Stmt. ¶ (e)(3)(iii).

**4. Even if Plaintiffs' Pleadings Failed to Meet the Heightened Particularity Requirement for Fraud Claims, the Pleadings Include Sufficient Facts to Support the Other Predicate Acts Alleged in the Complaint.**

In addition to the fraud-related predicate acts described *supra,* Plaintiffs also alleged the following predicate acts: (1) forced labor; (2) trafficking with respect to involuntary servitude or forced labor; (3) unlawful conduct with respect to documents in furtherance of trafficking; and (4) interstate travel to further an unlawful scheme. Compl. ¶¶ 368-73; 384-86. Should the Court determine that Plaintiffs' pleadings failed to meet the heightened particularity requirement for fraud-related predicate acts, the pleadings contain sufficient facts to support the other predicate acts alleged in the Complaint.

**C. THE FACTS AND ALLEGATIONS SET FORTH BY PLAINTIFFS SUFFICIENTLY SUPPORT A CLAIM FOR VIOLATIONS OF 18 U.S.C. §1962(d) OF RICO.**

In their Motion to Dismiss, Defendants provide only one basis for dismissing the Plaintiffs' conspiracy claims under §1962(d).  Defendants argue that in failing to state a claim under §1962(c), Plaintiffs necessarily failed to state a claim for conspiracy under §1962(d).Defs. Mot. Dismiss 5.  Apart from this presumptive dismissal put forth by the Defendants, there is no other basis for dismissal of the conspiracy claims set forth in the Motion to Dismiss.

**1. Plaintiffs' Allegations Were Sufficiently Specific to Support Claims under 18 U.S.C. §1962(c) and therefore Defendants' Presumptive Dismissal Argument Fails with Respect to Claims under §1962(d).**

As detailed in Part B of this Response, Plaintiffs alleged sufficient facts with the requisite particularity to support the statutory elements of a claim under § 1962(c). Accordingly, Defendants' presumptive dismissal argument with regard to Plaintiffs' claims for violations of §1962(d) must fail.

**2. Plaintiffs' Allegations were Sufficiently Specific to Support Claims under 18 U.S.C. §1962(D).**

After plaintiffs successfully establish the right to relief under 18 U.S.C. §1962(c), they may present evidence to show a conspiracy to violate 18 U.S.C. §1962(d) of RICO by presenting evidence that defendants entered into an agreement to breach the statute. *United States v. Starett*, 55 F. 3d 1525, 1542 (11th Cir. 1995). Plaintiffs can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendants agreed to the overall objective of the conspiracy; or (2) by showing that the defendants agreed to commit two predicate acts." *Republic of*

*Panama*, 119 F.3d at 950 (quoting *United States v. Church,* 955 F.2d 688, 694 (11th Cir. 1992)). Plaintiffs need not offer direct evidence of a RICO agreement; the existence of conspiracy "may be inferred from the conduct of the participants." *Id.* at 950 (quoting *Church,* 955 F.2d at 695). Plaintiffs "can prove an agreement on an overall objective by circumstantial evidence showing that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise though a pattern of racketeering activity." *Starett*, 55 F.3d at 1542,. If plaintiffs prove an agreement on an overall objective, then it is not necessary that each defendant agree to personally commit two predicate acts. *Id.*

 The facts alleged in Plaintiffs' complaint clearly detail a relationship between defendants Star One, Star One International, Hague, Villanueva, and Fernandez with the common purpose to profit by recruiting, obtaining, processing, and providing consistent low-cost labor of Filipino H-2B guestworkers to work in the United States.  While Plaintiffs have provided a significant amount of information in their Complaint and RICO Case Statement, Defendants still possess much of the evidence regarding Plaintiffs' RICO claims.  Despite this fact, Plaintiffs have plead facts sufficient enough to survive Defendants' Motion to Dismiss for failure to state a claim upon which relief can be granted based on Rule 9(b). However, even if this Court determines that more specific information would be required under Rule 9(b), as described in Part (I)(B)(1) *supra*, Rule 9(b) should not effectively bar certain types of claims, such as a civil RICO claim, where plaintiffs lack access to all of the facts necessary to detail the claim, and that the flexibility provided by Rule 11(b)(3) allows pleadings based on evidence reasonably anticipated after further investigation or discovery. *See Rotella,* 528 U.S. at 560, 120 S.Ct. at 1083-84; *Hill v. Morehouse Medical Associates, Inc.*, 2003 WL 22019936 at 3.

 Defendants argue that, regardless of their presumptive dismissal argument, Plaintiffs fail to state a conspiracy claim under §1962(d) because the allegations in the complaint are conclusory and vague. Defs. Mot. Dismiss 6. In both the Complaint and the RICO Case Statement, which is incorporated into the Complaint, Plaintiffs detail the ways Defendants conspired to commit the alleged fraudulent acts:

> Starting around 2006, RICO Defendants devised, implemented and coordinated a scheme to profit from recruiting, providing and obtaining low-cost Filipino labor through the H-2B guestworker program.  RICO Defendants conspired to obtain guestworkers to place in various country clubs and hotels in Florida and New York by filing fraudulent applications for H-2B visas.  RICO Defendants also conspired

to defraud the U.S. government, and to defraud and exploit Filipino guestworkers by using misrepresentations regarding working conditions and pay to recruit workers, and by unlawfully underpaying and overworking the guestworkers.

RICO Defendants knowingly agreed to the overall objective of the conspiracy to increase profits by recruiting and exploiting low-cost Filipino laborers, and agreed to commit various predicate acts in furtherance of that scheme.  In order to successfully perpetrate their scheme, Star One Defendants utilized Defendants Villanueva and Fernandez, and formed a partnership with J.E.S. to recruit and process Filipino guestworkers.  Star One Defendants also hired Ravelo to work with Villanueva and Fernandez to supervise, direct, and control the guestworkers once in the United States.

To effectuate the conspiracy, RICO Defendants organized the Enterprise with J.E.S. and its president, Batarilan, to allow Defendants to effectively recruit workers in the Philippines.  Upon information and belief, Star One Defendants, through their agent Defendant Villanueva, sent to J.E.S. in 2006, via email, a job order requesting Filipino workers that contained numerous misrepresentations regarding conditions of employment and wages, including claims that guestworkers would receive free food, housing and transportation while working for Star One.

Defendant Villanueva also personally informed most Philippines Plaintiffs that they would be provided free housing, food and transportation while employed by Star One, despite receiving an email from Defendant J. Carruthers on May 20, 2006 explaining the deductions for food, housing and transportation from employees' pay.  As further evidence of the conspiracy, deductions were taken from the wages of Plaintiffs and other workers for food, housing and transportation, as indicated in payment summaries provided by Defendants.

The conspiracy required Defendants to secure H-2B guestworker visas for the workers recruited from the Philippines.  As evidence of the conspiracy, Defendant Hague, on behalf of Star One Defendants, filed fraudulent petitions for labor certification with the Department of Labor, and for H-2B visas with U.S. Citizenship and Immigration Services in 2006.  These federal agencies require petitioners to state the location of employment, hours, and wages of the guestworkers on whose behalf they are filing the petitions.  As explained in Section (e)(3)(i) *supra*, the petitions filed by Defendant Hague included false information, including: the location of the employment site for the 30 guestworkers, Boca Woods Country Club, where none of the Plaintiffs, including those listed on the petition, ever actually worked; a work schedule of one shift per day, five days per week, though Plaintiffs and other guestworkers were required to work significantly more than this; and wages of $271.12 per week, though Plaintiffs and other guestworkers regularly received wage payments far below this amount.

In order to further effectuate the conspiracy, Defendants acquired houses to place Plaintiffs and other guestworkers and selected agents to supervise, direct, and

16

control the guestworkers in each house, including Defendants Villanueva and Fernandez.  Upon information and belief, Defendant Villanueva made agreements throughout 2006 and 2007 with country clubs and hotels where Plaintiffs and other guestworkers would be assigned and directed the work schedules of Plaintiffs and other guestworkers, and threatened Plaintiffs and other guestworkers with cancellation of visas, arrest and deportation in order to control the guestworkers and compel them to continue working for Star One.

Star One Defendants, through their agent Defendant Villanueva, withheld the I-94 cards of Plaintiffs and other guestworkers whose visas were renewed.  These I-94 cards are the primary evidence of an alien's lawful presence in the United States and are supposed to remain in the alien's possession.  The withholding of these documents, along with the threats of arrest and deportation, effectuated the scheme by creating an environment where the Plaintiffs and their coworkers would feel powerless to leave Defendants, despite the poor working and living conditions.  As evidence of the conspiracy, Defendant Hague, on behalf of Star One, acknowledged in a January 10, 2008 letter to Star One's immigration attorney, that Defendants had been in possession of several of Plaintiffs' I-94 cards prior to their escapes from Star One.

As part of the conspiracy, RICO Defendants underpaid and overworked the Plaintiffs and other workers in order to gain even greater profit from their labor.  As evidence of the conspiracy, Defendant Hague, on behalf of Star One Defendants, signed paychecks throughout 2006 and 2007 for Plaintiffs and other guestworkers that did not include full payment for the hours Plaintiffs and other guestworkers worked.  The payment summaries produced by Star One Defendants and distributed to Plaintiffs and other guestworkers by Ravelo and Defendant Villanueva show that Defendants made unlawful deductions from the wages of Plaintiffs and other guestworkers and failed to pay the minimum wage and overtime payments required by Florida, New York, and federal law.

The predicate acts, including misrepresentations, fraudulent petitions, and actions described *supra* made in furtherance of forced labor and human trafficking, were made for the purpose of profiting by compelling Plaintiffs and other workers to work excessive hours for unlawfully low wages.  Furthermore, Defendants either knew or recklessly disregarded the fact that the misrepresentations were material, and Plaintiffs relied on the misrepresentations.  As a result, Defendants have obtained profits through the exploitation of Plaintiffs and other guestworkers.

RICO Case Stmt. ¶ (n).

     If this Court takes into account the allegations contained in Plaintiffs' Complaint as well as the allegations contained in the RICO Case Statement, accepts the allegations as true and draws all reasonable inferences in favor of Plaintiffs, then the Plaintiffs respectfully submit that

the Court must allow Plaintiffs to move forward with their claims for violations of both 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d). *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003).

**D.    SHOULD THE COURT FIND THAT PLAINTIFFS FAILED TO PLEAD SUFFICIENTLY, PLAINTIFFS SHOULD BE GIVEN LEAVE AMEND THE COMPLAINT.**

In the event this Court determines that Plaintiffs have failed to plead their claims under RICO, 18 U.S.C. §1962(c) and/or 18 U.S.C. §1962(d), with sufficient specificity, Plaintiffs request leave to conduct meaningful discovery in an attempt to alleviate any deficiencies and then file an amended complaint. However, should the Court determine that the Plaintiffs failed to plead sufficiently and, in the unlikely event the Plaintiffs are not provided the opportunity to conduct discovery and amend their Complaint, the Plaintiffs would like to be given the opportunity to amend their Complaint without discovery. Finally, should the Court determine that Plaintiffs failed to plead their RICO claims with sufficient specificity but decline to provide Plaintiffs the opportunity to amend their Complaint, Plaintiffs request that the Court permit Plaintiffs to voluntarily non-suit their claims under RICO 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) *without prejudice* with the right to re-file said causes of action within one year pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

Therefore, Plaintiffs, respectfully ask that Defendants' Motion to Dismiss Plaintiffs' Fifth Claim under the RICO, 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d) be denied; or, in the alternative, that Plaintiffs be given the opportunity to conduct meaningful discovery in order to amend their Complaint; for all attorney's fees and all costs incurred herein; and for all other relief to which they may be entitled, whether or not specifically requested herein.

**II.    PLAINTIFFS' SEVENTH, EIGHTH AND NINTH CLAIMS FOR RELIEF: NEW YORK LABOR LAWS.**

As the Complaint alleges and Defendants acknowledge in their Motion to Dismiss, Defendants were investigated by the New York Attorney General and entered into a settlement agreement with the State of New York. Compl. ¶ 255-57; Defs. Mot. Dismiss 6.  The settlement agreement required Defendants to pay $113,454.00 to a settlement fund ("Fund") that would be distributed to Defendants' eligible former employees. Defs. Mot. Dismiss Exh. A.  Former employees who accepted settlement funds were required to sign a release ("Release"). Id. Plaintiffs do not dispute that individuals, including some Plaintiffs, who signed this release

waived New York labor law claims[8] against Defendants for the covered time period. Defs. Mot. Dismiss Exh. A 21. Further, Plaintiffs agree that Plaintiffs that did not perform work in New York are not entitled to recover under New York labor law.

### A.   PLAINTIFFS RUEDA, CALUYA, AND DE QUIROS' NEW YORK LABOR LAW CLAIMS SHOULD <u>NOT</u> BE DISMISSED.

Plaintiffs Rueda, Caluya, and De Quiros did not sign the Release or accept payments from the Fund and the facts alleged in the Complaint are sufficient to survive a motion to dismiss Plaintiffs' Seventh, Eighth, and Ninth claims.[9]

New facts offered by Defendants in their Motion to Dismiss should not be considered by the Court.  It is well established that, when deciding a motion to dismiss, the court may only address the "four corners" of the complaint, accepting all factual allegations as true and construing them in the light most favorable to plaintiffs.  *St. George,*, 285 F.3d at 1337; *Grossman v. Nationsbank*, 225 F.3d 1228, 1231 (11th Cir. 2000).  In their Motion to Dismiss, Defendants allege that "upon information and belief, the remaining Plaintiffs [Rueda, Caluya, Ordonez and De Quiros] may have also accepted payments from the settlement fund." Defs.' Mot. Dismiss 7.    Defendants' statement regarding plaintiffs Rueda, Caluya, Ordonez and De Quiros is a factual allegation outside of the four corners of the complaint.  *See* Compl. ¶ 258.  As statements in the complaint are presumed to be true for purposes of a motion to dismiss, Defendants' assertion that plaintiffs Rueda, Caluya, Ordonez and De Quiros accepted payments from the Fund cannot provide a basis for dismissing Plaintiffs' claims.[10]  Therefore, Defendants' Motion to Dismiss plaintiff's Rueda, Caluya and De Quiros' Seventh, Eighth, and Ninth claims should be denied.[11]

### B.   PLAINTIFFS AUINGAN, MAGNIFIO, LIWAG, RIPOTOLA, REAL, HALUP, LIM, AND ORDONEZ'S NEW YORK LABOR LAW CLAIMS SHOULD BE DISMISSED.

---

[8] Specifically, claims arising under New York Labor Law Articles 6 or 19 and/or New York Codes, Rules and Regulations, Title 12, Parts 137 or 195.

[9] These are claims under New York law for the minimum wage, overtime and spread of hours, respectively.

[10] Even if it were proper to introduce new facts in a Motion to Dismiss, Defendants offer no basis for their assertion that Plaintiffs Rueda, Caluya, Ordonez and De Quiros accepted payments from the settlement fund. Instead they state only that "*upon information and belief,* the remaining Plaintiffs…*may* have also accepted payments from the settlement fund." Defs. Mot. Dismiss 7 (emphasis added).

[11] See Section B *infra* regarding plaintiff Ordonez.

In their Complaint, Plaintiffs affirmatively alleged that plaintiffs Auingan, Magnifio, Liwag, Ripotola, Real, Halup, and Lim accepted payments from the Fund. Compl. ¶ 258. Although not yet alleged in the complaint, Plaintiff Ordonez also accepted payments from the Fund.[12]   Plaintiffs do not contest that plaintiffs Auingan, Magnifio, Liwag, Ripotola, Real, Halup, Lim, and Ordonez waived their right to claims under N.Y. Lab. L. § § 190 *et seq.,* 650 *et seq.,* and 1 NY COMP. CODES R. & REGS. TIT. § 137-1.7 by signing the Release and are not entitled to further relief under New York labor law. Plaintiffs who had signed the Release did not intend to seek further relief under New York labor law. Plaintiffs thus do not oppose dismissal of plaintiffs Auingan, Magnifio, Liwag, Ripotola, Real, Halup, Lim, and Ordonez's Seventh, Eighth and Ninth claims.

### C.     PLAINTIFFS RELAMPAGOS AND RAMOS' NEW YORK LABOR LAW CLAIMS SHOULD BE DISMISSED.

Plaintiffs agree that plaintiffs Relampagos and Ramos are not entitled to relief under Plaintiffs' Seventh, Eighth, and Ninth claims under New York Labor law because they did not perform work for Defendants in New York.  Plaintiffs Relampagos and Ramos did not intend to seek relief under these laws and do not oppose dismissal of their Seventh, Eighth and Ninth claims.

Plaintiffs' First Amended Complaint will reflect that the Seventh, Eighth, and Ninth claims for relief are as to Plaintiffs Rueda, Caluya, and De Quiros only.

### CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss Plaintiffs' Fifth Claim under RICO, 18 U.S.C. §1962(c) and 18 U.S.C. §1962(d), be denied; for all attorney's fees and all costs incurred herein; and for all other relief to which they may be entitled, whether or not specifically requested herein. Plaintiffs further request that Defendants' Motion to Dismiss Plaintiffs' Seventh, Eighth and Ninth Claims under New York Labor Law be denied as to Plaintiffs Rueda, Caluya, and De Quiros; for all attorney's fees and all costs incurred herein; and for all other relief to which they may be entitled, whether or not specifically requested herein.

---

[12] This new information will be reflected in Plaintiffs' First Amended Complaint.

Dated: November 15, 2010                    Respectfully Submitted,


/s/ Gregory S. Schell
Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
FLORIDA LEGAL SERVICES, INC.
508 Lucerne Avenue
Lake Worth, FL 33460-3819
Telephone: (561) 582-3921
Facsimile: (561) 582-4884
Email: Greg@Floridalegal.org


/s/ Annie Smith
Annie Smith
Visiting Associate Clinical Professor of Law
George Washington University Law School
International Human Rights Clinic
2000 G Street, NW
Washington, DC 20052
Telephone: (202) 994-7659
Facsimile: (202) 994-4693


/s/ Theresa Harris
Theresa Harris, Executive Director

/s/ Allison Lefrak
Theresa Harris, Litigation Director

/s/ Lynsay Gott
Lynsay Gott, Program Director

World Organization for Human Rights USA
2029 P Street NW, Suite 202
Washington, DC 20036
Telephone: (202) 296-5702
Facsimile: (202) 296-5704


Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 15, 2010, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Marlene Quintana Esq. via transmission of Notices of Electronic Filing generated by CM/ECF.

By: <u>  /s/   Gregory S. Schell        </u>
Gregory S. Schell, Esq.