UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

WEST PALM BEACH DIVISION

Case No.: 9:10-cv-80771-KLR

| | |
|---|---|
| Roy Magnifico, et al., | ) |
| | ) |
| Plaintiffs | ) |
| | ) |
| v. | ) |
| | ) |
| Roberto Villanueva, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS STAR ONE STAFFING INC., STAR ONE STAFFING INTERNATIONAL, MARY JANE HAGUE, JOHN CARRUTHERS AND RUTH CARRUTHERS' MOTION TO DISMISS PLAINTIFFS' THIRD, FOURTH, FIFTH AND SIXTH CLAIMS

### PROCEDURAL HISTORY

On November 19, 2010, Plaintiffs filed their First Amended Complaint ("Complaint") alleging causes of action arising from Plaintiffs' fraudulent recruitment and subsequent employment, forced labor and human trafficking by Defendants during 2006 and 2007.  On January 24, 2011, Defendants Star One Staffing, Inc. Star One Staffing International, Mary Jane Hague, Ruth Carruthers and John Carruthers (hereinafter "Defendants")[1] filed a Motion to Dismiss Plaintiffs' RICO and Alien Torts Claims Act claims.

### STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, the complaint need only plead sufficient facts to provide "plausible grounds" that discovery will reveal evidence to support plaintiff's allegations. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007) (citing *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007)).  When applying this standard, the court must accept the factual allegations in the complaint as true and view them in the

---

[1] On January 21, 2011, default was entered against Defendant Redelina Fernandez; an answer or other responsive pleading is due from *pro se* Defendant Roberto Villanueva by February 18, 2011.

1

light most favorable to the plaintiff, drawing all reasonable inferences in the plaintiff's favor.  *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002); *St. Joseph's Hosp., Inc. v. Hosp. Corp. of America*, 795 F.2d 948, 953 (11th Cir.1986); *United States v. Pemco Aeroplex, Inc*., 195 F.3d 1234, 1236 (11th Cir.1999) (*en banc*).

## ARGUMENT

### I.   THIRD & FOURTH CLAIMS FOR RELIEF: ALIEN TORT STATUTE

#### A.   Defendants' Motion to Dismiss Plaintiffs' ATS Claims Should be Denied Because the ATS Has Jurisdiction over Forced Labor and Human Trafficking Claims Regardless of Where the Acts Occurred.

##### 1.   The ATS Provides Jurisdiction Over Violations of the Law of Nations Regardless of Where the Acts Occurred.

The Alien Torts Claims Act of 1789 (hereinafter "ATS") provides that the U.S. federal courts "shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States."  28 U.S.C.  §  1350.  The plain language of the statute, which remains substantially unmodified since its enactment in 1789, does not proscribe a territorial limitation on where the torts alleged can occur.  While reported ATS cases generally concern violations occurring abroad, the statute itself imposes no such requirement.  *See Jama v. INS*, 22 F.Supp.2d 353 (D.N.J. 1998) (finding actionable under the ATS acts that occurred wholly within the territory of the United States).  In fact, the Supreme Court found that the First Congress in 1789 likely intended that the ATS apply to cases in which tort actions occur on U.S. soil, and there is no basis in law to hold otherwise.  *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 720 (2004).

> ###### i.   *The plain language of the ATS demonstrates that Congress did not intend to limit ATS jurisdiction to acts occurring outside the United States.*

Under well-settled principles of statutory interpretation, statutes should be interpreted in accordance with the plain language of the text.  *See Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253 (1992) ("[I]n interpreting a statute a court should always turn first to one, cardinal canon before all others. We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says there."); *see also Caminetti v. United States.*, 242 U.S. 470, 485 (1917); *Nguyen v. United States*, 556 F.3d 1244, 1250 (11th Cir. 2009) ("When interpreting a statute, we always begin with its plain language.").

Here, the ATS makes no mention of where alleged violations must occur. 28 U.S.C. § 1350. It simply states that U.S. federal courts "shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." *Id.* Accordingly, jurisdiction under the ATS vests when: (i) an alien brings a claim, (ii) for a tort, (iii) committed in violation of the law of nations. *Abebe-Jira v. Negewo*, 72 F.3d 844, 847 (11th Cir. 1996); *see also Romero v. Drummond Co.*, 552 F.3d 1303, 1309 (11th Cir. 2008).     Congress has imposed no additional territorial requirements.

### ii. The First Congress likely intended the ATS to apply to violations of the law of nations occurring in the United States.

While a plain reading of the ATS demonstrates that there are no territorial limits to the Act's coverage, congressional intent in enacting the ATS further supports Plaintiffs' position that the ATS applies to domestic conduct. The Supreme Court, when confronted with the question of how to interpret the ATS, found that the Act was most likely intended to provide a judicial remedy for a small set of international law violations, primary among which were "offenses against ambassadors" *in the United States*.  *Sosa*, 542 U.S. at 720.   Because such offenses could have led to war if not adequately redressed, the Court concluded that they were of primary concern to the drafters of the ATS.   *Id.* at 715.   The Court framed its historical understanding with reference to diplomatic scandals of contemporary relevance to the origins of the ATS.  *Id.* at 716-17. The primary example cited by the court was the Marbois incident of 1784, in which De Longchamps, a French adventurer, assaulted the Secretary of the French Legion, Francis Marbois, in Philadelphia.  *Republica v. De Longchamps*, 1 U.S. 111, 112 (1784).  At that time, Marbois had no judicial recourse for the offense, a fact protested by the French minister plenipotentiary.  Eventually De Longchamps was prosecuted in state court for a criminal violation of the law of nations, but the concern remained as to the need to provide high-ranking diplomats with access to judicial remedies in U.S. courts.  *Sosa*, 542 U.S. at 717 & n.11; *see also* Ian Poullaos, *The Nature of the Beast: Using the Alien Tort Claims Act to Combat International Human Rights Violations*, 80 WASH. U. L. Q. 327, 330 & n.24 (2002) (citing MARK W. JANIS & JOHN E. NOYES, INTERNATIONAL LAW: CASES AND COMMENTARY 211 (1997)). The Supreme Court suggested that, in part due to these concerns, the First Congress enacted the ATS.  *Sosa*, 542 U.S. at 717.

The ATS was among the measures enacted by the First Congress to ensure that judicial remedies existed for violations of the law of nations, like assaults on ambassadors. *Id.* The requisite harm under the ATS is a violation of the law of nations, defined as "any claim based on the present-day law of nations . . . [resting] on a norm of international character accepted by the civilized world," *id.* at 725, not that the tort alleged must be international in character.

Since the enactment of the ATS, Congress has not acted to evidence any change in its manifest intent that the ATS apply to violations of the law of nations wherever they occur, including inside the United States. The text of the ATS remains substantially the same as when the statute was originally enacted in 1789. *See id. at* 725 (explaining that "Congress has not in any relevant way amended § 1350 or limited civil common law power by another statute").[2]

### iii. *There is no basis in law for finding that ATS jurisdiction is limited to acts occurring abroad.*

Defendants incorrectly state that, "[t]here does not appear to be any reported cases addressing ATS claims arising out of domestic conduct." Defs.' Motion 3. In fact, *Jama* found actionable violations of the law of nations arising within the United States. 22 F.Supp.2d 353. Surprisingly, this case is not discussed or even cited in Defendants' Motion to Dismiss. Defs.' Mot. Dismiss 3. The case denounced the abuse of asylum applicants by the employees of a private detention facility in New Jersey. In denying private defendants' motion to dismiss, the court found that the abuses allegedly inflicted on plaintiffs "violate the international human rights norm of the right to be free from cruel, unhuman and degrading treatment." *Jama*, 22 F. Supp. 2d at 363. After reviewing the three jurisdictional requirements in the text of the ATS, the court concluded that they were met. *Id.*

Defendants ignore *Jama,* and rely solely on the decision in *Velez v. Sanchez* for the proposition that ATS jurisdiction is available only for torts committed abroad. *Velez v. Sanchez*, No. 04-CV-4797, 2010 U.S. Dist. LEXIS 126586, at *17-18 (E.D.N.Y. Nov.

---

[2] Even when Congress has had the opportunity to amend the ATS in recent years, it did not choose to do so. *See id.*; *see also, e.g.,* Torture Victim Protection Act of 1991, Pub. L. No. 102-256, 106 Stat. 73 (1992); Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108-193, 117 Stat. 2875 (2003) (making no mention of any intent to affect ATS jurisdiction).

30, 2010). Yet even the *Velez* court, which made no mention of the statute's plain language in reaching its conclusion, was obliged to recognize that, per the Supreme Court in *Sosa*, "the 18th–century conception of the statute contemplated that some actionable violations of the law of nations would occur on United States soil." *Id.* at *18 n.5. Amazingly, however, because the Supreme Court mentioned the Marbois affair in its discussion of the ATS' origins, the court in *Velez* went on to decide, without further analysis or legal basis, that the statute should thus be read to require an *additional* international dimension or connection *other* than the violations themselves. *Id.* at *18 & n.5 (pointing out that it was "pure happenstance" that the plaintiff in *Velez* was an alien).[3]

There is no basis for Defendants' sweeping propositions that the ATS does not apply to acts committed in the United States and that plaintiffs' claims are therefore outside the jurisdiction of the ATS. Defendants' Motion to Dismiss Plaintiffs' ATS claims should be denied because ATS jurisdiction extends to all violations of the law of nations, regardless of where the offending acts occurred, and there is no basis in law to find otherwise.

### 2. It is Well-Settled That the ATS Grants Jurisdiction over Claims of Forced Labor and Trafficking.

#### i. *Courts Have Long Recognized that the ATS grants Jurisdiction over Forced Labor and Trafficking.*

Because forced labor and trafficking claims are "well-established" and "universally recognized" violations of the law of nations, every court that has addressed the issue has found that they are actionable under the ATS. *See, Licea v. Curacao Drydock Co., Inc.*, 584 F. Supp. 2d 1355, 1358 & n.5, 1366 (S.D. Fla. 2008) (citing *Doe I v. Unocal Corp.*, 395 F.3d 932, 946 (9th Cir.2002)) ("[F]orced labor and international human trafficking . . . clearly constitute violations of universal and obligatory norms of international law, thereby constituting actionable claims falling well within the jurisdictional grant of the ATS.**"**). Even the court in *Velez*, so heavily relied upon by Defendants, affirmed categorically that there is "*no doubt* that human trafficking and

---

[3] In any event, the instant case clearly has a strong international dimension. Defendants recruited Plaintiffs, Filipino guestworkers, to perform work in the United States. Most of Defendants traveled to the Philippines to participate directly in the recruitment and securing of visas. Further, many of the threats used to coerce and control Plaintiffs relied on Plaintiffs' vulnerable immigration status.

forced labor violate specific norms accepted by the civilized world."  *Velez*, 2010 U.S. Dist. LEXIS 126586, at *17 (emphasis added) (citing *Licea*, 584 F. Supp. 2d 1355).

> ### ii.  *A subsequent statute, such as the TVPRA, which does not expressly repeal the scope of ATS jurisdiction, should not be held to "occupy the field" with respect to specified violations of the law of nations.*

Most courts, including the Eleventh Circuit, have rejected the proposition that subsequently enacted statutes that do not clearly manifest Congress' intent to amend the scope of ATS jurisdiction can preempt otherwise actionable ATS claims.  *See Aldana v. Del Monte Fresh Produce, N.A., Inc*., 416 F.3d 1242, 1250-51 (11th Cir. 2005) (finding that the Torture Victim Protection Act did not preclude ATS jurisdiction over torture claims).  This issue has arisen primarily in relation to the Torture Victim Protection Act (hereinafter "TVPA"), but is equally relevant to the Trafficking Victims Protection Reauthorization Act (hereinafter "TVPRA").  In *Aldana*, the Eleventh Circuit firmly established the principle that clear Congressional intent is required to circumscribe the jurisdictional scope of the ATS.  *Id.* at 1251.  That reasoning is dispositive here.

 At issue in *Aldana* were torture claims brought by union members against their employer under both the ATS and TVPA.  *Id.* at 1245-46.  The court of appeals first considered the plain language of the statutes, highlighting that each incorporated its own definition of torture and finding that "[t]hese two definitions suggest each statute provides a means to recover for torture as that term separately draws its meaning from each statute." *Id.* at 1250.  The court also looked to principles of statutory interpretation to conclude that the required "clear and manifest" intent of Congress to amend the ATS was not discernible from the face of the TVPA, and "amendments by implication are disfavored."  *Id.* at 1251 (quoting *Patel v. Quality Inn So.*, 846 F.2d 700, 704 (11th Cir. 1988)).

The Eleventh Circuit found confirmation for its conclusions in *Sosa*.  There the Supreme Court pointed to the TVPA as an example of Congress providing a "clear mandate" to allow recovery of torture and extrajudicial killing claims,"[b]ut the Court did *not* say that the authority granted in the [TVPA] provided the *exclusive* authority to hear torture claims."  *Id.* at 1250-51 (emphasis added) (citing *Sosa*, 542 U.S. at 728).  To the contrary, the court in *Sosa* expressly stated that Congress had enacted the TVPA to *supplement* the ATS as it had been interpreted by courts up to that point.  542 U.S. at 731.

This approach is consistent with precedent.  Indeed, the Court has long espoused the "cardinal rule […] that repeals by implication are not favored. Where there are two acts upon the same subject, effect should be given to both if possible." *Posadas v. Nat'l City Bank*, 296 U.S. 497, 503 (1936). A repeal or amendment by implication should be found only where the two statutes are irreconcilable or where "the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Id.*; *see also Baloco v. Drummond Co.*, No. 09-16216, 2011 U.S. App. LEXIS 2124, at *15, 18 (11th Cir. Feb. 3, 2011) (finding that the "TVPA is not the exclusive remedy for claims of extrajudicial killing," and that plaintiffs could bring their claim under both the ATS and TVPA).

Most other courts, including the Second Circuit, have joined with the Eleventh Circuit in finding that the TVPA has no preemptive effect on the ATS with respect to overlapping claims. *Romero*, 552 F.3d at 1316; *Kadic v. Karadzic*, 70 F.3d 232, 241 (2d Cir. 1995); *Bowoto v. Chevron Corp*, 557 F. Supp. 2d 1080, 1086 (N.D. Cal. 2008); *Yousuf v. Samantar*, 552 F.3d 371, 374-75 (4th Cir. 2009) (allowing torture claims to proceed under both the ATS and TVPA). *But see Enahoro v. Abubakar*, 408 F.3d 877, 885 (7th Cir. 2005).

The framework analysis described *supra* regarding the TVPA applies equally to the TVPRA.  In fact, the first case to address the relationship between the ATS and the TVPRA, *Adhikari v Daoud & Partners*, 697 F. Supp. 2d 674 (S.D. Texas 2009), adopted the reasoning of the Eleventh and Second Circuits in *Aldana* and *Kadic*, respectively, to find that "the TVPRA and the ATS provide separate and distinct causes of action for the alleged crimes." *Adhikari*, 697 F. Supp. at 688.  Though it directly addresses the question of ATS preemption, Defendants fail to cite *Adhikari* in their Motion to Dismiss.

Once again, Defendants rely on *Velez v. Sanchez*, 2010 U.S. Dist. LEXIS 126586, this time for the claim that the TVPRA should be construed to preempt ATS claims for forced labor and trafficking.  The court in *Velez* held that any jurisdiction the ATS might have over such claims "has now been implicitly withdrawn" as a result of Congress' enactment of the TVPRA.  *Velez*, 2010 U.S. Dist. LEXIS 126586 at *18-19.  This decision ignores the contrary holding in *Adhikari*, as well as the clearly analogous line of cases establishing that enactment of the TVPA cannot be construed as an implicit repeal of ATS jurisdiction, including the Second Circuit's decision to this effect in *Kadic*.  The sole basis for the *Velez's* court's sweeping conclusion that the TVPRA preempts the ATS

is that "as an apparent matter of first impression […], Congress has, as the Supreme Court contemplated it might in *Sosa*, limited ATS jurisdiction by enacting a statute that occupies the field of civil remedies for human trafficking and forced labor." *Id.* at *19-20. In arriving at this conclusion, the court does not look to the plain language of the statutes nor does it engage in any analysis of the established principles for discerning Congress' clear and manifest intent to repeal or amend prior acts through subsequent legislation.

> ### iii. Eleventh Circuit precedent, basic statutory interpretation principles and legislative history all point to a reinforcing role for the TVPRA vis-à-vis the ATS, not preemption.

Fortunately, the Eleventh Circuit in *Aldana* has provided a framework for determining when a statute enacted subsequent to the ATS is intended by Congress to amend its scope and preempt otherwise actionable claims. *See Adhikari*, 697 F. Supp. at 687-88 (citing *Aldana*, 416 F.3d at 1250 and adopting its reasoning to determine that "the TVPRA and the ATS provide separate and distinct causes of action"). One must start with a close reading of the "statutory texts" themselves. *Aldana,* 416 F.3d at 1250. Here, as in *Aldana*, the definitions of the claims at issue come from different sources under the two statutes; the TVPRA provides detailed definitions of both human trafficking (referred to in the TVPRA as "trafficking into servitude") and forced labor, which under the ATS must be ascertained by reference to the "law of nations."[4] 18 U.S.C. § § 1589 and 1590 (2003). Nor is there a "clear and manifest" intent on the face of the TVPRA to amend or repeal ATS jurisdiction in any form. *Id.* at 1251. To the contrary, the TVPRA, like the TVPA, was enacted by Congress to augment remedies for victims of certain serious human rights abuses.[5] Just as the TVPA was found by the Supreme Court in *Sosa* to

---

[4] There are other substantive differences between the two statutes as well. For example, like the TVPA, the TVPRA extends jurisdiction over trafficking claims to U.S. citizen plaintiffs. 18 U.S.C. § 1595; 28 U.S.C. § 1350. And like similar provisions in the TVPA, the TVPRA also adds a ten-year statute of limitations and a requirement for staying civil claims during criminal proceedings; the ATS has neither. 18 U.S.C. § 1595; 28 U.S.C. § 1350.

[5] *See* H.R. REP. NO. 108-264, at 10 (2003) *reprinted in* 2004 U.S.C.C.A.N. 2408, 2408-09 (describing the addition of a private right of action to the TVPRA as part of an overall strategy to "strengthen[] the U.S. Government's ability to combat the worldwide scourge of trafficking in persons" and "enhanc[e] provisions on prevention of trafficking, protection of victims of trafficking, and prosecution of traffickers"); H.R. REP. NO. 102-

supplement the ATS with respect to overlapping claims, 542 U.S. at 753, so too Congress added a civil cause of action to the TVPRA in 2003 in part to help "*enhanc[e]* provisions on prevention of trafficking [and] protection of victims of trafficking"; there is no evidence of any intention to substitute or preclude any existing protections trafficking victims already had at their disposal.  H.R. REP. NO. 108-264, at 10.

Absent the "clear and manifest" intent of Congress to preempt trafficking and forced labor claims under the ATS through its enactment of the TVPRA, this court should find that this statute expressly creates separate and distinct causes of action available to plaintiffs alongside any parallel claims arising under the ATS.

## II.   FIFTH & SIXTH CLAIMS FOR RELIEF: PLAINTIFFS' PLEADINGS INCLUDE SUFFICIENT FACTUAL ALLEGATIONS TO STATE CAUSES OF ACTION UNDER 18 U.S.C. §§ 1962(C) AND 1962(D), AND FLA. STAT. §§ 772.103(3) AND 772.103(4).

Plaintiffs' pleadings include sufficient factual allegations to state causes of action under 18 U.S.C. §§ 1962(c) and 1962(d), and Fla. Stat. §§ 772.103(3) and 772.103(4).  In their Motion to Dismiss, Defendants argue that Plaintiffs failed to include sufficient facts in the Complaint and RICO Case Statement to support the alleged predicate acts or continuity of the RICO enterprise.  Defs.' Mot. Dismiss 5-6.  Defendants also argue that Plaintiffs thus failed to state a claim for conspiracy.  *Id*. at 9.  In fact, Plaintiffs' statement of the RICO cause of action in the Complaint, beginning with ¶ 382 (hereinafter "Statement of the RICO Claim"), contains sufficient factual detail, *see* Complaint ¶¶ 382-475, and the Complaint also includes a detailed Statement of Facts, *id*. at ¶¶ 26-346, certain paragraphs of which are incorporated by reference into the statements of the claims.

Defendants fail to cite to any of these substantial factual recitations, or to the RICO Case Statement at all, nor do Defendants explain why these factual allegations are insufficient to state a cause of action.  Instead, Defendants merely assert that Plaintiffs provided "no supporting facts" for the alleged fraud-related predicate acts, Defs.' Mot. Dismiss 6, and that the pleadings "contain nothing more than vague and conclusory

---

367(I), at 4 (1992), *reprinted in*  1992 U.S.C.C.A.N. 84, 86 (stating that the TVPA would "enhance the remedy already available under [the ATS]").

allegations." *Id.* at 9. The Motion to Dismiss thus offers little more than vague and conclusory explanations for why Plaintiffs' RICO claims should be dismissed.

When factual allegations stated elsewhere in a complaint meet the pleading requirements of Rule 9(b), and are incorporated by reference into a claim, then that claim also satisfies the rule. *See McCarthy v. Barnett Bank of Polk Cnty.*, 750 F.Supp. 1119, 1123 (M.D. Fla. 1990). A court should consider the Complaint in its entirety to determine if the claims are sufficiently pled to notify defendants of their alleged fraudulent activity.[6] *Moe Dreams, LLC v. Sprock*, 2008 WL 4787493, 4 (N.D. Ga. 2008) (unpublished); *Nat'l Numismatic Certification, LLC. V. eBay, Inc.*, 2008 WL 2704404, 16 (M.D. Fla. 2008) (unpublished).

Furthermore, the allegations in a RICO Case Statement should also be considered on a motion to dismiss, *Super Vision Int'l, Inc. v. Mega Int'l Commercial Bank Co., Ltd.*, 534 F.Supp. 2d 1326, 1331 n.2 (S.D. Fla. 2008); *In re Managed Care Litig.*, 135 F.Supp. 2d 1253, 1261 (S.D. Fla. 2001)), and these allow a claim to survive a motion to dismiss even if a complaint does not, taken alone, sufficiently state a claim for relief under RICO. *See Platypus Wear v. Clark Modet & Co., S.L.*, 2008 WL 2557503, 7 (S.D. Fla. 2008) (unpublished).

As detailed below, Plaintiffs' Complaint contains extensive factual allegations that support the alleged predicate acts, which the RICO Case Statement supplements specifically in explanation of each element of the RICO claims. These factual allegations are sufficient to plead the alleged predicate acts, to allege the continuity of the RICO enterprise, and to state a claim for conspiracy under 18 U.S.C. § 1962(d) and Fla. Stat. § 772.103(4).

### A. Plaintiffs' Complaint and Case Statement Include Sufficient Factual Allegations to Support the Alleged Predicate Acts and to Allege Continuity of the RICO Enterprise.

The Complaint and RICO Case Statement contain detailed factual allegations to support both the non-fraud-related predicate acts under the standard required by Fed. R. Civ. P. 8(a)(2) (hereinafter "Rule 8(a)(2)"), and the fraud-related predicate acts under the

---

[6] Even if a court determines that incorporation of previously stated facts is insufficient to adequately state a claim, the proper remedy is not dismissal, but repleading. W*agner v. First Horizon Pharmaceutical Corp.*, 464 F.3d 1273, 1280 (11th Cir. 2006).

heightened standard of Fed. R. Civ. P. 9(b) (hereinafter "Rule 9(b)"), as well as to support the continuity of the RICO enterprise.

Defendants misstate the law by suggesting that Rule 9(b) applies to the pleading of any predicate act under RICO. *See* Defs.' Mot. Dismiss 5. While the Rule 9(b) heightened pleading standard for fraud claims also applies to the pleading of fraud-related predicate acts in a RICO claim, *see Brooks v. Blue Cross and Blue Shield of Florida, Inc*., 116 F.3d 1364, 1380-81 (11th Cir. 1997), as the Eleventh Circuit has made clear, non-fraud-related predicate acts need not meet the Rule 9(b) standard if the statutory elements of the act do not require proof of misrepresentation. *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1355 (11th Cir. 2008). Thus, when a complaint alleges a pattern of racketeering activity based on both fraud and non-fraud-related predicate acts, only the fraud-related acts in the pleadings are governed by Rule 9(b). *Id*. at 1356.

### 1. The Complaint and Case Statement include sufficient factual allegations to support the alleged fraud-related predicate acts.

#### i. Legal standard for pleading fraud-related predicate acts.

Generally, to survive a motion to dismiss fraud claims, or RICO claims based on fraud-related predicate acts, "Plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." *Brooks*, 116 F.3d at 1380.[7] While plaintiffs must allege the occurrence of "some kind of deceptive conduct," *American Dental Ass'n v. Cigna Corp*., 605 F.3d 1283, 1292 (11th Cir. 2010), plaintiffs claiming mail and/or wire fraud are not required to allege that the mail or wire communications themselves included fraudulent information. *Bridge v. Phoenix Bond & Indem. Co*., 553 U.S. 639, 647, 128 S.Ct. 2131, 2138 (2008). Further, the relevant communication need not be an essential element of the fraud scheme. *Schmuck v. United States*, 489 U.S. 705, 710-11, 109 S.Ct. 1443, 1448 (1989). Additionally, plaintiffs are not required to show that they

---

[7] *But see Durham v. Business Management Associates*, 847 F.2d 1505, 1512 (11th Cir. 1988) (while information regarding date, place, or time would provide the particularity required by Rule 9(b), plaintiffs may fulfill the particularity requirement without this information).

relied on the defendants' fraudulent misrepresentations or statements. *Bridge*, 553 U.S. at 661, 128 S.Ct. at 2145; *Southeast Laborers Health & Welfare Fund v. Bayer Corp*., 655 F.Supp. 2d 1270, 1280 (S.D. Fla. 2009).

Plaintiffs must also allege facts indicating intent or knowledge on the part of Defendants. *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000). However, plaintiffs are not required to allege facts that would conclusively prove intent or knowledge. Plaintiffs' allegations need only "give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Beck v. Mfrs. Hanover Trust Co*., 820 F.2d 46, 49-50 (2d Cir. 1987) (overruled on other grounds by *United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989)). *See also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997). Pleadings can establish an inference of intent if the allegations indicate motive and opportunity for fraud, or indicate conscious behavior by defendants. *Beck*, 820 F.2d at 50. Particularly where, as here, Plaintiffs have indicated in the Complaint that they have supporting documents to evidence their allegations,[8] and Defendants have offered no alternative explanations for the circumstances surrounding the mail and wire communications and fraudulent immigration petitions alleged, the pleadings should not fail on the issue of Defendants' intent to commit fraud. *See id*. at 50.

Rule 9(b)'s heightened pleading standard is designed to ensure that defendants are given sufficient notice of their alleged fraudulent actions to properly answer the complaint. *See Seville Indus. Mach. Corp. v. Southmost Mach. Corp*., 742 F.2d 786, 791 (3d Cir. 1984); *General Cigar Co. v. CR Carriers, Inc.,* 948 F.Supp. 1030, 1037 (M.D. Ala. 1996). However, application of Rule 9(b) "must not abrogate the concept of notice pleading." *Durham v. Bus. Mgmt. Assocs.,* 847 F.2d 1505, 1511 (11th Cir. 1988).

---

[8] As explained below, the Complaint includes very specific descriptions of documents signed and transmitted by Defendants, including November 30 and December 31, 2007 letters from Defendant Hague to the United States Citizenship and Immigration Service Vermont Service Center, an October 18, 2006 email from Defendant Hague to Nonimmigrant Visa Chief, Joseph Tilghman, and a January 10, 2008 letter from Defendant Hague to immigration attorney Lilian Cueva, Complaint ¶¶ 14 n.3,53-54; an Application for Alien Employment Certification signed by Defendant Hague on February 28, 2006, *id*. at ¶ 43-44; a Petition for Nonimmigrant Workers signed by Defendant Hague on September 7, 2006, *id*. at ¶ 45; an October 13, 2006 email from Judge Andrew Hague to U.S. Ambassador to the Philippines, Honorable Ambassador Kristie Kenney, i*d*. at ¶ 51 n.16.

*Cf., Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-65 (2007) ("a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," but merely enough factual allegations to make the right to relief more than "speculative").  *See also*, *Halpin v. David*, 2009 WL 1753759, 11 (N.D. Fla. 2009) (unpublished).   When a claim names multiple defendants, plaintiffs should "reasonably" describe each defendant's role, *Brooks*, 116 F.3d at 1381, but need not explain every action of each individual defendant throughout the scheme.  *Id.; Peters v. Amoco Oil Co*., 57 F.Supp. 2d 1268, 1276-1277 (M.D. Ala. 1999); *Jackson v. First Fed. Sav.,* 709 F.Supp. 863, 878 (E.D. Ark. 1988); *In re AnnTaylor Stores Securities Litig.,* 807 F.Supp. 990 (S.D.N.Y. 1992); *Hinsdale Women's Clinic, S.C. v. Women's Health Care,* 690 F.Supp. 658, 663 (N.D. Ill.1988).  Moreover, plaintiffs may properly group defendants together in the statement of the claim when, as here, the statement of facts sets forth more specific descriptions of defendants' roles.  *Nat'l Numismatic Certification, LLC. v. eBay, Inc*., 2008 WL 2704404, 16 (M.D. Fla. 2008) (unpublished).

### ii.     *Plaintiffs' pleadings satisfy the Rule 9(b) requirements for fraud-related predicate acts.*

Contrary to Defendants' assertions in the Motion to Dismiss, the Complaint and RICO Case Statement include numerous factual statements of the kind required by Rule 9(b).  The Statement of the RICO Claim in the Complaint contains multiple allegations regarding specific documents and misrepresentations, time and place of communication, which Defendant made the communication, how Plaintiffs were misled, and what Defendants gained from the fraud.  For instance, the statement of the claim alleges that Defendant Hague, on behalf of Star One Defendants, signed an Application for Alien Employment Certification on February 28, 2006 which was mailed to the Department of Labor.  Complaint ¶¶ 420, 431.  This form "certified that the 31 guestworkers sought would be employed as waiters and waitresses at Boca Woods Country Club" and that "each employee would work one shift per day, five days per week."  *Id*. at ¶¶ 421-22.  The Complaint also states that Defendant Hague, on behalf of Star One Defendants, also signed a Petition for Nonimmigrant Workers on September 7, 2006, which was mailed to U.S. Citizenship and Immigration Services, and details what information was in this petition.  *Id*. at ¶¶ 423-24, 431.   The Complaint also describes the date and content of additional mail and wire communications made by Defendant Hague on behalf of Star

One Defendants. *Id*. at ¶¶ 432, 439. The Statement of the RICO Claim further describes how Plaintiffs were misled regarding employment and compensation conditions. *Id*. at ¶¶ 419, 425-26, 432. Finally, the Complaint specifies how Defendants benefited from the scheme, "in the form of recruitment fees, increased profits and income." *Id*. at ¶ 402. *See also*, ¶¶ 387, 400.

In addition to allegations focused on the communications involved in the fraud-related predicate acts, the Statement of the RICO Claim includes explanations of each RICO Defendants' role in the scheme, and allegations that give rise to an inference of knowledge and/or intent. The Complaint describes Defendants' roles at ¶ 395 (Defendant Star One), ¶ 396 (Defendant Star One International), and ¶ 399 (Defendant Hague), and provides additional information regarding Defendants' roles at ¶¶ 420-24, 432, and 439. Further, intent and/or knowledge can be inferred from allegations contained in the pleadings. For instance, Defendant Hague, on behalf of Defendant Star One and Defendant Star One International (collectively "Star One Defendants"), signed and submitted immigration and labor petitions and letters containing assertions regarding working conditions that did not prove to be true, *id*., and that Defendant Hague, on behalf of Star One Defendants, signed Plaintiffs' paychecks. *Id*. at ¶ 399. Based on these circumstances, Defendant Hague and Star One Defendants should have been aware that Plaintiffs were not being placed at the work cites that these Defendants certified in the immigration and labor petitions, and should have been aware of how many hours Plaintiffs were working and how much they were being paid.

Beyond these allegations in the Statement of the RICO Claim, additional details are contained in the Statement of Facts and RICO Case Statement. The Statement of Facts contains additional information regarding the communications and specifies which Defendant made them, *id*. at ¶¶ 43-45, 53, 60, 63-64, 69-70, 72, 96-110, how Plaintiffs were misled, *id*. at ¶¶ 46, 48, 271-72, how Defendants' benefited, *id*. at ¶¶ 2, 37, 204, 305-07, as well as allegations that give rise to an inference of intent and/or knowledge. *Id*. at ¶¶ 43-45, 70, 190-91, 291-92. The Statement of Facts also alleged that "Star One Defendants employed Defendant Villanueva to recruit Plaintiffs from the Philippines, arrange their housing in the United States, coordinate for their positions in various country clubs and hotels, and schedule each employee's hours," and that "[a]t all times relevant to this action, Defendant Villanueva and Defendant Fernandez were acting

14

within the scope of their employment as agents, employees, and representatives of Star One Defendants," *id*. at ¶ 63-64, which renders many of the predicate acts committed by Defendants Villanueva and Fernandez[9] equally attributable to the Star One Defendants.

Plaintiffs' RICO Case Statement includes precise factual detail which is more than sufficient to satisfy Rule 9(b), including information regarding "the time, place, and contents of the misrepresentations or omissions and identity of to whom and by whom the misrepresentations or omissions were made," RICO Case Stmt. ¶ (e)(3), "[d]ates of the predicate acts, the participants, and facts surrounding each predicate act," *id*. at (e)(2), each Defendants' role in the scheme, *id*. at ¶¶ (b), (e)(3), (f)(5), and facts giving rise to an inference of intent and/or knowledge. *Id*. at ¶ (e)(3).[10]

## 2. The Complaint and RICO Case Statement Include Sufficient Factual Allegations to Support the Alleged Non-Fraud-Related Predicate Acts.

While it is not clear from their Motion to Dismiss whether Defendants are challenging the sufficiency of the pleading of non-fraud-related predicate acts, the pleadings do include sufficient factual allegations to support these remaining predicate acts. Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." This serves to give defendants fair notice of, and explain the grounds for, the claim. *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1964 (2007). Pleadings must indicate the claim is "plausible," but need not establish a

---

[9] While Defendants Villanueva and Fernandez did not bring the instant Motion to Dismiss, the predicate acts they committed are attributable to Star One Defendants.

[10] If the Court determines that the pleadings do not satisfy Rule 9(b) with regard to the fraud-related predicate acts, the Court should apply a relaxed reading of the 9(b) requirements under the circumstances of this case. If a plaintiff "lacks access to all facts necessary to detail his claim," courts may apply a relaxed Rule 9(b) standard. *Corley v. Rosewood Care Center, Inc*., 142 F.3d 1041, 1051 (7th Cir. 1998). *See also Rotella v. Wood*, 528 U.S. 549, 560, 120 S.Ct. 1075, 1083-84 (2000); *U.S.* ex rel. *Clausen v. Laboratory Corp. of America, Inc*., 290 F.3d 1301, 1314 n.25 (11th Cir. 2002). In conformity with Fed. R. Civ. P. 11(b)(3), courts have allowed such claims to survive motions to dismiss when the pleadings included enough factual information to indicate the claim is plausible and that discovery would lead to supporting evidence. *See Hill v. Morehouse Medical Associates, Inc*., 2003 WL 22019936, 3 (11th Cir. 2003) (unpublished); *Rotella*, 528 U.S. at 560, 120 S.Ct. at 1083-84.

likelihood that plaintiffs will successfully prove their allegations at trial. *Id*. at 556, 1965. Plaintiffs' pleadings meet this standard.

Forced Labor

The Statement of the RICO Claim includes details regarding RICO Defendants' use of threats of harm, Complaint ¶ 405, and abuse of law, *id*. at ¶¶ 405-06, to secure forced labor. The Statement of Facts includes additional detail explaining the actions of RICO Defendants and their agents regarding the use of threats of harm and abuse of law to secure forced labor. *Id*. at ¶¶ 117-89. The RICO Case Statement also provides facts regarding the forced labor allegation. RICO Case Stmt. ¶ (e)(2)(i).

Trafficking in Persons for the Purposes of Forced Labor and Involuntary Servitude

The Statement of the RICO Claim includes details regarding RICO Defendants' recruitment, Complaint ¶ 410, harboring, *id*. at ¶ 411, transporting, *id.* at ¶ 412, and providing of Plaintiffs in furtherance of forced labor. *Id*. at ¶ 413. The Statement of Facts elaborates on these details. *See id*. at ¶¶ 34, 50, 95, 206-59, 63, 151, 239, 277, 281. The RICO Case Statement also provides facts regarding the predicate act of trafficking. RICO Case Stmt. ¶ (e)(2)(ii).

Unlawful Conduct with Respect to Documents in Furtherance of Trafficking

The Statement of the RICO Claim includes details regarding RICO Defendants' confiscation of Plaintiffs' I-94 documents in furtherance of trafficking and forced labor. Complaint ¶¶ 406, 417. The Statement of Facts elaborates on this unlawful confiscation, *id*. at ¶¶ 167-72, as does the RICO Case Statement. RICO Case Stmt. ¶ (e)(2)(i), (e)(2)(iii).

Unlawful Acts in Support of Racketeering Enterprises through<br>Interstate and Foreign Travel

The Statement of the RICO Claim includes details regarding RICO Defendants' travel to the Philippines, and between Florida and New York in support of the racketeering scheme. Complaint ¶¶ 443, 446-47. The Statement of Facts also elaborates on Defendants' travel, *id*. at ¶¶ 34, 50, 60, 237-43, as does  the RICO Case Statement. RICO Case Stmt. ¶ (e)(2)(vii).

> **3. The Complaint and RICO Case Statement Include Sufficient Factual Allegations to Indicate Continuity of the RICO Enterprise.**

16

Plaintiffs' Complaint and RICO Case Statement also include sufficient factual detail to indicate the continuity of the RICO enterprise.  Courts divide the concept of continuity into two forms: closed-ended continuity representing "a closed period of repeated conduct;" and open-ended continuity, based on "past conduct that by its nature projects into the future with a threat of repetition."  *H.J. Inc. v. Northwestern Bell Telephone Co*., 492 U.S. 229, 241-43, 109 S.Ct. 2893, 2902 (1989).  Plaintiffs have provided factual allegations that support both types of continuity.

### i.   *Closed-ended continuity.*

A complaint may support an allegation of closed-ended continuity "by proving a series of related predicates extending over a substantial period of time."  *Id.* at 242, 2902.  A substantial period of time, according to the Supreme Court, is more than "a few weeks or months."  *Id*.  The Eleventh Circuit has stated that alleged RICO schemes lasting less than one year do not establish closed-ended continuity.  *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1266 (11th 2004).  While this Circuit has not definitively stated a minimum amount of time that would be considered "substantial," a two-year period has been held to qualify.  *United States v. Starrett*, 55 F.3d 1525, 1549 (11th Cir. 1995).  *See also*, *Colonial Penn Ins. Co. v. Value Rent-A-Car, Inc.,* 814 F.Supp. 1084, 1094 (S.D. Fla.1992) (finding closed-ended continuity in a case involving a two-year period and numerous predicate acts).  When making this determination, Courts also consider "number of victims, number of racketeering acts, variety of racketeering acts, whether the injuries were distinct, complexity and size of the scheme, and nature or character of the enterprise or unlawful activity." *Ward v. Nierlich*, 617 F.Supp.2d 1226, 1238 (S.D. Fla. 2008) (citations omitted).

The Complaint alleges a RICO scheme lasting well over one year.  The first predicate act of mail fraud alleged in the Complaint occurred in February 2006, when Defendant Hague signed the Application for Alien Employment Certification.  Complaint ¶ 420.  The predicate acts of trafficking, forced labor, and unlawful conduct with respect to documents continued until November 2007. *Id*. at ¶ 413.  The Complaint alleges a scheme involving numerous victims, beyond the thirteen Plaintiffs.  *Id*. at ¶ 29-30, 53, 427.  The Complaint also alleges a complex scheme that involved defrauding the U.S. and Philippine governments as well as the victims, *id*. at ¶¶ 43, 45, 69-70, 420, 423, 432, placed victims in employment positions in at least two states, *id*. at ¶¶ 277-84, 447, at

numerous locations within those states.  *Id*. at ¶¶ 277, 281.  The RICO Case Statement elaborates on these allegations.  RICO Case Stmt. ¶¶ (e)(2), (e)(3), (f), (n).

>  ii.  ***Open-ended continuity***.

Open-ended continuity is based on "past conduct that by its nature projects into the future with a threat of repetition."  *H.J., Inc.,* 492 U.S. at 242, 109 S.Ct. at 2902.  It is not dependent on duration, and schemes lasting a short period of time may qualify.  *Id*. The alleged predicate acts must establish a threat of repetition, either in-and-of themselves, or because "the predicate acts or offenses are part of an ongoing entity's regular way of doing business."  *Id*.  *See also*, *Allstate Ins. Co. v. Palterovich*, 653 F.Supp.2d 1306, 1320 (S.D. Fla. 2009).  The entity's business may be an otherwise legitimate business, or it may have been formed for a criminal purpose.  *H.J., Inc.* 492 U.S. at 243, 109 S.Ct. at 2902.  Even if a defendant only participates in a scheme for a very short period of time, this may establish open-ended continuity if the pleadings allege that the enterprise itself has a "long-term existence and regular way of doing business that poses the threat of continued racketeering activity."  *United States v. Church*, 955 F.2d 688, 694 (11th Cir. 1992).  *See also*, *United States v. Browne*, 505 F.3d 1229, 1263 (11th Cir. 2007).

The Complaint and RICO Case Statement contain facts indicating that the RICO scheme presents a threat of continued racketeering activity because the predicate acts were the Defendants' "regular way of doing business."  *See id*.  RICO Defendants recruited multiple groups of Filipino employees, carrying out recruitment in both the United States and Philippines, utilizing immigration, mail and wire fraud, as well as the other alleged predicate acts, throughout all phases of recruiting, Complaint ¶¶ 41-116, 420, 423, 427, 432, and subsequent overseeing and exploiting of the recruits.  *Id*. at ¶¶ 117-89, 206-59, 271-32.  This pattern of using racketeering acts in the regular conduct of the business, in combination with the RICO Case Statement allegation that Defendants continue to recruit guestworkers, RICO Case Stmt. ¶ (e)(6), establishes a threat of continued activity.

>  **B.  The Facts and Allegations Set Forth by Plaintiffs Sufficiently Support a Claim for a RICO Conspiracy.**

In their Motion to Dismiss, Defendants argue that in failing to state a claim under 18 U.S.C. §1962(c) and Fla. Stat. § 772.103(3), Plaintiffs necessarily failed to state a

claim for conspiracy under 18 U.S.C. §1962(d) and Fla. Stat. § 772.103(4).  Defs.' Mot. Dismiss 9.   Defendants alternatively argue that Plaintiffs fail to state a claim for conspiracy regardless of the presumptive dismissal. *Id.*

**1.  Plaintiffs' allegations were sufficiently specific to support claims under 18 U.S.C. §1962(c) and Fla. Stat. 772.103(3) and therefore defendants' presumptive dismissal argument fails with respect to claims for conspiracy.**

As detailed above, Plaintiffs alleged sufficient facts with the requisite particularity to support the statutory elements of a claim under 18 U.S.C. § 1962(c) and Fla. Stat. 772.103(3).  Accordingly, Defendants' presumptive dismissal argument with regard to Plaintiffs' claims for violations of 18 U.S.C. §1962(d) and Fla. Stat. 772.103(4) must fail.

**2.  Plaintiffs' allegations were sufficiently specific to support claims under 18 U.S.C. §1962(D) and Fla. Stat. 772.103(4).**

After plaintiffs successfully establish the right to relief under 18 U.S.C. §1962(c) and Fla. Stat. 772.103(3), they may show a conspiracy to violate 18 U.S.C. §1962(d) and Fla. Stat. 772.103(4) by presenting evidence that defendants entered into an agreement to breach the statute. *United States v. Starett*, 55 F. 3d 1525, 1542 (11th Cir. 1995). Plaintiffs can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendants agreed to the overall objective of the conspiracy; or (2) by showing that the defendants agreed to commit two predicate acts.  *Republic of Panama*, 119 F.3d at 950 (quoting *United States v. Church,* 955 F.2d 688, 694 (11th Cir. 1992)). Plaintiffs need not offer direct evidence of a RICO agreement; the existence of conspiracy "may be inferred from the conduct of the participants." *Id.* at 950 (quoting *Church*, 955 F.2d at 695).  "Conduct" that would indicate agreement may be commission of any act that would further the object of the conspiracy. *Liquidation Com'n of Banco Intercontinental, S.A. v. Renta*, 530 F.3d 1339, 1353 (11th Cir. 2008). Plaintiffs "can prove an agreement on an overall objective by circumstantial evidence showing that each defendant must necessarily have known that the others were also conspiring to participate in the same enterprise though a pattern of racketeering activity." *Starett*, 55 F.3d at 1542. If plaintiffs prove an agreement on an overall objective, then it is not necessary that each defendant agree to personally commit two predicate acts. *Id.*  Further, plaintiffs need not prove that each defendant agreed with all other individual defendants, or that each defendant was

aware of all of the scheme's details. *Liquidation Com'n of Banco Intercontinental*, 530 F.3d at 1353 (citing *Starrett,* 55 F.3d at 1544).

Defendants argue that, regardless of their presumptive dismissal argument, Plaintiffs fail to state a RICO conspiracy claim because the allegations in the Complaint are "vague and conclusory," though Defendants do not explain this argument.  Defs.' Mot. Dismiss 9. However, Plaintiffs detail the ways Defendants conspired to commit the alleged fraudulent acts.  The Statement of the RICO Claim includes express allegations referencing evidence of the conspiracy, Complaint ¶¶ 465-69, 471-72, and the Statement of Facts includes additional relevant facts regarding the development of the conspiracy. *Id*. at 57, 63.  Furthermore, the RICO Case Statement specifically includes a section on the RICO conspiracy detailing facts and circumstantial evidence that, at the very least, give rise to an inference of a conspiracy agreement.  RICO Case Stmt. ¶ (n).

### C.  Should the Court Find that Plaintiffs Failed to Plead Sufficiently, Plaintiffs Should Be Given Leave to Amend the Complaint.

If this Court considers the allegations contained in Plaintiffs' Complaint as well as the RICO Case Statement, accepts the allegations as true and draws all reasonable inferences in favor of Plaintiffs, then Plaintiffs respectfully submit that the Court must allow Plaintiffs to move forward with their claims for violations of 18 U.S.C. §§1962(c) and 1962(d) and Fla. Stat. §§ 772.103(3) and 772.103(4). *See Hill v. White,* 321 F.3d 1334, 1335 (11th Cir. 2003).[11]

For the foregoing reasons, Plaintiffs respectfully request that Defendants' Motion to Dismiss the Third, Fourth, Fifth and Sixth Claims be denied, request attorneys' fees and costs and all other relief to which they may be entitled.

Dated: February 10, 2011                                    Respectfully Submitted,

                                                            /s/ Gregory S. Schell
                                                            Gregory S. Schell

---

[11] If this Court determines that Plaintiffs failed to plead their RICO claims with sufficient specificity, Plaintiffs request leave to conduct discovery and file an amended complaint. Should the Court decline to provide Plaintiffs the opportunity to amend their Complaint, Plaintiffs request that the Court permit Plaintiffs to voluntarily non-suit their claims under 18 U.S.C. §§ 1962(c) and 1962(d) and Fla. Stat. §§ 772.103(3) and 772.103(4) *without prejudice* with the right to re-file said causes of action within one year pursuant to Rule 41(a) of the Federal Rules of Civil Procedure.

Florida Bar Number 287199
Migrant Farmworker Justice Project
FLORIDA LEGAL SERVICES, INC.
508 Lucerne Avenue
Lake Worth, FL 33460-3819
Telephone: (561) 582-3921
Facsimile: (561) 582-4884
Email: Greg@Floridalegal.org


/s/ Annie Smith
Annie Smith
Visiting Associate Clinical Professor of Law
George Washington University Law School
International Human Rights Clinic
2000 G Street, NW
Washington, DC 20052
Telephone: (202) 994-7659
Facsimile: (202) 994-4693


/s/ Theresa Harris
Theresa Harris, Executive Director

/s/ Allison Lefrak
Allison Lefrak, Litigation Director

/s/ Lynsay Gott
Lynsay Gott, Program Director

World Organization for Human Rights USA
2029 P Street NW, Suite 202
Washington, DC 20036
Telephone: (202) 296-5702
Facsimile: (202) 296-5704


Counsel for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 10, 2011, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Marlene Quintana Esq. via transmission of Notices of Electronic Filing generated by CM/ECF and on Roberto Villanueva via U.S. Mail to 4699 NW 7th Ave, Miami, FL 33127.

/s/ Gregory Schell
Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
FLORIDA LEGAL SERVICES, INC.
508 Lucerne Avenue
Lake Worth, FL 33460-3819
Telephone:     (561) 582-3921
Facsimile:      (561) 582-4884
Email: Greg@Floridalegal.org
