UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

Case No.: 10-CV-80771-RYSKAMP/VITUNAC

ROY MAGNIFICO, et al.,

    Plaintiff,

v.

ROBERTO VILLANUEVA, et al.,

    Defendant.
_____/

## AMENDED ORDER DENYING MOTION TO DISMISS[1]

**THIS CAUSE** comes before the Court on defendants Star One Staffing, Inc., Star One Staffing International, Inc., Mary Jane Hague, John Carruthers, and Ruth Carruthers's ("defendants") motion to dismiss plaintiffs' third, fourth, fifth, and sixth claims **[DE 48]** filed on January 24, 2011.[2]  Plaintiffs filed a response in opposition **[DE 50]** on February 10, 2011.  Defendants filed a reply **[DE 54]** on February 22, 2011.  This matter is ripe for adjudication.

**I.    Background**[3]

---

[1] This order supersedes the Court's original order denying the defendants' motion to dismiss **[DE 77]** entered on April 19, 2011.

[2] On March 18, 2011, the Court granted plaintiff's motion for leave to file a second amended complaint. *See* **[DE 18]**. In the order, the Court noted that the proposed second amended complaint did not appear to affect any of the issues raised in the instant motion to dismiss. The Court indicated that it would treat the instant motion to dismiss as if it were directed at the second amended complaint. The Court gave the parties the opportunity to object to this course of action. A review of the docket reveals that neither side objected. Accordingly, to conserve judicial and party resources, the Court will adjudicate the instant motion without requiring the parties to re-file the motion and their briefs. For convenience, the Court will cite to the page numbers and paragraph numbers in the first amended complaint and amended RICO statement.

[3] As required, the Court "accept[s] factual allegations in the [amended] complaint as true to the extent they are uncontested and, in cases of conflict, construe[s] all reasonable inferences in [plaintiff's] favor." *Fraser v. Smith*, 594 F.3d 842, 846 (11th Cir. 2010) (citing *SEC v. Carillo*, 115 F.3d 1540, 1542 (11th Cir. 1997)). The following description is meant to be a summary of the voluminous facts alleged in the complaint and the plaintiffs' RICO statement. If the Court requires the use of specific factual allegations, it will include those in the analysis section.

1

Plaintiffs[4], citizens of the Philippines, seek damages from the defendants based on allegations of forced labor and human trafficking in addition to violations of both federal and state fair labor laws for denial of overtime compensation and other common law claims. The defendants are: (1) Star One Staffing, Inc., a Florida corporation, with its principal office located in Miami, Florida; (2) Star One Staffing International, Inc., a Florida corporation with its principal office located in Miami, Florida;[5] (3) Mary Jane Hague is president, treasurer, and director and registered agent of Star One and Star One International; (4) John Carruthers is Chief Financial Officer of Star One and the secretary, treasurer and a director of Star One International; (5) Ruth Carruthers is vice president, secretary, and director of Star One; (6) Roberto Villanueva was an agent, employee, and representative at all times relevant to this action and was formerly vice president of the international division of Star One; and (7) Redelina Fernandez was an agent, employee, and representative of Star One Defendants at all times relevant to this action.

The defendants allegedly recruited the plaintiffs from the Philippines and the United States, using fraudulent visa applications, false promises, and misrepresentations regarding the terms and conditions of employment to induce plaintiffs to work for the defendants in the United States. Plaintiffs allege that defendants forced them to live in severely crowded housing and to work long hours in country clubs and hotels in Florida and New York. To ensure that plaintiffs complied with their demanding work schedule, defendants threatened plaintiffs with arrest, imprisonment, deportation, cancellation of their visas, loss of work, lawsuits, and black-listing. Defendants also allegedly convinced plaintiffs that they had close relationships with officials in

---

[4] The plaintiffs are Roy Magnifico, Roma Lim, Rezza Real, Jeannette Halup, Bonifacio Ramos, Lucille Liwag, Ross Ripotola, Raul Rueda, Aries Caluya, Aris Ordonez, Ritche Relampagos, Precival De Quiros, and Jose Auingan. In their second amended complaint, plaintiffs added five plaintiffs: Denlit Fausto, Cesar Ramos, Irene David, Arnold Laxamana, and Robert Bautista.
[5] Plaintiffs allege that Star One and Star One International operated as a single entity and share the same address in Miami.

both the United States and Philippine governments. Plaintiffs also allege that defendants deducted exorbitant monthly fees from plaintiffs' paychecks for food, housing, and transportation despite having promised during recruitment that these would be provided free of charge. As a result of this alleged "campaign of fraud and coercion," plaintiffs constantly feared the defendants and believed that they had no choice other than to obey their orders and to continue working. **[DE 28]** at 2.

Plaintiffs assert claims arising from the violation of their rights under the Trafficking Victims Protection Act, 18 U.S.C. §§ 1589, 1590, 1595, the Alien Tort Statute ("ATS"), 28 U.S.C. § 1350, the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c), (d), and the Fair Labor Standards Act, 19 U.S.C. §§ 201 et. seq. Plaintiffs also allege various state law and common law claims. For purposes of this motion, the relevant claims are: violation of the Alien Tort Statute—Involuntary Servitude and Force Labor (count three); violation of the Alien Tort Statute—Human Trafficking (count four); violation of the RICO Act, conspiracy to violate the RICO Act, and violation of the Florida Civil Remedies for Criminal Practices Act (counts five and six).

## II.     Legal Standard

Federal Rule of Civil Procedure Rule 8(a) requires "a short and plain statement of the claims" that "will give the defendant fair notice of what the plaintiff's claim is and the ground upon which it rests." When considering a motion to dismiss, the Court must accept all of the plaintiff's allegations as true. *Hinshon v. King & Spalding*, 467 U.S. 69, 73 (1984). However, the Court need not accept legal conclusions as true. *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.  Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  Thus, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 1940.  Further, "a court's duty to liberally construe a plaintiff's complaint in the face of a motion to dismiss is not the equivalent of a duty to re-write it for her."  *Peterson v. Atlanta Housing Auth.*, 998 F.2d 904, 912 (11th Cir. 1993).

**III.    Analysis**

In their motion, defendants argue that plaintiffs' claims for violation of the Alien Tort Statute and RICO claims  should be dismissed.  Defendants assert that the Alien Tort Statute ("ATS") does not apply to torts committed within the United States.  Defendants also assert that by enacting the Trafficking Victims Protection Reauthorization Act ("TVPRA"), Congress has limited the applicability of the Alien Tort Statute because the TVPRA occupies the field of civil remedies for forced labor and human trafficking.  As to the RICO claims, defendants assert that the plaintiffs failed to alleged sufficient facts in both the complaint and in their RICO statement to state a claim under either section of the RICO Act or its Florida counterpart.  Defendants seek an order dismissing all of these claims with prejudice.

### A. Alien Tort Statute Claims

In count three, plaintiffs allege that defendants Star One, Star One International, Mr. Villanueva, and Ms. Fernandez violated the ATS by subjecting the plaintiffs to involuntary servitude and/or forced labor. Plaintiffs allege that these actions violated the law of nations including customary international law as reflected, expressed, and defined in multilateral treaties and other international instruments, international and domestic judicial decisions, and other authorities. Defendants' alleged offending acts include manipulation of legal documents, psychological coercion, abused and threatened abuse of the legal process, and threats of physical force in order to exact work or service from the plaintiffs which the plaintiffs did not voluntarily offer. In count four, plaintiffs allege that the defendants Star One, Star One International, Mr. Villanueva, and Ms. Fernandez engaged in human trafficking by recruiting, transporting, transferring, harboring, or receiving the plaintiffs through the use of the threat of force, coercion, fraud, deception, and the abuse of power and/or a position of vulnerability.

Defendants argue that these claims should be dismissed for two reasons. First, defendants contend that the ATS does not grant jurisdiction over claims for torts occurring within the United States. Second, defendants contend that by passing the TVPRA, Congress eliminated jurisdiction over claims for human trafficking and forced labor brought pursuant to the ATS. The Court considers these arguments in turn.

The ATS provides: "The district courts shall have original jurisdiction of any civil action by an alien for a tort only, committed in violation of the law of nations or a treaty of the United States." 28 U.S.C. § 1350. To bring a cause of action under the ATS, the plaintiff must be an alien suing for a tort committed in violation of the law of nations. *Abebe-Jira v. Negewo*, 72 F.3d 844, 847 (11th Cir. 1996) (citing *Kadic v. Karadzic*, 70 F.3d 232, 236 (2d Cir. 1995)). The

statute says nothing about where the cause of action must arise.  Defendants point to *Velez v. Sanchez*, __ F. Supp. 2d __, No. 04-CV-4797 (FB)(CLP), 2010 WL 4852321 (E.D.N.Y. 2010), to support their position that the statute applies only to torts committed outside of the United States.  In *Velez*, a district court in New York held that a plaintiff could not bring a claim under the ATS for human trafficking occurring outside of the United States.  *Id.* at *6.  Although the court recognized that "human trafficking and forced labor violate specific norms accepted by the civilized world," the court found that the ATS "has always been understood as covering torts committed abroad."  *Id.*  (citing *Sosa v. Alvarez-Machain*, 542 U.S. 692, 715 (2004)).  Because the plaintiff's claims in the case arose out of conduct occurring exclusively in the United States, the court held that the claims were not within the statute's grant of jurisdiction.  *Id.*  In a footnote, however, the court noted that while the ATS could conceivably apply to torts occurring in the United States, the case before it lacked an "international savor" as the plaintiff's "status as a foreign national [was] pure happenstance; she could just as easily have been sent from Idaho as from Ecuador."  *Id.* at n.5.

Despite the court's holding in *Velez*, the undersigned finds that the ATS grants jurisdiction for torts committed both inside and outside of the United States, particularly when those torts have an "international savor," as do the torts in this case where the defendants allegedly trafficked many of the plaintiffs into this country under false pretenses and then forced the plaintiffs to work here in sub-standard conditions under threats of deportation.  According to the Supreme Court in *Sosa*, the requisite harm necessary to bring a claim under the ATS is a violation of the law of nations, which is "any claim based on the present-day law of nations . . . [resting] on a norm of international character accepted by the civilized world."  *Sosa*, 542 U.S. at

725.[6] Neither the Supreme Court nor the text of the statute says anything of an extraterritorial requirement. In short, to sue under the ATS, plaintiffs must be aliens suing in tort for a violation of the law of nations. This case meets those jurisdictional requirements. Nothing more is required and this Court declines to implement an extraterritoriality requirement when Congress and the United States Supreme Court have not done so. *Accord Jama v. U.S. I.N.S.*, 22 F. Supp. 2d 353 (D.N.J. 1998) (allowing claim under ATS for torts occurring domestically).

Defendants also assert that by passing the TVPRA, Congress intended to make the TVPRA the exclusive remedy for human trafficking and forced labor claims. There is a divide among circuits on the question of whether the TVPA—the precursor to the TVPRA—preempts actions brought under the ATS. Importantly, the Eleventh Circuit and the Second Circuit have clearly held that the enactment of the TVPA did not affect the scope of the ATS. *Aladana v. Del Monte Fresh Produce, Inc.*, 416 F.3d 1242, 1250 (11th Cir. 2005); *Kadic v. Karadzic*, 70 F.3d at 241 ("The scope of the Alien Tort Act remains undiminished by enactment of the Torture Victim Act."). The Seventh Circuit, however, has held that by passing the TVPA, Congress implicitly supplanted claims for human trafficking and forced labor under the ATS. *Enahoro v. Abubakar*, 408 F.3d 877, 885 (7th Cir. 2005).

Because the Eleventh Circuit has clearly indicated that claims for human trafficking and forced labor may be brought simultaneously under both the TVPA and the ATS, it would appear that these claims may also be brought under both the TVPRA and the ATS. Defendants disagree, arguing that there are substantial differences between the TVPRA and the TVPA, such that a finding of preemption is justified in the case of the TVPRA. Specifically, defendants

---

[6] "Claims cognizable under the ATS are those that are 'specific, universal, and obligatory' international legal norms." *Adhikari v. Daoud & Partners*, 697 F. Supp. 2d 674, 686 (S.D. Tex. 2009) (quoting *Sosa*, 542 U.S. at 732). While the Supreme Court in *Sosa* urged the lower courts to exercise restraint in recognizing such norms, *id.* at 725, the undersigned has no doubt that human trafficking and forced labor violate specific norms accepted by the civilized world.

assert that the TVPRA contains no express definitions regarding torture or human trafficking and instead uses broad-based language which would be appropriate if a court needed to evaluate the laws of nation. In defendants' view, these differences are sufficient for the Court to find that Congress clearly intended to prevent plaintiffs from pursuing claims for human trafficking and forced labor under the ATS.

The Court disagrees with defendants' position. In *Aldana*, the Eleventh Circuit laid out a framework for the Court to utilize when determining whether Congress intended to amend the and limit the scope of the ATS through the passage of another statute. 416 F.3d at 1250-51. In determining that the TVPA did not preempt claims for torture brought under the ATS, the Eleventh Circuit considered statutory text, precedent, and principles of statutory construction. This Court will consider the interplay between the TVPRA and the ATS using the same framework.

First, the Court compares the statutory texts. As with the TVPA, as noted by the Eleventh Circuit in *Aldana*, the definitions of the claims at issue are drawn from different sources under the two statutes. The TVPRA, which is a reauthorization of the TVPA, provides definitions for both human trafficking and forced labor while the definitions of these terms under the ATS must be ascertained by referenced to the law of nations. Even further, as noted by the plaintiffs, the TVPRA differs from the ATS in at least two other ways: (1) the TVPRA applies to U.S. citizen plaintiffs, but the ATS does not; and (2) the TVPRA includes a statute of limitations and a requirement for staying civil claims during criminal procedures, but the ATS does not. *See* 18 U.S.C. §§ 1589, 1590. These statutory differences are sufficient to show that Congress

intended that claims for human trafficking and forced labor under the ATS to survive Congress's passage of the TVPRA.[7]

Second, precedent, as noted above, supports the conclusion that Congress did not intend the TVPRA to be the exclusive remedy for victims of human trafficking and forced labor. The Eleventh Circuit has held that claims under the ATS were not were not preempted by Congress's passage of the TVPA. *Aldana*, 416 F.3d at 1250-51 (citing *Sosa*, 124 S.Ct. at 2761-62; *Abebe-Jira v. Negewo*, 72 F.3d 844, 847-48 (11th Cir. 1996)); *Contra Enahoro v. Abubakar*, 408 F.3d 877, 884-86 (7th Cir. 2005); *see also Adhikari*, 697 F. Supp. 2d at 687-88 (adopting the reasoning of the Eleventh Circuit in *Aldana* and the Second Circuit in *Kadic* in finding that the TVPRA and the ATS provide separate and distinct causes of action for human trafficking and forced labor). After reviewing the statutes and the reasoning of the Eleventh Circuit in *Aldana*, the Court sees no reason to treat the TVPRA differently from the TVPA.

Third, principles of statutory construction heavily favor a finding that Congress did not intend to preempt recovery for human trafficking and forced labor under the ATS when it passed the TVPRA. The Eleventh Circuit has held that "amendments by implication are disfavored. Only when Congress' intent to repeal or amend is clear and manifest will we conclude that a later act implicitly repeals or amends an earlier one." *Patel v. Quality Inn. So.*, 846 F.2d 700, 704 (11th Cir. 1988). Congress's intent to repeal or amend the ATS as it applies to human trafficking and forced labor claims through its passage of the TVPRA is anything but clear. Given the fact that Congress knew that the courts, including the Eleventh Circuit, were allowing

---

[7] Defendant also asserts that the addition of a private right of action under the TVPRA is indicative of Congress's intent to preempt claims for human trafficking and forced labor under the ATS. The Court disagrees. In passing the TVPRA, Congress intended to add to, and not subtract from, the remedies available to those pursuing these claims. *See* H.R. No. 108-264, at 10 (2003) *reprinted* in 2004 U.S.C.C.A.N. 2408, 2408-09 (addition of private cause of action was part of strategy to "strengthen [] the U.S. Government's ability to combat the worldwide scourge of trafficking in person" and to "enhanc[e] provisions on prevention of trafficking, protection of victims of trafficking, and prosecution of traffickers").

plaintiffs to bring claims simultaneously under both the ATS and the TVPA, Congress could have easily indicated in the TVPRA that it intended to amend the ATS. It did not. Absent any evidence that Congress intended to prevent litigants from being able to bring claims for human trafficking and forced labor under both statutes, this Court declines to amend the ATS by implication. *See Aldana*, 416 F.3d at 1251 ("To accept that the [TVPA] provides the exclusive remedy for acts of torture is to accept that it amends the [ATS]. Such an intent is not apparent from the face of the statute, and 'amendments by implication are disfavored.'").

### B. RICO Claims

Defendants also assert that the plaintiffs have failed to allege facts demonstrating the elements necessary to state a cause of action under the civil—both Florida and federal—RICO statutes. Specifically, defendants assert that the plaintiffs' factual allegations are not pled with the requisite level of specificity required under Federal Rule of Civil Procedure 9(b). Defendants also argue that the plaintiffs fail to allege facts sufficient to support each of the elements of the predicate acts alleged in the complaint. Additionally, defendants assert that plaintiffs failed to provide sufficient allegations that the predicate acts demonstrated conduct of a continuing nature. Finally, defendants assert that because the RICO claims are insufficient, the Court should necessarily dismiss the RICO conspiracy claims.

To state a claim under § 1962(c) of the RICO Act, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985).[8] Racketeering activity includes, *inter alia*, such fraud-related

---

[8] Interpretation of Florida's RICO Act "is informed by case law interpreting the federal RICO statute . . . on which Chapter 772 is patterned." *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994). "Because 'Florida courts often look to the Federal RICO decisions for guidance in interpreting and applying the act[,]' *Fla. Software Sys., Inc. v. Columbia/HCA Healthcare Corp.*, 46 F. Supp. 2d 1276, 1284 (M.D. Fla. 1999), the analysis we apply to the plaintiffs' federal RICO claims is equally applicable to their state RICO claims." *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1263-64 (11th Cir. 2004).

10

predicate acts as mail, wire, and immigration document fraud in addition to non-fraud acts relating to forced labor and human trafficking as found in 18 U.S.C. §§ 1581-1592. *See* 18 U.S.C. § 1961(1). "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." *Pelletier v. Zweifel*, 921 F.2d 1465, 1498 (11th Cir. 1991). Immigration document fraud occurs when a person "knowingly forges, counterfeits, alters, or falsely makes any immigrant or nonimmigrant visa, permit, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States or utters, uses, attempts to use, possesses, obtains, accepts, or receives any such visa, border crossing card, alien registration receipt card, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States, knowing it to be forged, counterfeited, altered, or falsely made, or to have been procedure by means of any false claim or statement, or to have been otherwise procured by fraud or unlawfully obtained . . .." 18 U.S.C. § 1546. Forced labor occurs when someone "knowingly provides or obtains the labor or services of a person by any one of, or by any combination of, the following means—(1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person; (2) by means of serious harm or threats of serious harm to that person or another person; (3) by means of the abuse or threatened abuse of law or legal process; or (4) by means of any scheme plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint." 18 U.S.C. § 1589(a). Human trafficking in persons with the purpose of forced labor and involuntary servitude under

18 U.S.C. § 1590 occurs when "someone knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services . . .."

To prove a pattern of racketeering activity, the plaintiffs "must show at least two racketeering predicates that are related, and that they amount to or pose a threat of continued criminal activity." *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1291 (11th Cir. 2010) (citing *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).  There are two types of continuity: closed-ended and open-ended.  *H.J. Inc.*, 492 U.S. at 241.  Closed-ended continuity is established by "proving a series of related predicates extending over a substantial period of time."  *Id.* at 242.  In the Eleventh Circuit, "closed-ended continuity cannot be met with allegations of schemes lasting less than a year."  *Jackson*, 372 F.3d at 1266.  Open-ended continuity may be established by either showing that the predicate acts were a part of a "regular way of doing business" or threaten repetition in the future.  *Id.* at 1265.

To survive a motion to dismiss, RICO claims based solely on fraud-related predicate acts such as mail, wire, or immigration document fraud, must be plead with particularity.  *Cigna*, 605 F.3d at 1291. To satisfy Federal Rule of Civil Procedure 9(b), the "plaintiffs must allege (1) the precise statements, documents, or misrepresentations made; (2) the time, place and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud."  *Brooks v. Blue Cross and Blue Shield of Florida, Inc.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997).  Plaintiffs' reliance on the defendants' fraudulent misrepresentations or statements is not required.  *Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 661 (2008); *Southeast Laborers Health & Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1280 (S.D. Fla. 2009).

Additionally, plaintiffs must allege facts regarding defendants' intent or knowledge. *Langford v. Rite Aid of Alabama, Inc.*, 231 F.3d 1308, 1312 (11th Cir. 2000). These allegations need only "give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Beck v. Mfrs. Hanover Trust Co.*, 820 F.2d 46, 49-50 (2d Cir. 1987), *overruled on other grounds by United States v. Indelicato*, 865 F.2d 1370 (2d Cir. 1989); *see also Republic of Panama v. BCCI Holdings (Luxembourg) S.A.*, 119 F.3d 935, 949 (11th Cir. 1997).

Defendants assert that plaintiffs' factual allegations do not meet the heightened pleading standard require by Rule 9(b), but fail to specifically point out to the Court how the plaintiffs' factual allegations fail to meet the standard. Plaintiffs correctly argue that the Rule 9(b) heightened pleading standard applies only to the fraud-related predicate acts which, in this case, include allegations of mail, wire, and immigration document fraud. Plaintiffs point to several allegations in the complaint and in the RICO statement which specifically allege, in compliance with *Brooks* and Rule 9(b), the "who, what, where, when, why, and how" of fraud. *See* **[DE 28]** at ¶¶ 420-427, 431 (*e.g.*, "Defendant Star One submitted an Application for Alien Employment Certification, a form that must be submitted to the U.S. Department of Labor in order to secure H-2B guestworkers, signed by Defendant Hague on February 28, 2006, that contained material misrepresentations."). After reviewing the factual allegations relating to the fraud-related predicate acts, and given the defendants' failure to specifically point out how these allegations fail to meet the Rule 9(b) and *Brooks* standard, the Court finds that these allegations are sufficient.[9] *See* **[DE 28]** at ¶¶ 420-428.

---

[9] Defendants do not challenge the plaintiffs' sufficiency or plausibility of the allegations regarding the non-fraud predicate acts including: (1) forced labor in violation of 18 U.S.C. § 1589; (2) trafficking in persons for purposes of forced labor and involuntary servitude in violation of 18 U.S.C. § 1590 and Fla. Stat. § 787.06; and (3) unlawful conduct with respect to documents in furtherance of trafficking in violation of 18 U.S.C. § 1592(a). Accordingly, while the Court declines to *sua sponte* consider the sufficiency of these allegations, a brief review of these allegations shows that they are likely sufficient under *Twombly* and Rule 8.

The inquiry does not end here, however. Defendants contend that plaintiffs' RICO claims fail because the complaint does not adequately plead continuity. Plaintiffs disagree, asserting that the complaint contains sufficient allegations to support both closed-ended and open-ended continuity. As noted, closed-ended continuity requires the plaintiff to prove a series of related predicates extending over a substantial period of time. *H.J. Inc.*, 492 U.S. at 242. Plaintiffs admit that in the Eleventh Circuit, RICO schemes lasting less than one year do not establish closed-ended continuity, *Jackson*, 372 F.3d at 1266, but assert that this case nevertheless satisfies the closed-ended continuity requirement. Based on the cases offered by the parties and on the undersigned's own research, there does not appear to be a case in the Eleventh Circuit or any of its district courts where a judge has found closed-ended continuity for a scheme lasting less than two years. The scheme in this case lasted for approximately eighteen months. Defendants, of course, argue that this cannot satisfy the closed-ended continuity requirement. Plaintiffs assert that because the scheme exceeds the one-year threshold, it can constitute closed-ended continuity. While the Court recognizes that this scheme lasted less than the two years found to be sufficient by the Eleventh Circuit, there are no cases in which the Eleventh Circuit has found definitively that a scheme lasting less than two years cannot meet the closed-ended continuity requirement. In determining whether the predicates extended over a "substantial period of time," the Court may also consider the "number of victims, number of racketeering acts, variety of racketeering acts, whether the injuries were distinct, complexity and size of the scheme, and nature or character of the enterprise or unlawful activity." *Ward v. Nierlich*, 617 F. Supp. 2d 1226, 1238 (S.D. Fla. 2008). Given the fact this scheme lasted eighteen months, involved at least eighteen distinct victims, involved several predicate acts including mail fraud, wire fraud, immigration document fraud, and human trafficking and forced labor, and spanned at

least two states and two countries, the Court finds that these related predicate acts extended over a period of time substantial enough to meet the closed-ended continuity requirement, despite lasting less than two years. The Court recognizes that this is a close question and one on which reasonable jurists might disagree. However, this case is in its infancy. Discovery may show that the scheme actually lasted less time, which would likely require summary judgment in favor of the defendants on the RICO claims. Of course, discovery, may show that the scheme lasted longer than eighteen months and touched even more victims. For purposes of a motion to dismiss, the Court must accept the veracity of the factual allegations and draw all inferences in favor of the plaintiffs. Doing so, the Court finds that the complaint adequately pleads closed-ended continuity.

Defendants also assert that the complaint fails to allege facts sufficient to meet the open-ended continuity requirement. The Court disagrees. Assuming the veracity of plaintiffs' allegations, there is certainly a threat of continued racketeering activity. Plaintiffs allege that defendants' regular way of doing business was to recruit groups of Filipino employees in both the United States and the Philippines through mail, wire, and immigration document fraud. Plaintiffs also allege that defendants' regular way of doing business was to force these workers into forced labor and involuntary servitude. According to the plaintiffs' RICO statement, the defendants continue to recruit guestworkers. *See* **[DE 34]** at 13. If true, it is certainly reasonable for the Court to infer that this is defendants' regular way of doing business and presents a threat of repetition in the future.

Finally, defendants argue that plaintiffs fail to state a RICO conspiracy claim because the allegations in the complaint are vague and conclusory. Defendants, however, fail to elaborate. § 1962(d) of the RICO Act "makes it illegal for anyone to conspire to violate one of the

substantive provisions of RICO, including § 1962(c)." *Cigna*, 605 F.3d at 1293 (citing 18 U.S.C. § 1962(d)). "A plaintiff can establish a RICO conspiracy claim in one of two ways: (1) by showing that the defendant agreed to the overall objective of the conspiracy; or (2) by showing that the defendant agreed to commit two predicate acts." *Republic of Panama*, 119 F.3d at 950. Direct evidence of a RICO agreement is not required; rather, the existence of a conspiracy "may be inferred from the conduct of the participants." *Id.* at 950.

"[T]he overall objective of the conspiracy is to increase profits by recruiting and exploiting low-cost Filipino laborers." *See* **[DE 34]** at ¶n. A review of the RICO statement **[DE 34]** and the complaint reveal that plaintiffs have included allegations of allowing the Court to infer the existence of a conspiracy. *See* **[DE 28]** at ¶¶ 460-72; RICO Statement **[DE 34]** at ¶n. Assuming their veracity, these allegations are sufficient to state a claim for RICO conspiracy.

## IV. Conclusion

The Court has carefully considered the motion, response, reply, applicable law, and pertinent portions of the record including the plaintiffs' complaints and RICO statements. For the foregoing reasons, it is hereby

**ORDERED AND ADJUDGED** that defendants' motion to dismiss **[DE 48]** is **DENIED**. Defendants shall file an answer to the second amended complaint within twenty days from the date of the original order denying defendants' motion to dismiss.

**DONE AND ORDERED** in Chambers at West Palm Beach, Florida this 26 day of April, 2011.

/s/ Kenneth L. Ryskamp
KENNETH L. RYSKAMP
UNITED STATES DISTRICT JUDGE