# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

### WEST PALM BEACH DIVISION

No.: 9:10-cv-80771-KLR

—————————————————————— )
Roy Magnifico, Roma Lim, Rezza Real, )
Jeanette Halup, Bonifacio Ramos, )
Lucille Liwag, Ross Ripotola, Raul )
Rueda, Aries Caluya, Aris Ordonez, )
Ritche Relampagos, Percival De Quiros )
Jose Auingan, Denlit Fausto, Cesar )
Ramos, Irene David, Arnold Laxamana, and )
Robert Bautista, )
 )
               Plaintiffs, )
 )
 )
          v. )
 )
Roberto Villanueva, Redelina Fernandez, )
Star One Staffing, Inc., Star One Staffing )
International, Mary Jane Hague, John )
Carruthers, and Ruth Carruthers, )
 )
            Defendants. )
—————————————————————— )

## PLAINTIFFS' MOTION FOR DEFAULT JUDGMENT
## AGAINST DEFENDANTS ROBERTO VILLANUEVA AND REDELINA FERNANDEZ

In accordance with Rule 55(b)(2) of the Federal Rules of Civil Procedure, Plaintiffs move for entry of default judgment against Defendants Roberto Villanueva and Redelina Fernandez ("Defaulting Defendants").

- Plaintiff Jose Auingan seeks a joint and several judgment in the amount of $809,517.41 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Robert Bautista seeks a joint and several judgment in the amount of $818,582.04 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Aries Caluya seeks a joint and several judgment in the amount of $755,501.50

against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Irene David seeks a joint and several judgment in the amount of $890,234.41 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Percival De Quiros seeks a joint and several judgment in the amount of $556,438.29 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Denlit Fausto seeks a joint and several judgment in the amount of $883,857.89 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Jeanette Halup seeks a joint and several judgment in the amount of $774,471.90 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Arnold Laxamana seeks a joint and several judgment in the amount of $787,338.91 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Roma Lim seeks a joint and several judgment in the amount of $822,013.63 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Lucille Liwag seeks a joint and several judgment in the amount of $775,910.54 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Roy Magnifico seeks a joint and several judgment in the amount of $890,854.67 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Aris Ordonez seeks a joint and several judgment in the amount of $777,453.11 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Bonifacio Ramos seeks a joint and several judgment in the amount of $446,237.70 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Cesar Ramos seeks a joint and several judgment in the amount of $1,283,018.09 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Rezza Real seeks a joint and several judgment in the amount of $751,991.86 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Ritche Relampagos seeks a joint and several judgment in the amount of $342,208.32 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Ross Ripotola seeks a joint and several judgment in the amount of $516,766.37 against Defendants Roberto Villanueva and Redelina Fernandez.

- Plaintiff Raul Rueda seeks a joint and several judgment in the amount of $663,527.17 against Defendants Roberto Villanueva and Redelina Fernandez.

1

The total joint and several judgment Plaintiffs seek against Defendants Roberto Villanueva and Redelina Fernandez is $13,545,923.81.  In support of this motion, Plaintiffs submit the attached proposed Order and Memorandum of Law in Support of Plaintiffs' Motion for Default Judgment.

Respectfully submitted this 30th day of July 2012,

/s/ Gregory Schell
Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
FLORIDA LEGAL SERVICES, INC.
508 Lucerne Avenue
Lake Worth, FL 33460-3819
Telephone:     (561) 582-3921
Facsimile:     (561) 582-4884
Email:         Greg@Floridalegal.org

/s/ Annie Smith
Annie Smith
George Washington University Law School
International Human Rights Clinic
2000 G Street, NW
Washington, DC 20052
Telephone: (202) 994-7659
Facsimile: (202) 994-4693

Counsel for Plaintiffs

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**

**WEST PALM BEACH DIVISION**

No.: 9:10-cv-80771-KLR

| | |
|---|---|
| _____ | ) |
| Roy Magnifico, Roma Lim, Rezza Real, | ) |
| Jeanette Halup, Bonifacio Ramos, | ) |
| Lucille Liwag, Ross Ripotola, Raul | ) |
| Rueda, Aries Caluya, Aris Ordonez, | ) |
| Ritche Relampagos, Percival De Quiros | ) |
| Jose Auingan, Denlit Fausto, Cesar | ) |
| Ramos, Irene David, Arnold Laxamana, and | ) |
| Robert Bautista, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| Roberto Villanueva, Redelina Fernandez, | ) |
| Star One Staffing, Inc., Star One Staffing | ) |
| International, Mary Jane Hague, John | ) |
| Carruthers, and Ruth Carruthers, | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR DEFAULT**
**JUDGMENT AGAINST DEFENDANTS ROBERTO VILLANUEVA**
**AND REDELINA FERNANDEZ**

## TABLE OF CONTENTS

**INTRODUCTION**...................................................................................................................... **5**

**PROCEDURAL HISTORY** ....................................................................................................... **5**

**STATEMENT OF FACTS**........................................................................................................ **7**

**STANDARD FOR ENTRY OF RULE 55(B) DEFAULT JUDGMENT** ................................ **9**

**CLAIM-BY-CLAIM ANALYSIS** ........................................................................................... **10**

**CALCULATION OF DAMAGES**........................................................................................... **39**

**CONCLUSION** ....................................................................................................................... **40**

## INTRODUCTION

Plaintiffs, survivors of human trafficking and forced labor, come before this Court to request a default judgment against Defendants Roberto Villanueva and Redelina Fernandez. They ask this Court to award them damages for the harms caused by Defendants Villanueva and Fernandez.  Plaintiffs filed this lawsuit to vindicate their rights and to protect the rights of others. Although Defendant Villanueva appeared in this matter, he never responded to Plaintiffs' complaint. Plaintiffs fear he continues to recruit and employ others from the Philippines, subjecting them to the same exploitation Plaintiffs experienced.   Plaintiffs seek a default judgment against Defendants Villanueva and Fernandez to ensure that those who commit forced labor and human trafficking are held accountable and cannot continue their business with impunity.

## PROCEDURAL HISTORY

Plaintiffs filed suit on June 30, 2010 asserting claims arising under the Trafficking Victims Protection Reauthorization Act (18 U.S.C. §1589 and 18 U.S.C. §1590); Alien Tort Statute (28 U.S.C. § 1350); Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §1962(c) and 1962(d)); Fair Labor Standards Act (19 U.S.C. §§201 et. seq.); and state statutes and common law.[1]

Defendants Roberto Villanueva and Redelina Fernandez ("Defaulting Defendants") were each served with the complaint in this case on December 26, 2010. (Docket Entries 38 and 39.) Defendant Fernandez never appeared and default was entered against her on January 21, 2011. (Docket Entry 46.)  On January 18, 2011, Defendant Villaneuva's original deadline to answer the complaint, he sought and received his first extension and was ordered to file his answer or otherwise respond by February 28, 2011. (Docket Entries 41 and 42.) On February 16, 2011, Defendant Villanueva filed a motion to strike and a motion for a more definite statement. (Docket Entries 52 and 53.) Plaintiffs filed a second amended complaint on March 18, 2011. (Docket Entry 66.) The Court denied Defendant Villanueva's Rule 12 motions on the merits, and ordered him to file an answer or otherwise respond by May 25, 2011. (Docket Entries 79 and

---

[1] On March 18, 2011, the complaint was amended to add five additional Plaintiffs. (Docket Entry 66.)

80.) Defendant Villanueva instead filed a motion to dismiss for improper venue. (Docket Entry 82.) This Court denied that motion and ordered Defendant Villanueva to file an answer by July 25, 2011. (Docket Entry 85.) The Court warned Defendant Villanueva that failure to file an answer "will result in the entry of default." (Id.) Nevertheless, on the due date, Defendant Villanueva filed a motion requesting a fourteen-day extension to file his answer. (Docket Entry 86.) The Court granted an extension, and ordered Defendant Villanueva to file an answer or otherwise respond by August 9, 2011, warning that no further extensions would be granted. (Docket Entry 87.) On August 9, 2011, instead of an answer, Defendant Villanueva filed a "Motion Sham and Fraud in Court has Been Committed by the Plaintiffs." (Docket Entry 89.) Plaintiffs filed a motion to strike Defendant Villanueva's motion, and this Court granted Plaintiffs' motion on October 25, 2011. (Docket Entries 93 and 99.) In the order granting Plaintiffs' motion to strike, the Court provided Defendant Villanueva with a final opportunity to respond to Plaintiffs' complaint. (Docket Entry 99.) Defendant Villanueva never filed an answer and default was entered against him on November 1, 2011. (Docket Entry 100.)

Plaintiffs now respectfully request that this Court grant a Rule 55(b) default judgment against Defaulting Defendants for the following claims: forced labor and human trafficking under the Trafficking Victims Protection Reauthorization Act (Claims 1 and 2); involuntary servitude, forced labor and human trafficking under the Alien Tort Claims Act (Claims 3 and 4); Federal and Florida Racketeering Influenced Corrupt Organizations Act (Claims 5 and 6); and intentional infliction of emotional distress (Claim 15). Claims for minimum wage and overtime under the Fair Labor Standards Act (Claim 7); minimum wage under the Florida Minimum Wage Act (Claim 8); minimum wage, overtime and spread of hours under New York Labor Laws (Claims 9, 10 and 11); fraud and negligent misrepresentation (Claim 13); and unjust enrichment (Claim 14) are brought only against Defendant Villanueva.[2]

---

[2] In addition to claims against Defendants Fernandez and Villanueva, Plaintiffs also brought suit against Star One Staffing, Inc., Star One Staffing International, Mary Jane Hague, Ruth Carruthers and John Carruthers ("Non-Defaulting Defendants"). Plaintiffs' suit against Non-Defaulting Defendants ended on June 26, 2012. (Docket Entry 125.)

## STATEMENT OF FACTS

According to the undisputed facts, during 2006, Defendants recruited dozens of Filipino nationals, including Plaintiffs, to work in country clubs in South Florida. 2d. Am. Compl. ¶¶ 7-8, 29, 50, 60-68 (Docket Entry 66.)  At the time of their recruitment, Plaintiffs were either already lawfully employed as temporary H-2B visa workers in the U.S. or were residing in the Philippines and Saipan and were granted H-2B visas to work for Defendants.[3] 2d. Am. Compl. 6, 30-31, 95-97; Auingan Aff. ¶ 4 (Exhibit A-1); Bautista Aff. ¶¶ 2-3 (Exhibit A-2); Caluya Aff. ¶ 6 (Exhibit A-3); David Aff. ¶¶ 2-3 (Exhibit A-4); De Quiros Aff. ¶¶ 2-5 (Exhibit A-5); Fausto Aff. ¶ 2 (Exhibit A-6); Halup Aff. ¶¶ 2-3 (Exhibit A-7); Laxamana Aff. ¶ 2 (Exhibit A-8); Lim Aff. ¶¶ 2-3 (Exhibit A-9); Liwag Aff. ¶¶ 2-4 (Exhibit A-10); Magnifico Aff. ¶ 2 (Exhibit A-11); Ordonez Aff. ¶¶ 2-4 (Exhibit A-12); B. Ramos Aff. ¶¶ 2-4 (Exhibit A-13); C. Ramos Aff. ¶¶ 2-6 (Exhibit A-14); Relampagos Aff. ¶¶ 2-3 (Exhibit A-15); Real Aff. ¶¶ 2-3 (Exhibit A-16); Ripotola Aff. ¶ 2 (Exhibit A-17); Rueda Aff. ¶ 2 (Exhibit A-18). Defendant Villanueva used fraudulent visa applications and false promises regarding the terms and conditions of employment to induce Plaintiffs to leave their families and existing jobs, to incur debt, and to work for Defendants.  2d. Am. Compl. ¶¶ 30-31, 42-49, 70-71, 74-82, 99-121, 125. Auingan Aff. ¶¶ 3-7; Bautista Aff. ¶¶ 2-4; Caluya Aff. ¶¶ 6-7; David Aff. ¶¶ 4-5, 16; De Quiros Aff. ¶¶ 4-8; Fausto Aff. ¶¶ 3-4; Halup Aff. ¶¶ 4-5; Laxamana Aff. ¶¶ 2-5; Lim Aff. ¶¶ 2-7; Liwag Aff. ¶¶ 3-7; Magnifico Aff. ¶¶ 2-4, 6; Ordonez Aff. ¶¶ 2, 4-6; B. Ramos Aff. ¶¶ 6-10; C. Ramos Aff. ¶ 6, 27-28; Relampagos Aff. ¶¶ 2-5; Real Aff. ¶¶ 3-6; Ripotola Aff. ¶¶ 3-11; Rueda Aff. ¶¶ 6-8.

Once employed by Defendants, Plaintiffs were placed in overcrowded housing and compelled to work long hours for country clubs, hotels and banquet halls throughout South Florida and Long Island. 2d. Am. Compl. ¶¶ 34-37, 160-66, 209-15, 220-50, 259-63, 264-74, 293-303; Auingan Aff. ¶¶ 8, 10, 17-18; Bautista Aff. ¶¶ 6-8; Caluya Aff. ¶¶ 8, 11-12; David Aff. ¶¶ 7-12, 14-15, 35; De Quiros Aff. ¶¶ 9-11, 22-24; Fausto Aff. ¶¶ 5, 12-13, 15-16, 19-21; Halup Aff. ¶¶ 6-8, 13-14, 16-17; Laxamana Aff. ¶¶ 6-7, 15; Lim Aff. ¶¶ 9-11; Liwag Aff. ¶¶ 9, 13-15, 23; Magnifico Aff. ¶¶ 4, 6; Ordonez Aff. ¶¶ 11-12, 17-19; B. Ramos Aff. ¶¶ 14, 20, 23; C.

---

[3] The H-2B visa program permits U.S. employers to temporarily hire nonimmigrants. The visas are non-transferable, valid only for employment with the petitioning employer, and for the type of work and work itinerary for which they are issued. To obtain an H-2B visa, an employer must obtain the approval of multiple state and federal agencies.

Ramos Aff. ¶¶ 7-10, 13-17, 23-26; Relampagos Aff. ¶¶ 6-7, 17; Real Aff. ¶¶ 8, 11-13, 18-20; Ripotola Aff. ¶¶ 10, 17; Rueda Aff. ¶¶ 17-18, 20-21. Defendants' own payroll records reflect that Plaintiffs sometimes worked over 80 hours or more in a week. *See, e.g.,* Report of Brittanney J. Amento (Exhibit B-7, p. 1) (showing that, according to Defendants' own records, Plaintiff Jeanette Halup worked 83 hours during the week of February 12, 2007). Plaintiff Denlit Fausto was taken by ambulance from her job to the emergency room to be treated for the health impacts of overworking. Fausto Aff. ¶¶ 19-21. To ensure that Plaintiffs complied with their demanding work schedules, Defendants Roberto Villanueva and Redelina Fernandez threatened Plaintiffs with arrest, imprisonment, deportation, cancellation of their visas, lawsuits, blacklisting, and loss of work; they also withheld some Plaintiffs' immigration documents. 2d. Am. Compl. ¶¶ 37-38, 125-26, 129-50, 167-200; Auingan Aff. ¶¶ 11-16; Bautista Aff. ¶¶ 8-11, 13, 15, 17-18; Caluya Aff. ¶¶ 9, 11, 13; David Aff. ¶¶ 17-19, 22-27, 31, 34; De Quiros Aff. ¶¶ 15-17, 20-21, 23-25; Fausto Aff. ¶¶ 6-8, 10; Halup Aff. ¶¶ 8-9, 11-12, 14, 18; Laxamana Aff. ¶¶ 7-9, 11; Lim Aff. ¶¶ 11-13, 17, 19-20, 22; Liwag Aff. ¶¶ 11, 15-18, 20-22, 24; Magnifico Aff. ¶¶ 4-6, 8-10; Ordonez Aff. ¶¶ 8, 10, 13-16, 20-21, 23; B. Ramos Aff. ¶¶ 11-13, 15-17, 19, 23-24; C. Ramos Aff. ¶¶ 5, 11-14, 18-19, 22, 26-27, 29-30; Relampagos Aff. ¶¶ 8-12, 15, 18; Real Aff. ¶¶ 9, 14-15, 17-18; Ripotola Aff. ¶¶ 12-13, 16, 18; Rueda Aff. ¶¶ 9, 12-13, 15, 21-22, 25. To further intimidate and control Plaintiffs, Defendants Villanueva and Fernandez convinced them that they and the other Defendants had close relationships with officials in the U.S. and Philippine governments. 2d. Am. Compl. ¶¶ 32-33, 126, 131-150; Auingan Aff. ¶ 13; Bautista Aff. ¶ 15; Caluya Aff. ¶¶ 10, 13; David Aff. ¶¶ 19-20; De Quiros Aff. ¶¶ 16, 18, 19; Fausto Aff. ¶¶ 6-7, 10-11; Halup Aff. ¶ 10; Laxamana Aff. ¶¶ 9-10, 13; Lim Aff. ¶¶ 14-16; Liwag Aff. ¶ 19; Magnifico Aff. ¶¶ 7-8; Ordonez Aff. ¶¶ 4, 8-10, 16, 21; B. Ramos Aff. ¶¶ 17-18; C. Ramos Aff. ¶¶ 14, 21; Relampagos Aff. ¶¶ 11, 13-14; Real Aff. ¶ 16; Ripotola Aff. ¶¶ 14-15; Rueda Aff. ¶¶ 7, 11, 14-16.

Defendants failed to pay Plaintiffs for all hours worked and withheld thousands of dollars from Plaintiffs' paychecks – allegedly for their insufficient food, overcrowded housing and transportation – despite having promised Plaintiffs that these would be provided for free.[4]  2d.

---

[4] A 2008 investigation by the New York Attorney General found Defendants' wage payment practices violated multiple provisions of New York Labor Law. Id. ¶¶ 289-90.  The New York Attorney General entered into an Assurance of Discontinuance with Defendants Mary Jane Hague, John Carruthers, Ruth Carruthers, Star One Staffing, Inc., Star One Staffing International, and Roberto Villanueva for wage and hour violations nearly identical to those

Am. Compl. ¶¶ 30-31, 71, 99, 275-84, 312, 321-32, 336, 340-41, 344-49; Auingan Aff. ¶¶ 9, 19; Bautista Aff. ¶¶ 7, 14; Caluya Aff. ¶¶ 9, 12; David Aff. ¶¶ 16-18, 21, 35; De Quiros Aff. ¶¶ 22, 25; Fausto Aff. ¶¶ 9-10, 16-17, 22; Halup Aff. ¶¶ 15, 17, 19; Laxamana Aff. ¶¶ 16-17; Lim Aff. ¶ 18; Liwag Aff. ¶¶ 11-13; Magnifico Aff. ¶¶ 9-10; Ordonez Aff. ¶¶ 13-14, 19; B. Ramos Aff. ¶¶ 21-22; C. Ramos Aff. ¶ 25; Relampagos Aff. ¶ 17; Real Aff. ¶¶ 10, 20; Ripotola Aff. ¶ 19; Rueda Aff. ¶¶ 19, 23-24, 26.

As a result of their conduct, Plaintiffs remained in fear of Defendants Villanueva and Fernandez and believed they had no choice but to obey their orders and continue working. 2d. Am. Compl. ¶¶ 2, 32-39, 125-30, 132, 167, 176, 182, 197, 199-201; Auingan Aff. ¶¶ 10, 11, 15, 17; Bautista Aff. ¶¶ 8, 12, 14; Caluya Aff. ¶¶ 9, 13, 15-16; David Aff. ¶¶15, 27-30; De Quiros Aff. ¶¶13, 15, 17-18, 23-24; Fausto Aff. ¶¶8, 10-11, 19; Halup Aff. ¶¶10, 15, 18-19, 21; Laxamana Aff. ¶¶ 7, 12-14; Lim Aff. ¶¶ 11, 14-15, 17, 19, 21, 23; Liwag Aff. ¶¶ 16-20, 23, 25; Magnifico Aff. ¶¶ 4-5, 7, 10; Ordonez Aff. ¶¶ 17, 22, 24-27; B. Ramos Aff. ¶¶ 12, 14; C. Ramos Aff. ¶¶ 19, 21, 26, 31; Relampagos Aff. ¶¶ 13, 16, 19; Real Aff. ¶¶ 11, 16; Ripotola Aff. ¶¶ 9, 14, 17; Rueda Aff. ¶¶ 15-15, 21-22.

## ARGUMENT

### STANDARD FOR ENTRY OF RULE 55(B) DEFAULT JUDGMENT

Once default has been entered against a defendant, the plaintiff's allegations of fact are accepted as true. *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)[5]; *Miller v. Paradise of Port Richey, Inc.*, 75 F.Supp.2d 1342, 1346 (M.D. Fla. 1999) ("Liability, if well-pleaded, is established by virtue of a default").  If the well-pleaded factual allegations of the complaint provide a sufficient legal basis for each claim, the court may enter a default judgment against defendants. Fed. R. Civ. P. 55(b). Id.  Once this Court concludes that the factual allegations support a default judgment, the only remaining item for Plaintiffs to prove is the amount of damages.  In this Memorandum and accompanying exhibits, Plaintiffs

---

alleged by Plaintiffs. These Defendants paid $113,454.00 to resolve the Attorney General's investigation. Id. ¶¶ 289-91.

[5] *In Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir. 1981) (en banc), the 11th Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to September 30, 1981.

demonstrate that the factual allegations support a default judgment and provide evidence as to the appropriate amount of damages that should be entered against Defendants Villanueva and Fernandez.

## CLAIM-BY-CLAIM ANALYSIS

In the following sections, Plaintiffs analyze each claim for which damages are sought to demonstrate that the well-pleaded allegations of the Second Amended Complaint (Docket Entry 66) meet the appropriate legal standards. Plaintiffs then provide evidence of the valuations for each claim. In addition, because many of these claims are alternative theories of liability for the same underlying conduct and harms, Plaintiffs provide a comprehensive accounting of damages sought in this matter, demonstrating that their proposed damage calculations do not double-count damages for the same injuries.

### I.  TVPA: Forced Labor and Human Trafficking (Claims 1 and 2)

Defaulting Defendants subjected Plaintiffs to forced labor and human trafficking in violation of the Trafficking Victims Protection Reauthorization Act ("TVPA"). 18 U.S.C. §§ 1589 and 1590. The statute permits aggrieved individuals to bring a civil action against the perpetrator and to "recover damages and reasonable attorneys fees." 18 U.S.C. § 1595.

#### a.  Defendants Villanueva and Fernandez Engaged in Forced Labor

Defendants Villanueva and Fernandez subjected Plaintiffs to forced labor. 18 U.S.C. § 1589. Forced labor occurs when an individual provides or obtains labor by: (1) force, threats of force, physical restraint, or threats of physical restraint; (2) serious harm or threats of serious harm to plaintiff or another person; (3) abuse or threatened abuse of law or legal process; or (4) any scheme, plan, or pattern intended to cause plaintiff to believe that, if plaintiff did not perform such labor or services, the plaintiff or another person would suffer serious harm or physical restraint. 18 U.S.C. § 1589(a). "Serious harm" includes any harm that would compel someone in similar circumstances to continue working in order to avoid it; the harm need not be physical. 18 U.S.C. § 1589(c)(2); *Catalan v. Vermillion Ranch Ltd. Partnership,* 2007 WL 38135, at *8 (D. Colo. Jan. 4, 2007). The seriousness of the harm must be determined from the vantage point of the victim. *U.S. v. Dann*, 652 F.3d 1160, 1169-70 (9th Cir. 2011). "Abuse or threatened abuse of law or legal process" occurs when "used for a purpose for which it was not designed or to exert

pressure on another person" and includes withholding immigration documents and threats of deportation. *Alvarado v. Universidad Carlos Albizu,* 2010 WL 3385345 (S.D. Fla. Aug. 24, 2010); *Ramos v. Hoyle*, 2008 WL 5381821, at *4 (S.D. Fla. Dec. 19, 2008); *U.S. v. Calimlim,* 538 F.3d 706, 713 (7th Cir. 2008); *Catalan,* 2007 WL 38135, at *8. A "scheme, plan, or pattern" to induce forced labor has been found where defendants isolated the plaintiff and accompanied her whenever she left the house. *U.S. v. Nnaji*, 447 F. App'x 558, 560 (5th Cir. 2011).

Defendants Villanueva and Fernandez engaged in forced labor in violation of 18 U.S.C. § §1589(a)(2), (3) and (4). 2d. Am. Compl. ¶¶ 125-201. They obtained Plaintiffs' labor, requiring them to work at country clubs, banquet halls, and hotels in Florida and New York. Id.  ¶¶ 34, 36, 293, and 297. Defendant Villanueva selected Plaintiffs' places of employment and established the terms of their employment. Id. ¶ 19. Both Defendants Villanueva and Fernandez controlled Plaintiffs' work schedules and supervised their work. Id. ¶¶ 19, 20, 296. They regularly compelled Plaintiffs to work multiple shifts each day and up to seven days a week without break. Id. ¶¶ 37, 301-303.  Plaintiffs were also required to perform uncompensated work, including soaking and scrubbing Defendant Fernandez' feet, cooking, training, and yardwork. Id. ¶¶ 216-17, 340. Plaintiffs were compelled to work – and to continue working – even when they were exhausted and did not want to work. Id. ¶¶ 161-62, 166.

To obtain Plaintiffs' labor, Defendants Villanueva and Fernandez threatened Plaintiffs with serious harm, including arrest, deportation, blacklisting, revocation or cancellation of their visas, and lawsuits in violation of 18 U.S.C. § 1589(a)(2).  Id. ¶¶ 37-8, 126, 130, 173-75, 183-89, 195-97, 198, 372. They enhanced the credibility of their threats by repeatedly telling Plaintiffs that they and the other Defendants had close relationships to powerful officials in the United States and Philippines, including a Florida judge, North Miami police officer, and government officials in both countries. Id. ¶¶ 60, 131, 132, 134, 136, 140, 141, 142, 143, 144, 147, 150. Defaulting Defendants actually introduced Plaintiffs to many of these officials, reinforcing their threats of serious harm. Id. ¶¶ 133, 139, 142, 144.  Defendant Villanueva also made thinly-veiled threats of physical harm to some Plaintiffs and their families in the Philippines. Id. ¶¶ 146-47, 353.  Because Plaintiffs had been required to provide Defendants with personal information about themselves and their family, including home addresses, these threats were particularly frightening. Id. ¶¶ 83, 122.

Defaulting Defendants provided and obtained the labor of Plaintiffs through threatened abuse of the law and legal process in violation of § 1589(a)(3) by threatening Plaintiffs with retaliatory litigation, blacklisting, arrest, detention, deportation, and by confiscating some Plaintiffs' immigration documents. Id. ¶¶ 30-31, 103, 109, 126, 129, 130, 167, 173-89, 195-201, 372.  In one instance, when an employee of Defendants fled, Defaulting Defendants posted her image along with her social security number on the wall of Plaintiffs' housing. Id. ¶ 191. Defendants Villanueva and Fernandez told Plaintiffs and their co-workers that the escape had been reported to police and that she would be caught and deported. Id.  The following day, police visited Defendant Villanueva at Plaintiffs' housing, adding credence to the threats. Id. ¶ 192.

Defaulting Defendants violated 18 U.S.C. § 1589(a)(4) by using a scheme intended to cause Plaintiffs to believe the threats of serious harm described above. Id. ¶¶ 29-39. In addition to the threats described above, those Plaintiffs who dared try to raise concerns about their demanding work schedules experienced verbal abuse and other retaliation, including being locked out of their housing and prevented from working at all. Id. ¶¶ 158, 163, 165.  These threats and punishments were designed to psychologically intimidate Plaintiffs and to ensure their continued labor for Defendants.

Defendants Villanueva and Fernandez intended to coerce Plaintiffs to work against their will. Id. ¶¶ 38, 125-30. Their repeated threats of serious harm, abuse of the legal process, and schemes compelled Plaintiffs to work. Id. ¶¶ 125, 126, 130, 132, 166. Statement of Expert Florence Burke, p. 4 (Exhibit C). As a result of the forced labor, Plaintiffs suffered harms and are entitled to damages.

### b.  Defendants Villanueva and Fernandez Engaged in Human Trafficking

The TVPA separately prohibits human trafficking by punishing anyone who "knowingly recruits, harbors, transports, provides, or obtains by any means, any person for labor or services in violation of this chapter." 18 U.S.C. § 1590.   While forced labor relates to the conditions that Plaintiffs experienced in Florida and New York, the trafficking element relates to the recruitment, induced travel and harboring resulting from Defaulting Defendants' threats and fraudulent misrepresentations.  Section 1595 also creates a private right of action for violations of this provision. 18 U.S.C. § 1595.

Defendants Villanueva and Fernandez knowingly recruited, harbored and transported Plaintiffs in violation of the 18 U.S.C. § 1590.   2d. Am. Compl. ¶¶ 50, 61-64, 96, 380.  As

demonstrated *supra*, they violated Section 1589 by subjecting Plaintiffs to forced labor. Because Defaulting Defendants recruited, harbored and transported Plaintiffs in order to subject them to forced labor, they also violated Section 1590.

Defendant Villanueva knowingly recruited Plaintiffs from the Philippines and within South Florida for the purposes of forced labor, using false promises and misrepresentations. Id. ¶¶ 29-31, 60-61, 65-69, 71, 96-125.  Defendant Villanueva traveled to the Philippines several times to recruit Plaintiffs living in the Philippines and also visited Plaintiffs already lawfully residing in Florida in an effort to recruit them.  Id.

Defendants Villanueva and Fernandez knowingly transported Plaintiffs for the purposes of forced labor.  In addition to arranging for the travel to the staff housing in Florida, Defaulting Defendants also controlled Plaintiffs' transportation to and from work and their work schedules. Id. ¶¶ 19, 20, 34, 154, 162.  At Defaulting Defendants' direction, after finishing a shift, Plaintiffs were picked up and transported to another country club to continue working, regardless of whether they wanted to. Id. ¶¶ 34, 154, 161-62, 380. Defendant Villanueva also transported nearly all of the Plaintiffs between Florida and New York for the purposes of forced labor. Id. ¶¶ 251-57, 297, 300, 302.  Once in New York, Defaulting Defendants continued to engage in forced labor. Id.

Defaulting Defendants knowingly harbored Plaintiffs for the purposes of forced labor. They warehoused Plaintiffs to maintain control over them, thus helping to effectuate their aim of forcing Plaintiffs to labor.  Id. ¶¶ 35, 215. Plaintiffs' housing, which was controlled by Defendants, was severely overcrowded. Id. ¶¶ 35, 209-50, 259-74.  Defendants Villanueva and Fernandez lived with Plaintiffs during much of their employment and held mandatory meetings in their housing, monitored Plaintiffs' activity, and required Plaintiffs to seek permission prior to leaving. Id. ¶¶ 215, 223, 229, 239, 242, 245, 259, 262, 268.

Because Defendants Villanueva and Fernandez knowingly recruited, transported, and harbored Plaintiffs in order to commit forced labor in violation of Section 1589, they are liable for trafficking Plaintiffs for that illicit purpose in violation of 18 U.S.C. § 1590.  Plaintiffs should be awarded damages. 18 U.S.C. § 1595.

### c. Damages[6]

Plaintiffs are entitled to compensatory and punitive damages for violations of the TVPA. Id. Courts have recognized the difficulty of quantifying damages in cases of human rights abuses, including forced labor and human trafficking. *Licea v. Curacao Drydock Co., Inc.,* 584 F. Supp. 2d 1355, 1363 (S.D. Fla. 2008). Because a private right of action has only existed since 2003, there are a relatively small number of judgments awarding damages in civil actions brought under the TVPA. 18 U.S.C. § 1595 (2003). Despite these challenges, courts have awarded significant damages to survivors of forced labor and human trafficking both before and after the TVPA was enacted. *See, e.g.*, *Licea,* 584 F. Supp. 2d 1355, 1366 (awarding plaintiffs between $15 million and $20 million each in compensatory damages and $10 million each in punitive damages for abuses over fifteen years); *Aguilar v. Imperial Nurseries,* No. 307cv00193, 2008 WL 2572250, at *1 (D.Conn. May 28, 2008) (awarding plaintiff H-2B guestworkers between approximately $400,000 and $800,000 each[7] for abuses that lasted between one and three months); *Canal v. De La Rosa Dann*, No. 0903366CW, 2010 WL 3491136 (N.D. Cal. Sept. 2, 2010) (awarding plaintiff $619,000 in damages, including $92,400 for emotional distress and other tort damages for abuses over nearly two years); *Mazengo v. Mzengi*, No. 107cv00756, Document 15, p. 19 (D.D.C. Dec. 20, 2007) and Document 27 (D.D.C. Jan. 16, 2008) (awarding plaintiff $1.06 million, including $250,000 for emotional distress and $150,000 in punitive damages for abuses over four years); *Asanok v. Million Express Manpower*, No. 507cv00048 Document 68, p. 3-4 (E.D.NC October 26, 2009) (awarding $1.07 million, including amounts

---

[6]Plaintiffs have included multiple bases of liability for their injuries but do not seek duplicative damages. The damages requested by Plaintiffs under the TVPA encompass nearly all categories of damages sought in this Motion, including those that may be time-barred. Should this Court find that the amount of damages sought by Plaintiffs under the TVPA is appropriate, the only additional damages necessary to consider would be liquidated damages under the Florida Minimum Wage Act and New York Labor Law and a "spread of hours premium" under New York Labor Law. *See* Section IV, *infra*. Every other section of this Memorandum seeks damages based on the same underlying actions and harms as the TVPA. Plaintiffs provide a detailed description of the damages sought on Page 39. A summary is also provided in Exhibit E.

[7] Plaintiffs were awarded $3,000 per plaintiff per day under the TVPA as compensatory damages for forced labor and an equal amount in punitive damages. Plaintiffs were awarded an additional $100,000 each as compensatory damages and an equal amount as punitive damages for human trafficking under the TVPA. Id. For a detailed explanation, see *Aguilar v. Imperial Nurseries*, 2008 WL 6914501, p. 17, 24 (D.Conn. Feb. 4, 2008).

between $36,000 and $71,000 to each plaintiff H-2A guestworker for violations of the TVPA and RICO that occurred over a three month period).

### i. Compensatory Damages

Plaintiffs endured Defendant Villanueva and Fernandez's abuse for many months;[8] they suffered deep and lasting emotional harms as well as profound disruptions to their lives, careers, and families. Plaintiffs are entitled to compensation for the economic and emotional harms they experienced as a result of Defaulting Defendants' violations of the TVPA.[9]

Plaintiffs "may be compensated for intangible, psychological injuries as well as financial, property, or physical harms." *Ferrill v. Parker Grp., Inc.,* 168 F.3d 468, 476 (11th Cir. 1999). Damages for emotional distress have been awarded in cases arising from forced labor and human trafficking. *See, e.g., Licea,* 584 F. Supp. 2d 1355, 1364-65; *Aguilar,* 2008 WL 2572250 at *1; *Canal*, 2010 WL 3491136 at * 4. Emotional distress damages can be proved by plaintiffs' own testimony; a "high degree of specificity" is not required. *Bogle v. McClure*, 332 F.3d 1347, 1359 (11th Cir. 2003) (citing *Ferrill,* 168 F.3d at 476); *Myers v. Cent. Fla. Inv.*, 592 F.3d 1201, 1214 (11th Cir. 2010); *Kissinger-Capbell v. Harrell,* No. 808cv568, 2009 WL 3010480, at *6 (M.D. Fla. 2009). Instead, non-economic compensatory damages "may be inferred from the circumstances." *Bogle*, 332 F.3d at 1359. "Humiliation and insult are recognized, recoverable harms," and a plaintiff's own testimony of embarrassment and humiliation can be sufficient to support an award for compensatory damages. *Ferrill* at 476 (citing *Marable v. Walker,* 704 F.2d 1219, 1220 (11th Cir. 1983).

Plaintiffs suffered emotional distress as a result of Defaulting Defendants' human trafficking and forced labor. Trafficking expert Florence Burke found that the representative sample of Plaintiffs she interviewed "suffered physically and emotionally from their experiences with Defendants" and that they "continued to experience emotional harms even after the trafficking had ended." Burke Stmt. p. 4. (Exhibit C). She found that Plaintiffs were "subjected to loss of independence, loss of control over their own lives and isolation." Id. Defendants

---

[8] Based on Defendants' payroll records, Plaintiffs were each subjected to human trafficking and forced labor between approximately 144 and 559 days. *See* Exhibit E for a complete list and Exhibits B1 through B18 for the dates for each Plaintiff.

[9] Section 1589 damages claim focus on the conditions of forced labor while Section 1590 damages focus on the injuries Plaintiffs suffered as a result of being recruited, transported, and harbored for forced labor.

Villanueva and Fernandez's conduct caused Plaintiffs to experience depression, shame, anxiety, ongoing feelings of fear, humiliation, loss of confidence, difficulty trusting, despondency, and despair as well as disrupted sleep and nightmares, fatigue, difficulty concentrating, and weight loss. 2d Am. Compl. ¶¶ 39, 201; Burke Stmt. p. 4-6; Auingan Aff. ¶¶ 21-25; Bautista Aff. ¶¶ 7-8, 14-16, 18-21; Caluya Aff. ¶¶ 14-20; David Aff. ¶¶ 27-30, 36-41; De Quiros Aff. ¶¶ 18, 21, 26-28; Fausto Aff. ¶¶ 17-25; Halup Aff. ¶¶ 20-23; Laxamana Aff. ¶¶ 14, 18-19; Lim Aff. ¶¶ 15, 17, 23-26; Liwag Aff. ¶¶ 17, 20, 24-30; Magnifico Aff. ¶¶ 5-8, 11-13; Ordonez Aff. ¶¶ 22, 24-27; B. Ramos Aff. ¶¶ 23-28; C. Ramos Aff. ¶¶ 21, 30, 33-35, 37; Relampagos Aff. ¶¶  8, 10, 16, 18, 20-24; Real Aff. ¶¶ 13,19, 22-27; Ripotola ¶¶ 20-24; Rueda Aff. ¶¶ 13, 16, 22, 27-31. Most Plaintiffs continued to experience lasting emotional harms well after they escaped. Burke Stmt. p. 4; Auingan Aff. ¶¶ 21, 25; Bautista Aff. ¶¶ 20-21; Caluya Aff. ¶¶ 19-20; David Aff. ¶¶ 38-41; De Quiros Aff. ¶¶  27-28; Fausto Aff. ¶¶ 23-25; Halup Aff. ¶¶ 22-23; Laxamana Aff. ¶ 19; Lim Aff. ¶ 26; Liwag Aff. ¶¶ 28-30; Magnifico ¶¶ 11-13; B. Ramos Aff. ¶¶ 25-27; C. Ramos Aff. ¶ 37; Relampagos Aff. ¶¶ 20-24; Real Aff. ¶¶ 22-27; Ripotola ¶¶ 23-24; Rueda Aff. ¶¶ 22, 29-31.

Plaintiffs also experienced economic harms, including the pre-employment expenditures required of Philippines Plaintiffs, the wages withheld from all Plaintiffs, and their unlawfully low wages due to failure to pay overtime.  Based on Defendants' records, these damages total $176,912.79 and are described in detail in Section IV, *infra*. In addition, as compensation for the emotional harms suffered, Plaintiffs seek damages for each of the approximately 5,781 days they were subjected to forced labor and human trafficking.  Plaintiffs assert that the appropriate valuation for each day is $750.  In sum, Plaintiffs seek a total of $4,512,662.79 in compensatory damages.

### ii.   *Punitive Damages*

Defendants Villanueva and Fernandez are also liable for punitive damages.[10]  Awards of punitive damages "must reflect the egregiousness of the defendant's conduct, the central role he

---

[10] Florida law limits the amount of punitive damages awarded in civil suits. Fla. Stat. § 768.73. Punitive damages may generally not exceed three times the amount of compensatory damages or $500,000 – whichever is higher. Fla. Stat. § 768.73(1)(a).  However, in cases such as this where Defaulting Defendants' actions were "motivated solely by unreasonable financial gain" and "the unreasonably dangerous nature of the conduct, together with the high likelihood of injury resulting from the conduct, was actually known" by Defaulting Defendants, punitive damages are limited to the greater of four times the amount of compensatory damages or $2,000,000. Fla. Stat. § 768.73(b). Here, Plaintiffs seek an amount double their compensatory damages should the

played in the abuses, and the international condemnation with which these abuses are viewed." *Licea,* 584 F. Supp. 2d at 1365 (*citing Paul v. Avril,* 901 F. Supp. 330, 336 (S.D.Fla.1994)). Punitive damages are meant to both punish the defendant as well as to deter others. Id. (*citing Filartiga v. Pena-Irala,* 577 F. Supp. 860, 866 (E.D.N.Y. 1984)).

Plaintiffs should be awarded punitive damages for forced labor and human trafficking. Forced labor is "a brutal offense condemned by the civilized world." *Licea*, 584 F. Supp. 2d at 1366.  Similarly, this Court has already asserted that it "has no doubt that human trafficking and forced labor violate specific norms accepted by the civilized world." *Magnifico, et al. v. Villanueva, et al.*, 783 F. Supp. 2d 1217, 1224 n.6 (S.D.Fla. 2011).   Punitive damages are appropriate due to the egregiousness of Defendant Villanueva and Fernandez's conduct, the central role they played as the primary actors coordinating and carrying out the abuses for over a year, the international condemnation of forced labor and human trafficking, and the need to deter other labor recruiters and staffing agencies from taking advantage of foreign workers, unlawfully displacing U.S. workers from jobs, and engaging in the same reprehensible conduct.  2d. Am. Compl.  ¶¶ 30-31, 36, 42, 47-8, 63.  Plaintiffs thus seek two times the amount of their compensatory damages, a total of $9,025,325.50, in punitive damages.

## II.   ATS: Forced Labor, Involuntary Servitude and Human Trafficking (Claims 3 and 4)

Defendants Villanueva and Fernandez violated the Alien Tort Statute ("ATS") by subjecting Plaintiffs to forced labor, involuntary servitude and human trafficking. 28 U.S.C. § 1350.   The ATS provides district courts jurisdiction over civil actions by aliens for torts committed in violation of a treaty of the United States or the law of nations, specific norms accepted by the civilized world. Id. Aiding and abetting also creates liability under the ATS. *Romero v. Drummond Co., Inc.,* 552 F.3d 1303, 1315 (11th Cir. 2008).  The standard for aiding and abetting liability under the ATS is "active participation." *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1158 (11th Cir. 2005). A person actively participates in a violation of the ATS if they (1) "substantially assist[ed] some person or persons who personally committed or caused one or more of the wrongful acts that comprise the claim" and (2) knew that their actions would assist in the illegal or wrongful activity at the time they provided assistance. Id.

Court agree that an appropriate valuation for each day in human trafficking and forced labor is $750.

### a. Defendants Villanueva and Fernandez Committed Forced Labor and Involuntary Servitude in Violation of International Law

Forced labor violates the law of nations. *Licea*, 584 F. Supp. 2d at 1358 n. 5 (*citing Doe I. v. Unocal Corp.,* 395 F.3d 932, 946 (9th Cir. 2002)); *Doe v. Reddy*, No. 02-5570, 2003 WL 23893010, at *8-9 (N.D. Cal. Aug. 4, 2003). "Forced labor" is all work or service exacted from a person under the menace of any penalty and which the person has not offered voluntarily. ILO Forced Labour Convention (No. 29) Article 2(1), June 28, 1930, 39 U.N.T.S. 55.[11] Menace of penalty includes credible threats of: denunciation to the authorities, deportation, exclusion from current or future employment, and threats of physical violence against the worker, their family or close associates. ILO 2005 Report 6. Evidence that a person has not offered their labor voluntarily can include retention of identity documents or other valuable personal possessions, deception or false promises about types and terms of work, withholding and non-payment of wages, induced indebtedness and other forms of psychological compulsion. ILO 2005 Report 5-6.

Defendants Villanueva and Fernandez subjected Plaintiffs to forced labor. They exacted work from Plaintiffs at country clubs, hotels and banquet halls – as well as in the Defendant-controlled housing – under menace of penalty. 2d. Am. Compl. ¶¶ 34-38, 125-30, 132, 166. The credible threats made by Defendants Villanueva and Fernandez are detailed in Sections I(a) and (b) and include threats of arrest, detention, deportation, retaliatory litigation, loss of work, blacklisting, and physical harm. Id. ¶¶ 30-31, 103, 109, 126, 129, 130, 146-47, 167, 173-89, 195-201, 353, 372. Defendants also excluded Plaintiffs from community and social life and deprived them of adequate food and shelter. Id. ¶¶ 34-35, 127, 151-56, 162-166, 209-12, 275-84. Plaintiffs were deceived about the terms and conditions of their employment, subjected to threats, punished with exclusion from work and were underpaid and in debt despite working long hours; Plaintiffs did not offer their work voluntarily. *Id.* ¶¶ 125-30, 176, 182, 197. Moreover, Defendant Villanueva and Defendant Fernandez each aided and abetted forced labor by substantially assisting the other in the forced labor and knew their actions would assist in that wrongful activity at the time they provided the assistance. Id. ¶¶ 19-20.

---

[11] This convention was reaffirmed and extended by the ILO Abolition of Forced Labour Convention (No. 105), June 26, 1957, 320 U.N.T.S. 291.

### b. Defendants Villanueva and Fernandez Committed Human Trafficking in Violation of International Law

Human trafficking also violates the law of nations.  *Magnifico,* 783 F. Supp. 2d at 1224 n.6.; *Licea*, 584 F. Supp. 2d at 1358 n. 5.  The U.N. Protocol on Trafficking is the leading international instrument on the subject and defines human trafficking as:

> "[T]he recruitment, transportation, transfer, harbouring or receipt of persons, by means of the threat or use of force or other forms of coercion, of abduction, of fraud, of deception, of the abuse of power or of a position of vulnerability or of the giving or receiving of payments or benefits to achieve the consent of a person having control over another person, for the purpose of exploitation."

The Protocol to Prevent, Suppress, and Punish Trafficking in Persons, Especially Women and Children, Supplementing the United Nations Convention Against Transnational Crime, art. 1, Nov. 15, 2003, 55 U.N. GAOR Supp. (No. 49) at 60, U.N. Doc. A/45/49 (Vol. I) (2001) 40 I.L.M. 335.  In *Jane Doe I*, the court found defendants violated the ATS by engaging in human trafficking when they transported plaintiffs to the U.S. to subject them to forced labor and reinforced their coercive conduct through, *inter alia*, threats, fraud and unlawful substandard working conditions. 2003 WL 23893010 at *11.

Defendants Villanueva and Fernandez committed human trafficking in violation of the ATS.  They recruited, transported and harbored Plaintiffs for the purpose of exploitation. 2d. Am. Compl. ¶¶ 19-20, 29-31, 34-5, 50, 60-69, 96-125, 154, 162, 209-50, 259-63, 264-74, 302-303, 380.  These acts were conducted through the threatened use of force and other forms of coercion, including threats of physical harm, arrest, detention and deportation, fraud and deception regarding the terms and conditions of Plaintiffs' employment and immigration status, and abuse of Plaintiffs' vulnerability as foreign guestworkers who were in debt, unfamiliar with U.S. laws and customs, and responsible for their families' livelihoods in the Philippines. Id. ¶¶ 29-38, 61, 65, 68, 71, 74, 77, 80, 97, 99-121, 125-30, 146-48, 166-68, 172, 175-89, 195, 198, 353.  Defendants Villanueva and Fernandez also aided and abetted each other's human trafficking. Id. ¶¶ 19-20.  In particular, Defendant Fernandez aided and abetted Defendant Villanueva's human trafficking by serving as a supervisor of Plaintiffs' housing and making repeated threats to Plaintiffs. Id.  ¶¶ 136, 151, 152, 157-59, 163, 165, 183-84, 186-88, 191, 193, 199, 206, 223, 229, 245, 262, 268, 275, 280, 282-83, 296.

### c. Damages

Successful litigants are consistently awarded significant damages under the ATS. *See, e.g., Abebe-Jira v. Negewo*, 72 F.3d 844 (11th Cir. 1996) (awarding prisoners who had been tortured each $200,000 in compensatory damages and $300,000 in punitive damages); *Cabello v. Larios*, No. 990528CIV, 2003 WL 26047259 (S.D. Fla. October 31, 2003), *aff'd in* 402 F.3d 1148 (11th Cir. 2005) (awarding a murder victim's estate and family members $2,000,000 in compensatory damages for an extrajudicial killing, $1,000,000 for crimes against humanity, and an additional $1,000,000 in punitive damages); *Jean v. Dorelian,* 431 F.3d 776 (11th Cir. 2005) (awarding a family $4,300,000 in compensatory and punitive damages for abuses committed by the Haitian military). In the Eleventh Circuit, courts consider a variety of factors when awarding damages, including the brutality of the act, egregiousness of defendant's conduct, international condemnation of the act, deterrence of others from committing similar acts, and provision of redress to the plaintiff. *Licea*, 584 F. Supp.2d at 1364.

As detailed in Sections I, II(a) and II(b), Defendants Villanueva and Fernandez used misrepresentations and their actual and perceived relationships to individuals in power to make Plaintiffs highly vulnerable, subjecting them to ongoing threats, long hours of work, substandard living conditions, insufficient food, isolation, and fear. An award of damages is appropriate to provide redress to Plaintiffs and to deter others from engaging in similar acts. Deterrence is particularly important as there are reports of widespread abuses of foreign guestworkers by bad actor recruiters and employers who seek to make money from trafficking while displacing U.S. workers. *See, e.g.,* Mary Bauer, *Close to Slavery: Guestworker Programs in the United States*, Southern Poverty Law Center (2007); Government Accountability Office, *Closed Civil Criminal Cases Illustrate Instances of H-2B Workers Being Targets of Fraud and Abuse,* GAO-10-1053 (Sep 30, 2010); Ashwini Sukthankar, *Visas, Inc.: Corporate Control and Policy Incoherence in the U.S. Temporary Foreign Labor System*, Global Workers Justice Alliance (2012).

Plaintiffs are entitled to compensatory and punitive damages for Defaulting Defendants' violations of the ATS. While they constitute four distinct causes of action, Plaintiffs seek a single recovery for injuries arising from forced labor and human trafficking under the TVPA and ATS. The damages sought for violations to the ATS are identical to those listed above in Section I(c) and thus are not repeated here.

### III.   Federal and Florida Civil RICO (Claims 5 and 6)

#### a.   Defendants Villanueva and Fernandez Violated the Racketeer Influenced and Corrupt Organizations Act and the Florida Civil Remedies for Criminal Practices Act

Defendants Villanueva and Fernandez violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 et seq. ("RICO") and Florida Civil Remedies for Criminal Practices Act, Fla. Stat. §§ 772.01 et seq.  ("Florida RICO").  This Court has already held that Plaintiffs established a claim to relief under RICO.  *Magnifico*, 783 F. Supp. at 1226-30.  As a result, Plaintiffs have also established a claim to relief under Florida RICO.[12]

To establish a violation of 18 U.S.C. § 1962 and Fla. Stat. § 772.103, Plaintiffs must show the "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima v. Imrex Co.*, 473 U.S. 479, 496 (1985).  Defaulting Defendants Villanueva and Fernandez, along with the Philippine recruitment agency J.E.S. and its president, Jean Batarilan, and Defendants Mary Jane Hague, John Carruthers, Ruth Carruthers, Star One Staffing and Star One Staffing International, constituted an enterprise within the meaning of 18 U.S.C. § 1961(4) and Fla. Stat. § 772.102(3). 2d. Am. Compl. ¶¶ 407-422.

Defendants Villanueva and Fernandez engaged in the following predicate acts: (1) forced labor in violation of 18 U.S.C. § 1589; (2) human trafficking in violation of 18 U.S.C. § 1590 and Fla. Stat. § 787.06(c); and (3) interstate travel to further unlawful scheme in violation of 18 U.S.C. §1952. Id. ¶¶ 50, 424-27, 429-35, 462-67. In addition, Defendant Villanueva engaged in: (1) immigration document fraud in violation of 18 U.S.C. § 1546; (2) wire fraud in violation of 18 U.S.C. § 1341 and Fla. Stat. § 817.034; and (3) unlawful conduct with respect to documents in furtherance of trafficking in violation of 18 U.S.C. § 1592(a). Id. ¶¶ 30, 177-82, 436-37, 455-58, 460-61.  When denying Defendants' motion to dismiss Plaintiffs' RICO claims, this Court held that the fraud-related predicate acts were sufficiently pled and suggested that the remaining predicate acts (forced labor, trafficking in persons, and unlawful conduct with respect to documents) were as well.  *Magnifico,* 783 F. Supp. at 1228 n. 9. Defendants' acts constituted a pattern within the meaning of RICO. *See American Dental Ass'n v. Cigna Corp.*, 605 F.2d 1282

---

[12] Interpretation of Florida RICO is informed by case law interpreting federal RICO. Thus, the analysis applied to Plaintiffs' federal RICO claims is equally applicable to their Florida RICO claims.  *Jones v. Childers*, 18 F.3d 899, 910 (11th Cir. 1994); *Jackson v. Bellsouth Telecomm.*, 372 F.3d 1250, 1263–64 (11th Cir. 2004).

(11th Cir. 2010).  This Court has already held that, based on the factual allegations contained in the complaint, the scheme meets the standard required for both the open-ended and close-ended continuity requirements. *Magnifico,* 783 F. Supp. at 1229; 2d Am. Compl. ¶¶ 469-79.

### b.  Damages

RICO creates a civil cause of action which provides for recovery of treble damages to "any person injured in his business or property by reason of a violation of Section 1962."  18 U.S.C. § 1964(c).  There is "no distinct 'racketeering injury' requirement." *Sedima v. Imrex Co., Inc.*, 473 U.S. 479, 495 (1985).  Therefore, Plaintiffs need only show they were injured as a result of the predicate acts.  Similarly, Florida RICO offers treble damages for injuries sustained by violation of Florida RICO or, as an alternative, three times the amount gained in human trafficking and a minimum of $200. Fla. Stat. §§ 772.104(1) and (2).  The Florida legislature recognizes that trafficking can occur in a variety of Florida industries, including restaurants, that forms of coercion may include isolation, confiscation of documents, and threats of imprisonment and deportation it has also made clear that it intends "perpetrators of human trafficking be penalized for their illegal conduct" and to serve the needs of victims. Fla. Stat. § 787.06(1).

Defendant Villanueva used fraudulently obtained visas and misrepresentations to recruit Philippines Plaintiffs and cause them to incur recruitment-related expenses equal to the average income of a family of four and, by engaging in human trafficking, they compelled Plaintiffs to work without adequate pay. 2d. Am. Compl. ¶ 80.  Plaintiffs suffered economic injuries as a result of Defendant Villanueva and Fernandez's racketeering activities.  Id. ¶¶ 76-82, 304-49. Plaintiffs' specific RICO damages are: the pre-employment expenditures required of Philippines Plaintiffs, and all Plaintiffs' withheld and unpaid wages. Defaulting Defendants' racketeering activity deprived Plaintiffs of their personal property and deprived them of payment for services performed; Plaintiffs are entitled to treble damages.[13]

---

[13] The RICO damages are identical to the economic compensatory damages listed in Section I(c)(i) for violations of the TVPA. Plaintiffs already seek the treble damages available under RICO as combined compensatory and punitive damages under the TVPA. Section I(c)(ii). Should this Court award that amount, no additional damages are sought under Federal or Florida RICO.

## IV.   Unpaid Wages (Claims 7 through 11)

Defendant Villanueva failed to pay Plaintiffs' required wages in violation of federal, Florida and New York law.  Specifically, he failed to pay proper wages for: (1) pre-employment expenses incurred primarily for the benefit of the employer; (2) unlawful housing, food, and transportation charges; (3) alleged tax withholdings (4) hours not properly counted in Defendants' Payroll records; (5) overtime for hours worked over 40 each week; and (6) a spread of hours premium mandated by New York law.[14]

### a.   Plaintiffs are Entitled to the Protections of the FLSA, FMWA and NY Labor Law

Defendant Villanueva is liable for Plaintiffs' unpaid wages under the relevant federal and state statutes. The basis for his liability is detailed below.

### i.   *Fair Labor Standards Act*

The Fair Labor Standards Act ("FLSA") requires employers to pay covered employees a minimum hourly wage and an overtime rate of 1.5 times Plaintiffs' regular rate of pay for all hours over 40 worked each week. 29 U.S.C. §§ 206 and 207(a).  Workers who have not been paid properly may bring a civil suit to recover their unpaid wages and are entitled to their minimum and overtime wages as well as an equal amount in liquidated damages, reasonable attorneys' fees and costs. 29 U.S.C. § 216(b).

The FLSA imposes obligations on those entities that "employ" workers. *See* 29 U.S.C. §§ 206 and 207.  This is a definition of "striking breadth." *Nationwide Mutual Insurance Company v. Darden*, 503 U.S. 318, 326 (1992); *see also Daughtrey v. Honeywell, Inc.,* 3 F.3d 1488, 1495 (11th Cir. 1993) (describing the FLSA definition as "sweeping").  It has been called "the broadest definition [of employee] that has ever been included in one act." *Antenor v. D & S Farms,* 88 F.3d 925 n.5, (quoting *U.S. v. Rossennwasser*, 323 U.S. 360, 363 n.3 (1945)) and statement of Senator Hugo Black, 81 Cong. Rec. 7, 657 (1938).   In defining "employment" under the FLSA, Congress expressly rejected the common-law definition of employment, which is based on

---

[14] For the purposes of determining damages related to wages, Plaintiffs used the records provided by Non-Defaulting Defendants during discovery. Exhibit B summarizes these records and the violations they reveal. Rep. Brittanney J. Amento. While Plaintiffs believe that the records are imperfect and contain inaccuracies, *see* Id. p. 8, they likely offer the best available basis to calculate Plaintiffs' pay-related damages for the purposes of this Motion. As described in Exhibit B, Plaintiffs generally relied on the hourly pay rates and hours contained in the records.

limiting concepts of control and supervision. *Antenor,* 88 F.3d at 929.  Under the FLSA, an entity "employs" an individual if it "suffers or permits" the individual to work. Id.; 29 U.S.C. §203(g).  An entity or individual "suffers or permits" a putative employee to work if, as a matter of economic reality, the putative employee is dependent on that entity or individual. *Antenor,* 88 F.3d at 929.

To help determine economic dependence under the FLSA, courts have identified a number of factors which, properly applied, may shed light on the nature of employment relationships. *Antenor,* 88 F.3d at 932. Whether an employment relationship exists does not turn on isolated or technical factors, but instead depends on the circumstances of the whole activity. *Rutherford Food Corp.,* 331 U.S. 722, 730.

In applying these factors, the inquiry is not whether the worker is more economically dependent on one entity than another, with the winner avoiding responsibility as an employer. Instead, each employment relationship must be evaluated separately, to determine whether the putative employer has suffered or permitted the employee to work. Furthermore, no one factor is determinative. The absence of evidence on any one factor does not preclude a finding of joint employment. Instead, factors are to be used as tools to evaluate an employment relationship, with the weight given each factor based on the degree to which it sheds light on the workers' economic dependence, or lack thereof, on the putative employer. *Antenor,* 88 F.3d at 932-33. Among the factors considered by the courts are the nature and degree of control of the workers; degree of supervision, direct or indirect, of the work; the power to determine the pay rates and method of payment; the right, directly or indirectly to hire, fire, or modify the employment conditions of the workers; preparation of payroll and the payment of wages. Id. at 930 n.6.

Labor contractors hired to recruit and oversee workers have been recognized as employers under the FLSA. *Howard v. Malcolm*, 852 F.2d 101 (4th Cir. 1988).  In that case, the contractor was found to be responsible for the welfare of the workers. Id. at 103-5. He recruited the workers, arranged their housing and transportation, exercised day-to-day supervision, and issued their pay. He was also responsible for hiring, firing and managing workers and maintaining their work records. Id.

Defendant Villanueva was an employer for the purposes of the FLSA. 29 U.S.C. § 203(d).  "It is dependence that indicates employee status" and it is clear that Plaintiffs were dependent on Defendant Villanueva, Vice President of the International Division of Star One, as

a matter of economic reality. *Antenor*, 88F.3d at 932; 2d. Am. Compl. ¶ 19.   Defendant Villanueva controlled all aspects of Plaintiffs' lives; he recruited, interviewed and hired Plaintiffs, selected Plaintiffs' places of employment, established the terms of their employment, controlled their work schedules, selected and oversaw their work and housing. Id.  ¶¶ 19, 61, 65-66, 96-7, 161-65, 173, 177, 183, 187-88, 196, 223, 234, 240, 245, 253, 259, 296, 300, 311, 325-27, 353; *See, e.g.,* David Aff. ¶¶ 10, 13, 30; De Quiros Aff. . ¶¶ 5, 22; Fausto Aff. ¶¶  2, 3, 6, 13. He chose to pay some Plaintiffs in cash and to withhold the pay of others. Ripotola Aff. ¶ 19; Rueda Aff. ¶ 26. Defendant Villanueva clearly had the authority to hire and fire Plaintiffs. 2d. Am. Compl. ¶ 65; Liwag Aff. ¶¶ 23, 25. As described throughout the Second Amended Complaint and Plaintiffs' declarations (attached as Exhibits A1-18), Defendant Villanueva exercised complete control over them and Plaintiffs were terrified to disobey him.

Plaintiffs were "employees" for the purposes of the FLSA. 29 U.S.C. § 203(e); 2d. Am. Compl. ¶ 22. They are entitled to the protections of the FLSA because Plaintiffs worked primarily in food service at country clubs, banquet halls and hotels and handled, sold and worked on goods and materials that have been moved in or produced for interstate commerce, were engaged in commerce and/or were employed in enterprises engaged in commerce or in the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).  *Perez v. Palermo Seafood, Inc.*, 548 F.Supp.2d 1340, 1346 (S.D.Fla., 2008) (finding waitress at a cafeteria was a covered employee under FLSA); 2d. Am. Compl. ¶¶ 9-12, 23-25, 278, 293-94, 297-98.

### ii. *Florida Minimum Wage Act*

The Florida Constitution and Florida Minimum Wage Act ("FMWA") require covered employers to pay a minimum hourly wage. Sec. 24, Art. X of Fl. State Constitution and Fla. Stat. § 448.110.  Aggrieved employees are entitled to bring an action for the unpaid minimum wage, reasonable attorneys' fees and costs. Fla. Stat. § 448.110(6).

The Florida Minimum Wage Act tracks the interpretation and requirements of the FLSA regarding the definition of "employer," "employee" and "wages."  Sec. 24(b), Art. X of Fl. State Constitution; Fla. Stat. § 448.109(1)(a). For the reasons described in Section IV(a)(i) *supra*, Defendant Villanueva was an "employer" and Plaintiffs who performed work in Florida were "employees" within the meaning of Fla. Stat. § 448.109(1)(a). While the constitutionality of this requirement is unclear, Plaintiffs with claims under the FMWA sent Defendants written notice of

their claims in accordance with Fla. Stat. § 448.10(6)(a) and Defendants failed to satisfy the claim within 15 days. 2d. Am. Compl. ¶¶ 521-22.

### iii.  New York Labor Law

New York Labor Law mandates covered employers pay covered employees a minimum hourly wage, overtime for all hours over 40 worked each week, and a premium of an extra hour of wages on any day where an employee works more than 10 hours.  N.Y. Lab. L. § 652; 12 NY Comp. Codes R. & Regs. Tit. §§ 137-1.2 and 142-2.2 (minimum wage), 137-1.3 and 142-2.2 (overtime) and 137-1.7 and 142-2.4 (spread of hours). Should they prevail on these claims, Plaintiffs Rueda, Caluya, De Quiros and C. Ramos[15] are entitled to an equal amount in liquidated damages, reasonable attorneys' fees and costs, and prejudgment interest. N.Y. Lab. L. §§ 198(1-a) (wage payment); 663(1) (minimum wage and overtime).

New York Labor Law "mirrors the FLSA in compensation provisions regarding minimum hourly wages and overtime." *Santillan v. Henao*, 822 F.Supp.2d 284, 292 (E.D.N.Y. 2011) (citing *Chun Jie Yin v. Kim*, No. 07CV1236, 2008 WL 906736, at *4 (E.D.N.Y. April 1, 2008)). *See also Debejian v. Atl. Testing Labs., Inc.,* 64 F.Supp.2d 85, 87 n. 1 (N.D.N.Y. 1999) (finding NY Labor Law "substantially similar to the federal scheme" and its analysis of federal law equally applicable to claims brought under FLSA and the New York law).

As described in Section IV(a)(i) *supra*, Defendant Villanueva was an "employer," Plaintiffs Rueda, Caluya, DeQuiros and C. Ramos were "employees," and were employed by Defendant Villanueva for the purposes of New York Labor Law. NY Lab. L. §§ 651(5) and (6); 12 NY Comp. Codes R. & Regs. Tit. § 137-3.2(a). Further, Defendant Villanueva was an "employer in the restaurant industry" within the meaning of 12 NY Comp. Codes R. & Regs. Tit. § 137-1.1. 2d. Am. Compl. ¶¶ 297-98.

### b.  Defendant Villanueva Failed to Pay the Proper Minimum Wages

Under federal and state law, Plaintiffs were entitled to be paid the relevant statutory minimum wage for each hour worked.  29 U.S.C. § 206(a); Fla. Stat. § 448.110(3); NY Lab. L. § 652; 12 NY Comp. Codes R. & Regs. Tit. §§ 137-1.2 and 142-2.1(a)(1). Plaintiffs' wages fell

---

[15] New York Labor Law claims are only brought on behalf of these Plaintiffs (collectively, "New York Plaintiffs") because the remaining Plaintiffs either waived their rights under New York law by accepting payments from the NY Attorney General's settlement fund (see Footnote 4) or because they did not perform work in New York.  The amounts received by Plaintiffs from the settlement fund are listed in Exhibits D and E and are subtracted from the total damages sought.

below the required minimum wage rates due to the following reasons: failure to reimburse pre-employment expenses; unlawful charges for housing, food and transportation; unsubstantiated tax withholdings; and errors in Defendants' records.

### i. Pre-Employment Expenses

Pre-employment expenses brought the wages of Plaintiffs recruited from the Philippines ("Philippines Plaintiffs") wages during their first week of employment far below the required federal and Florida minimum. [16] 29 C.F.R. §531.35.

The FLSA requires that employers pay the minimum wage in excess of any expenses the employee incurs for the benefit of the employer. *Arriaga v. Fla. Pac. Farms, LLC*, 305 F.3d 1228 (11th Cir. 2002). A worker must be reimbursed for any costs incurred primarily for the employer's benefit which serve to reduce the employee's net earnings during the first week of work below the mandated wage rate. Id.

An employer may not shift the costs incurred primarily for its own benefit to an employee: there is no legal difference between directly deducting such a cost from an employee's paycheck and requiring the employee to pay it himself. *Arriaga*, 305 F.3d at 1236 (citing 29 C.F.R. §§ 531.35 and 531.36(b)); N.Y. Lab. L. § 193(2). Hence an employer cannot escape its minimum wage obligations by requiring employees to pay directly for costs that it would be prohibited from deducting from their pay. Id.

In *Arriaga*, the Eleventh Circuit addressed the question of whether an employer must reimburse foreign H-2A guestworkers' visa and travel costs that reduced their net earnings below the FLSA minimum wage. The court ruled that these expenses were incurred "for the primary benefit and convenience of their employer" and thus had to be reimbursed to the workers to the extent they left the workers' first week net wages less than the mandated minimum wage. Arriaga, 305 F. 3d at 1242. Since *Arriaga*, pre-employment expenses incurred by guestworkers in order for defendants to employ them have repeatedly been found by Eleventh Circuit courts to be "primarily for the benefit of the employer." *See, e.g., Moreno-Espinosa v. J & J Ag Products, Inc.,* 247 F.R.D. 686 (S.D. Fla. 2007); *DeLeon-Granados v. Eller & Sons Trees,* 497 F.3d 1214, 1217 (11th Cir. 2007) (affirming class certification of action by H-2B workers who complained,

---

[16] Plaintiffs Roy Magnifico, Roma Lim, Rezza Real, Jeanette Halup, Bonifacio Ramos, Lucille Liwag, Ross Ripotola, Aris Ordonez, Ritche Relampagos, Percival De Quiros, Jose Auingan, Denlit Fausto, Irene David, Arnold Laxamana and Robert Bautista (collectively, "Philippines Plaintiffs") were recruited from outside the U.S.

*inter alia*, of the employer's "failing to reimburse travel, recruitment and visa processing expenses")*; Morante-Navarro v. T & Y Pine Straw,* 350 F.3d 1163, 1166 n.2 (11th Cir. 2003) (in an action by H-2B workers, the judge wrote in reference to pre-employment visa and travel expenses that "[s]uch costs cannot be lawfully credited against the employer's minimum wage obligations to the workers."); and *Avila-Gonzalez v. Barajas*, 2006 WL 643297 (M.D.Fla. March 2, 2006) (holding that a visa processing fee paid to an agent of employers is an expense primarily for the benefit of the employer that must be reimbursed).

Philippines Plaintiffs' pre-employment expenses were incurred primarily for the benefit of the employer and should have been reimbursed during their first week of employment to the extent that these expenditures reduced their first week's wages below the Florida and federal minimum wages. Philippines Plaintiffs were required to spend a substantial amount of money as a prerequisite for obtaining the H-2B visas that allowed Defendants to employ them. 2d. Am. Compl. ¶¶ 30, 76-81. These sums vary somewhat by Plaintiff but generally included a recruitment fee paid to Defendants' agent in the Philippines, an attorney fee for assistance with the visa process, a medical exam fee, a fee charged by the Philippines Overseas Employment Agency to authorize the employment, and visa fees charged by the United States Consulate for issuance of H-2B visas.[17] Id. Auingan Aff. ¶ 6; Bautista Aff. ¶ 5; David Aff. ¶ 4; De Quiros Aff. ¶ 6; Fausto Aff. ¶ 4; Halup Aff. ¶ 4; Laxamana Aff. ¶ 5; Lim Aff. ¶ 5; Liwag Aff. ¶ 5; Magnifico Aff. ¶ 3; Ordonez Aff. ¶ 6; B. Ramos Aff. ¶ 10; Relampagos Aff. ¶ 4; Real Aff. ¶ 5. Each of these expenses was incurred at the direction of the designated agent of Defendants in the Philippines, was necessary for Defendants to employ Plaintiffs, and thus was primarily for the benefit of the employer. 2d. Am. Compl. ¶¶ 55-59, 76-82. No portion of these pre-employment expenses was ever reimbursed to any of Philippines Plaintiffs. Id. ¶ 82. As demonstrated in the calculations provided in Exhibit B, these pre-employment expenses brought Philippines Plaintiffs' wages below the statutory minimum during their first week of work. Id. ¶ 501.

### ii.  Charges for Housing, Food and Transportation

Plaintiffs' wages were regularly reduced below the state and federal minimum wages as a result of unlawful charges for rental housing facilities, food-related charges, and employer-

---

[17] The amount paid by each Philippines Plaintiff is listed as "Pre-employment Expenses" in Exhibit B. Amento Rep., p 10.

mandated transportation. Id. ¶ 332. According to Defendants' own records, substantial lump sum charges were taken from Plaintiffs' pay – sometimes up to $800 per month. Id. ¶¶ 321-32.

Under federal and Florida law, an employer may, under certain limited conditions, claim as a credit against its wage obligations the cost of housing and other similar facilities, including food and transportation. 29 U.S.C. § 203(m).  Under the FLSA's implementing regulations, the "reasonable cost" of such "facilities" "does not include a profit to the employer or to any affiliated person." 29 C.F.R. § 531.3(b). The employer has the burden of proving reasonable cost. 29 C.F.R. § 516.27. In the absence of such proof, the employer is entitled to no credit whatsoever against its wage obligations. *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 474-76 (11th Cir. 1982) (Employers who failed to produce records or other credible evidence failed to sustain their burden of proving "reasonable costs" of the meals and lodging they claimed were furnished to employees and therefore were not entitled to credits against unpaid minimum wages and overtime compensation to their employees for meals and lodging allegedly provided to the employees.)  New York law prohibits deductions from employees' pay except in very limited circumstances that do not exist here. N.Y. Lab. L. § 193 (authorizing deductions if expressly permitted by law or, with employee's written consent, for payments to benefit the employee, such as insurance premiums, up to 10% of their gross pay. 12 N.Y. COMP. CODES R. & REGS. TIT § 195.1.

Defendant Villanueva failed to meet his burden of proving the reasonable costs of the housing, food or transportation. Id. ¶ 337.  As he did not meet his burden, the charges were unlawful to the extent they brought Plaintiffs' wages below the federal and state minimums.

Even when employers successfully meet their burden, the reasonable cost of facilities may not be treated as part of a wage paid to an employee where it is furnished in violation of any federal, state, or local law, ordinance or prohibition. 29 C.F.R. § 531.31. Thus, even if Defendant Villanueva had charged only the actual cost of providing Plaintiffs' housing in Miami, Boca Raton, and New York, and had adequate proof to meet his burden, due to severe overcrowding, the housing was provided in violation of local law and thus cannot be claimed as a credit against wage obligations. 2d. Am. Compl. ¶¶ 220-50, 261, 264-74, and 330; *e.g.*, Miami-Dade, Fla., Code of Ordinances ch. 17, art. 3, § 17-62 (establishing minimum space, use and location requirements); City of Miami, Fla., Zoning Ordinance art. 4, § 401 (limiting use of single family residential structures); Boca Raton, Fla., Code of Ordinances ch. 19, art. VIII, § 19-308

(incorporating by reference International Property Maintenance Code 2000 Edition, which establishes minimum space, use and location requirements). Similarly, the vans used by to transport the Plaintiffs were frequently overcrowded, which meant not all passengers could always wear seatbelts as required by law in many jurisdictions. 2d. Am. Compl. ¶ 329; *e.g.,* Miami-Dade, Fla., Code of Ordinances ch. 31, art. 6, § 31-609.

Charges for housing, food and transportation brought Plaintiffs' pay below the statutory minimums. 2d. Am. Compl. ¶ 332, 503, 530-31.

### iii.   Charges Allegedly for Taxes

The employee's share of legally required FICA and all other employment taxes may be deducted and counted as minimum wages paid, but only if the employer actually pays the tax in to the appropriate government agency. 29 C.F.R. §531.38.  The burden is on the employer to demonstrate through production of W-2 forms or otherwise that the FICA taxes were actually deposited. *Certilus v. Peeples,* 1984 WL 3175, at * 9 (M.D.Fla. July 17, 1984); *Frenel v. Freezeland Orchard Co.,* 1987 WL 46894, at *4 (E.D.Va. December 24, 1987). In the absence of W-2 forms, the employer is not entitled to a credit against minimum wage obligations for FICA withholdings.  Defendant Villanueva has not provided W-2s or any other evidence the charges for taxes from Plaintiffs' pay were actually paid to the appropriate government agency.

### iv.   Errors in Defendants' Payroll Records

When reviewing payroll records produced by Non-Defaulting Defendants, Plaintiffs found places where Plaintiffs' work hours appear to have been miscalculated resulting in failure to pay for each hour worked. Amento Rep., p, 3. For example, the payroll record might list a Plaintiff's work hours as 7:00am – 7:00pm but then only included nine hours of compensable work for that Plaintiff rather than twelve. These errors are recorded in the attached documents Exhibit B-1 through B-18 and are labeled "Discrepancy Hours."

### c.   Defendant Villanueva Failed to Pay Overtime

Under federal and New York law, Plaintiffs were entitled to overtime pay at a rate of one and a half times their regular rate of pay for all hours worked over 40 each week. 29 U.S.C. § 207(a); N.Y. Lab. L. § 652; 12 N.Y. COMP. CODES R. & REGS. TIT. § 137-1.3 and142-2.2.

Defendant Villanueva failed to pay each Plaintiff overtime at the proper rate for all hours of overtime worked and sometimes failed to pay overtime altogether. 2d Am. Compl. ¶ 349. Defendant Villanueva regularly required Plaintiffs to work more than forty hours per week. Id.

¶¶ 295-96, 298-302.  According to Defendants' records, Plaintiff were not paid overtime at the proper rate of one and a half times their regular rate of pay for all hours worked over 40 each week.  Id. ¶ 349.  Plaintiffs are entitled to recover unpaid overtime wages and an equal amount in liquidated damages, reasonable attorneys' fees, costs and, for New York Plaintiffs, prejudgment interest on wages owed for work performed in New York. 29 U.S.C. § 216(b); N.Y. Lab. L. § 198(1-a).

### d.  Defendant Villanueva Failed to Pay the NY Spread of Hours Premium

For each day that Plaintiffs performed over 10 hours of work in New York, Plaintiffs were entitled to a "spread of hours" premium of one additional hour of pay. New York Labor law requires employers to pay an additional hour of pay at the basic minimum hourly wage rate for each day in which an employee's work exceeds ten hours or work a split shift. 12 NY COMP. CODES R. & REGS. TIT. § 142-2.4.  Plaintiffs did not receive these payments despite the fact that many were regularly required to perform over ten hours of work per day in New York. 2d Am. Compl. ¶¶ 161, 300-303, 549-50.  As a result of Defendant Villanueva's failure to pay the required spread of hours premium, New York Plaintiffs are entitled to an extra hour's worth of pay for each day they worked in excess of ten hours per day. 12 NY COMP. CODES R. & REGS. TIT. § 142-2.4.

### e.  Damages

Plaintiffs are entitled to a variety of wage-related damages.[18] Under the FLSA, Plaintiffs would be entitled to recover their unpaid federal minimum wages and overtime wages, an equal amount in liquidated damages, and reasonable attorneys' fees and costs. 29 U.S.C. §216(b).  For violations of the FMWA, Plaintiffs are entitled to recover their unpaid Florida minimum wages, an amount equal to unpaid minimum wages in liquidated damages, and reasonable attorneys' fees and costs. [19] Fla. Stat. § 448.110. Under New York Labor Law, New York Plaintiffs are entitled to recover their unpaid New York minimum wages and overtime wages, an equal amount of their unpaid minimum and overtime wages in liquidated damages,

---

[18] Plaintiffs recognize that some of their statutory wage claims are barred by the statute of limitations and thus seek to recover their unpaid wages under alternative theories of liability that are not time-barred, including the TVPA, ATS and RICO.

[19] Defendants' failure to pay Plaintiffs the Florida minimum wage law was a willful violation of the FMWA within the meaning of 29 U.S.C. § 255(a), which carries a five-year statute of limitations. Fla. Stat. Ann. § 95.11(2); 2d Am. Compl. ¶ 519.

prejudgment interest, and reasonable attorneys' fees. N.Y. Lab. L. §§ 198(1-a) and 663(1).  For violations of New York Labor Law's spread of hours provision, New York Plaintiffs are entitled to recover one hour's pay at the minimum rate for each day in which they worked in excess of 10 hours.[20] N.Y. Lab. L. § 663(1); 12 NY COMP. CODES R. & REGS. TIT. §§ 137-1.7 and 142-2.4.

   Plaintiffs are entitled to liquidated damages. Under the FLSA, the liquidated damages provision is "not penal in its nature but constitutes compensation."  *Snapp v. Unlimited Concepts, Inc.* 208 F.3d 92, 934 (11th Cir. 2000). In contrast, under New York Labor Law, liquidated damages "'constitute a penalty' to deter an employer's willful withholding of wages due." *Santillan,* 822 F.Supp.2d at 297 (citing *Reilly v. Natwest Mkts. Group Inc.,* 181 F.3d 253, 265 (2d. Cir. 1999)). New York Plaintiffs may we awarded both FLSA and NY liquidated damages because they did not waive their rights under New York law and the two forms of damages serve "fundamentally different purposes." Id.

   The exact amount of wage-related damages sought for each Plaintiff is reflected in Exhibit B. As demonstrated in that exhibit and in Exhibit E, Plaintiffs do not seek duplicative damages.


### V.   Fraud and Negligent Misrepresentation (Claim 13)

   Defendant Villanueva is liable to Plaintiffs for fraud and negligent misrepresentation. The required elements for fraud and negligent misrepresentation are: (1) misrepresentation of material fact; (2) (a) knowledge of represener of the misrepresentation, or (b) representations made by represener without knowledge as to truth or falsity, or (c) representations made under circumstances in which represener ought to have known, if he did not know, of falsity; (3) intention that representation induce action by another; and (4) resulting injury to party acting in justifiable reliance.  *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 177 (5th Cir. 1968); *Kutner v. Kalish*, 173 So.2d 763, 765 (Fla. Dist. Ct. App. 1965).  Individuals are liable in fraud for erroneous statements made negligently and for false statements made knowingly. *Emerson Elec. Co. v. Farmer*, 427 F.2d 1082, 1087 (11th Cir. 1970).

---

[20] With respect to all New York Labor Law violations, because Defendants knowingly and deliberately disregarded their obligations to pay wages required under New York Labor Law, their violations are considered "willful" and carry a six-year statute of limitations. N.Y. Lab. L. § 663; 2d Am. Compl. ¶¶ 529, 540.

### a.  Misrepresentation of Material Facts

Defendant Villanueva repeatedly misrepresented material facts to Plaintiffs throughout their employment. 2d. Am. Compl. ¶¶ 30-31, 33, 38, 125.

#### i.  Philippines Plaintiffs

Defendant Villanueva traveled to the Philippines to recruit Philippines Plaintiffs and other potential employees. Id. ¶¶ 60-63.  He met with Philippines Plaintiffs in person and by phone throughout their recruitment and hiring process. Id. ¶¶ 65-67, 88-91. During these conversations, Defendant Villanueva knowingly provided Philippines Plaintiffs with false and/or misleading information about material facts, including the amount and type of their work, wages, and benefits. Id. ¶ 71, 85, 172.  Among these misrepresentations were: that Plaintiffs would be provided free housing, food and transportation, that they would receive a regular allowance throughout their employment, that they would be paid an hourly rate of $6.78 per hour and an overtime rate of $10.17 per hour, and that they would be sponsored for lawful permanent residency (i.e., "green cards") in the U.S. Id.

#### ii.  U.S. Plaintiffs

Defendant Villanueva sought out Plaintiffs already present in the United States ("U.S. Plaintiffs") and lawfully employed as guestworkers by other employers, including Defendant Villanueva's own brother. Id. ¶¶ 96-7.  Defendant Villanueva knowingly provided U.S. Plaintiffs with false and/or misleading information about material facts, including the terms and conditions of U.S. Plaintiffs' employment and the availability of work visas. Id. ¶¶ 99-118.  Specifically, Defendant Villanueva told them that, if they agreed to work for Star One, their hourly pay rate would increase, they would receive free food, housing and transportation, and that Plaintiff Ripotola, who is a trained physical therapist, would eventually get a job in healthcare. Id. ¶¶ 99, 101.  Defendant Villanueva also made a variety of misrepresentations about his ability and willingness to secure lawful immigration status for Plaintiffs. Id. ¶¶ 100-24.  In addition to making misrepresentations at the outset, Defendant Villanueva continued to make numerous additional misrepresentations regarding steps he was taking and would take to secure immigration status for these Plaintiffs. Ripotola Aff. ¶¶ 6-10; C. Ramos Aff. ¶¶ 27-28.

### b.  Knowledge

Defendant Villanueva knew or should have known that the substantial misrepresentations he made to Plaintiffs were false.  As Vice President of the International Division of Star One and the person who selected Plaintiffs' places of employment, established the terms of their employment, controlled their work schedules and housing, and supervised their work, he either knew or should have known the actual terms and conditions of Plaintiffs' employment. 2d. Am. Compl.  ¶¶ 19, 62-63, 215, 220, 223, 229, 240, 253, 262, 268.

### c.  Intention to Induce Action

Defendant Villanueva made these misrepresentations to induce Plaintiffs to work for Star One. Id. ¶¶ 71-72, 96-97, 99, 101, 115, 120.  A critical aspect of Defendant Villanueva's job was to recruit guestworkers for Star One and that is clearly what he sought to do when he sought out and met with Plaintiffs. Id. ¶¶ 63, 72-73.  His misrepresentations were designed to get Plaintiffs to agree to work for Star One; this is made evident by the fact that he indeed hired Plaintiffs. Id. ¶ 73.

### d.  Caused Injury to Plaintiffs Who Acted in Justifiable Reliance

Plaintiffs acted in justifiable reliance of Defendant Villanueva's misrepresentations. Plaintiffs had no reason to believe Defendant Villanueva's representations were false and it sometimes took them a substantial amount of time to discover they were false.  Defendant Villanueva was a high-level employee and representative of a seemingly reputable and properly registered U.S. company, Star One, that had hired a labor recruitment and training company authorized by the Philippine government (J.E.S. Manpower). Id. ¶¶ 9-12, 55, 58- 59.  De Quiros Aff. ¶¶ 3; Liwag Aff. ¶ 2. Defendant Villanueva is also a Filipino national further adding to his credibility and ability to communicate with – and deceive – Plaintiffs. Ripotola Aff. ¶ 5; Real Aff. ¶ 24.

Defendant Villanueva introduced many Plaintiffs to other officers and representatives of Star One – some of whom had traveled all the way to the Philippines for the purposes of securing guestworkers. 2d. Am. Compl. ¶ 60, 98.  Some Plaintiffs were even introduced to a Florida judge – allegedly the husband of one of the owners of Star One – during their recruitment. Id. ¶ 60, 136-40.   In the United States, U.S. Plaintiffs were introduced to a local leader in the Filipino community who also worked for Defendants. Id. ¶¶ 98, 131, 149.  These relationships with

seemingly legitimate community figures added significant legitimacy to both Star One and to Defendant Villanueva; as a result, it also understandably deepened Plaintiffs' trust in Defendant Villanueva and the information he told them.[21]  As a result of their justifiable reliance on Defendant Villanueva's misrepresentations, Plaintiffs suffered injuries. Id. ¶¶ 74-80, 114, 119, 121.

### i.  Philippines Plaintiffs

Based on Defendant Villanueva's misrepresentations, each Philippines Plaintiff accepted Defendants' offer of employment. Id. ¶ 74.  Philippines Plaintiffs were required to incur substantial expenses to work for Star One. Id. ¶ 76-80. The average fees paid by each of the Philippine Plaintiffs were nearly equal to the average income for a family of four in the Philippines. Id. ¶ 79-80.  These expenses are listed in Exhibit B as "Pre-employment Expenses" and do not include travel expenses between their homes and the recruitment agency or airport or other expenses incurred. Many of the Philippines Plaintiffs went into debt, entering into high-interest loans, to be able to afford the expenditures required by Defendants to work for Star One. Id. ¶ 74, 76. They left behind the families they sought to support and gave up other employment opportunities. Id.  ¶¶ 74-5.  For example, Plaintiff Laxamana gave up a job he had for 11 years and Plaintiff David gave up a job she had for 10 years. Id.  ¶ 75.   All Plaintiffs also received substantially less pay than they had been fraudulently promised by Defendant Villanueva; as described in Section IV, *supra*, Defendants withheld Plaintiffs' pay allegedly for housing, food, and transportation that Defendant Villanueva had promised would be provided without charge and Defendant Villanueva continued to lie about those withheld wages. Id. ¶¶ 321-27.  These charges are also listed in Exhibit B, p. 10.

### ii.  U.S. Plaintiffs

Based on Defendant Villanueva's ongoing misrepresentations, each U.S. Plaintiff accepted Defendants' offer of employment. Id. ¶¶ 114, 119, 121.  U.S. Plaintiffs gave up other opportunities for employment, including continued lawful employment with existing employers, and inadvertently lost their lawful immigration status and work visas in the U.S. Id. ¶¶ 119-21. As described above, U.S. Plaintiffs also received less pay than fraudulently promised due to

---

[21] In addition to the judge and Filipino community leader, Defendants later introduced Plaintiffs to a North Miami police officer and the Deputy District Director for a U.S. Representative. Id. ¶¶ 133-40, 142.

alleged housing, food and transportation charges and other withheld wages.  These charges are listed in Exhibit B, p. 10.

### e.  Damages

Plaintiffs are entitled to compensatory and punitive damages.  Florida courts permit plaintiffs to recover punitive damages for fraud and negligent misrepresentation.  *Southern Bell Telephone & Telegraph Co. v. Hanft,* 436 So.2d 40, 41 (Fla. 1983); *Moransais v. Heathman*, 17 744 So.2d 973 (Fla. 1999).  Punitive damages for fraud and negligent misrepresentation can be recovered if the tort is based on an intentional wrong, willful or wanton misconduct, or culpable negligence.  *Grupo Televisa, S.A. v. Telemundo Communications Group, Inc.,* 485 F.3d 1233, 1242 (11th Cir. 2007).

Plaintiffs' damages resulting from Defendant Villanueva's fraudulent misrepresentations include expenses related to Plaintiffs' travel to and within the United States in reliance upon his fraudulent representations and lost wages.  Accordingly, Plaintiffs are entitled to compensation for the following: pre-employment expenditures and withheld and unpaid wages.  Defendant Villanueva's conduct was intentional, willful and wanton; he significantly and intentionally disrupted Plaintiffs' lives with misrepresentations and fraud in the furtherance of human trafficking and forced labor. Defendant Villanueva should thus be punished with punitive damages in the amount of three times the compensatory damages owed to each Plaintiff.

## VI.  Unjust Enrichment (Claim 14)

### a.  Defendant Villanueva was unjustly enriched by Plaintiffs' work.

To establish a cause of action for unjust enrichment, a plaintiff must show: (1) a benefit was conferred on defendant; (2) defendant either requested the benefit or knowingly and voluntarily accepted it; (3) a benefit flowed to defendant; and (4) under the circumstances, it would be inequitable for the defendant to retain the benefit without paying the value thereof. *Nautica Intern., Inc. v. Intermarine USA, L.P.,* 5 F.Supp.2d 1333, 1341 (S.D.Fla. 1998). Existence of adequate legal remedies does not bar unjust enrichment claims. *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla.App. 5 Dist. 1998).

Defendant Villanueva was unjustly enriched by Plaintiffs' work.  By performing compelled labor and having significant portions of their wages withheld, Plaintiffs conferred benefits in the form of financial payments and professional success on Defendant Villanueva in

his role as employee and Vice President of the International Division of Star One.  2d. Am Compl. ¶¶ 19, 62-63, 72, 160-62, 199. Plaintiffs labored at country clubs and hotels that paid Defendant Villanueva's company for each hour worked by Plaintiffs.  Id. ¶¶  293-94, 297-98. Defendant Villanueva had knowledge of the benefits conferred on him by Plaintiffs' labor, and he accepted and retained those benefits; he was intimately familiar with Plaintiffs' work and pay as he was primarily responsible for assigning and supervising their work and for overseeing all aspects of their lives.  Id. ¶¶ 19, 153-54, 215, 223, 245, 253, 262, 268, 293, 297, 311, 325-27. He was also necessarily aware of the financial benefits in the form of compensation and the work success he received from Plaintiffs' work.  In addition, as described *supra*, Plaintiffs also had substantial portions of their wages withheld – allegedly to pay for the housing where Defendant Villanueva himself resided – presumably at no charge to him. Id. ¶¶ 223, 229, 259, 268, 321-22, 324.

Plaintiffs engaged in labor for Defendant Villanueva with the expectation of being compensated at the promised and legally-mandated rates.  Instead, they were compelled to work against their will and in violation of the law.  They also had their already low wages reduced to nearly nothing by unlawful charges. Id. ¶¶ 321-32. As someone who engaged in forced labor and human trafficking and compelled Plaintiffs to continue working despite these intolerable conditions, it would be inequitable for Defendant Villanueva to be permitted to retain such benefits without paying Plaintiffs the value of the benefits conferred.

### b.  Damages

Once a benefit is conferred and defendant accepts and retains that benefit, he must compensate plaintiff for it.  *Rite-Way Painting & Plastering, Inc. v. Tetor*, 582 So.2d 15, 17 (Fla. Dist. Ct. App. 1991).  Defendant Villanueva was unjustly enriched by Plaintiffs' work and by withholding their wages; he owes them restitution. He profoundly violated Plaintiffs' rights by misleading and frightening them into working; as a result, he benefitted financially and professionally from their work and suffering.  Defendant knowingly and deliberately accepted Plaintiffs' work and must pay for the services rendered.  Accordingly, Plaintiffs are entitled to damages in the amount of their withheld wages. These damages are listed in Exhibit B, p. 10.

## VII.   Intentional Infliction of Emotional Distress (Claim 15)

### a.   Defendants Villanueva and Fernandez are Liable for the Intentional Infliction of Emotional Distress

Defendants Villanueva and Fernandez are liable for the intentional infliction of emotional distress.  To prevail on a claim for intentional infliction of emotional distress, a plaintiff must show: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. *Hart v. United States*, 894 F.2d 1539, 1548 (11th Cir. 1990).  The plaintiff must allege conduct "so outrageous in character" and "so extreme in degree" as to go "beyond all possible bounds of decency," and to be regarded as "atrocious and utterly intolerable in a civilized community."  *Mundy v. Southern Bell Tel. and Tel. Co.*, 676 F.2d 503, 505 (Ga. Ct. App. 1982).  The test to assess liability rests on whether the defendant knew or should have known that "such distress is certain, or substantially certain, to result from his conduct" or whether the defendant acted in "reckless disregard" that created a high probability that emotional distress would result.  *Food Fair, Inc. v. Anderson*, 382 So.2d 150, 153 (Fla. Dist. Ct. App. 1980); *Saludes v. Republica De Cuba*, 655 F. Supp. 2d 1290 (S.D. Fla. 2009).  *Cf. Bradley v. Pfizer, Inc*., 440 F. App'x 805, 810 (11th Cir. 2011).  To state a claim, it is unnecessary for the plaintiff to suffer bodily harm, so long as the defendant's conduct is "sufficiently extreme and outrageous, there may be recovery for emotional distress alone, without such harm."  *Ford Motor Credit Co. v. Sheehan*, 373 So.2d 956, 959 (Fla. Dist. Ct. App. 1979).

In this case, Defendants Villanueva and Fernandez engaged in extreme and outrageous conduct with intent to cause Plaintiffs severe emotional distress and/or with a reckless disregard for the high probability that severe emotional distress would result.  Defendant Villanueva and Fernandez's outrageous conduct has been described throughout this Memorandum.  According to the uncontested facts contained in the Second Amended Complaint and summarized in Sections I(a) and (b) and II(a) and (b), Defendants Villanueva and Fernandez subjected Plaintiffs to forced labor and human trafficking. 2d. Am. Compl. ¶¶ 125-201.  Their conduct was outrageous and is appropriately considered "atrocious and utterly intolerable in a civilized community."  *Mundy*, 676 F.2d at 505.  As noted earlier, this Court and others have held that human trafficking is a violation of the law of nations.

### b. Damages

As a proximate result of Defaulting Defendants' conduct, Plaintiffs suffered emotional distress.[22]  As a result, Plaintiffs are entitled to recover damages.  In Florida, damages for intentional infliction of emotional distress can be claimed only in "extreme circumstances," where the alleged conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Gonzalez-Gonzalez-Jimenez de Ruiz v. United States*, 231 F.Supp.2d 1187, 1199 (M.D. Fla. 2002), citing *Williams v. City of Minneola,* 575 So.2d 683 (Fla. Dist. Ct. App. 1991).  Finding such outrageous conduct, however, Florida courts have affirmed substantial damage awards for intentional infliction of emotional distress.  *See, e.g.*, *Stockett v. Tolin*, 791 F.Supp. 1536 (S.D. Fla. 1992) (granting a $250,000 award in favor of the plaintiff under tort claims of battery, invasion of privacy, false imprisonment, and intentional infliction of emotional distress).  Plaintiffs are entitled to $750 per day per Plaintiff in damages for Defaulting Defendants' intentional infliction of emotional distress.

### CALCULATION OF DAMAGES

As detailed in Exhibit E, Plaintiffs seek a total of $13,545,923.81.  As Plaintiffs have noted, many of the legal claims brought against Defendants Villanueva and Fernandez penalize the same behavior. While some of Plaintiffs' claims may be barred by the statute of limitations, Plaintiffs assert that all of the compensation sought is also available under the TVPA and the ATS, both of which have 10-year statutes of limitations. *Cabello v. Fernandez-Larios*, 402 F.3d 1148, 1153 (11th Cir. Fla. 2005); *Jean v. Dorelien*, 431 F.3d 776, 778 (11th Cir. Fla. 2005); 18 U.S.C. § 1595.

Accordingly, Plaintiffs seek to recover: (1) compensatory damages for their out-of pocket pre-employment expenses and improperly withheld wages based on Defendants' payroll records[23]  and for emotional distress arising from forced labor and human trafficking; (2) punitive damages arising from forced labor and human trafficking at a rate of two times their compensatory damages; (3) liquidated damages under the FMWA; and, for those Plaintiffs who worked in New York and did not waive their rights under New York law: (4) spread of hours premium for work performed in New York and (5) liquidated damages for work performed in

---

[22] For a detailed description of the emotional harms Plaintiffs suffered, see Section I(c)(i), *supra*.
[23] This amount is taken from the column labeled "Contract Wages Owed" in Exhibit B and takes into account Plaintiffs' pre-employment expenses.

New York. Plaintiffs believe Defaulting Defendants should be credited for payments Plaintiffs received through the New York Attorney General's settlement fund.[24] These amounts are listed in Exhibit E and have been subtracted from the total damages sought.

**CONCLUSION**

In recognition of the Defendant Villanueva and Fernandez' egregious conduct and the substantial harms they caused as well as the desire to deter others who might engage in similar behavior, Plaintiffs respectfully request that this Court enter default judgments against Defendants Roberto Villanueva and Redelina Fernandez jointly and severally in an amount totaling $13,545,923.81.

Respectfully submitted this 30th day of July 2012,

/s/ Gregory Schell
Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
FLORIDA LEGAL SERVICES, INC.
508 Lucerne Avenue
Lake Worth, FL 33460-3819
Telephone:     (561) 582-3921
Facsimile:     (561) 582-4884
Email:         Greg@Floridalegal.org

/s/ Annie Smith
Annie Smith
George Washington University Law School
International Human Rights Clinic
2000 G Street, NW
Washington, DC 20052
Telephone: (202) 994-7659
Facsimile: (202) 994-4693

Counsel for Plaintiffs

---

[24] Should the Court find it appropriate to further adjust of the total damages award pursuant to this Court's June 26, 2012 Order, Plaintiffs believe such an adjustment would be fair. (Docket Entry 125.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 30, 2012, I electronically filed the foregoing documents with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on Marlene Quintana Esq. via transmission of Notices of Electronic Filing generated by CM/ECF and on Roberto Villanueva via U.S. Mail to 4699 NW 7th Ave, Miami, FL 33127.

/s/ Gregory Schell
Gregory S. Schell
Florida Bar Number 287199
Migrant Farmworker Justice Project
FLORIDA LEGAL SERVICES, INC.
508 Lucerne Avenue
Lake Worth, FL 33460-3819
Telephone:    (561) 582-3921
Facsimile:     (561) 582-4884
Email: Greg@Floridalegal.org
